**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| **LAURA A. GREER** <br> 7409 Township Road 212 <br> Findlay, Ohio 45840 <br><br> Plaintiff, <br><br> v. <br><br> **UNIVERSITY HOSPITALS HEALTH SYSTEM, INC.** <br> 3605 Warrensville Center Road <br> Shaker Heights, Ohio 44122 <br><br> AND <br><br> **HEALTH DESIGN PLUS, INC.** <br> 3605 Warrensville Center Road <br> Shaker Heights, Ohio 44122 <br><br> Defendants. | **Case No.** <br><br> **Judge** <br><br> <u>**COMPLAINT; JURY DEMAND ENDORSED HEREON**</u> <br><br> Francis J. Landry (0006072) <br> **WASSERMAN, BRYAN, LANDRY & HONOLD, LLP** <br> 1090 West South Boundary, Suite 500 <br> Perrysburg, Ohio 43551 <br> Telephone: (419) 243-1239 <br> Facsimile: (419) 243-2719 <br> Email: FLandry308@aol.com <br> Attorney for Plaintiff, <br> Laura Greer |

**JURISDICTION**

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. Section 1331, 1337, 1343, 2201 and 2202. This is an action for a violation of 29 USC Sections 2601 et seq., known as the Family and Medical Leave Act. This action is also for a violation of the Rehabilitation Act, 29 U.S.C. Section 701 et seq. This action, in part, is one for money damages, reinstatement, and

liquidated damages resulting from an alleged unlawful termination of employment. This Court's supplemental jurisdiction is also invoked over state law claims of disability discrimination.

## PARTIES

2. Plaintiff, Laura A. Greer ("Plaintiff"), is a resident of the City of Findlay, County of Hancock, State of Ohio, who is employed by Defendant Health Design Plus, Inc. as a Senior Claims Examiner. At all times material hereto, Plaintiff was an employee of an employer within the meaning of the FMLA in that the Plaintiff was employed for more than twelve months and worked more than 1,250 hours during the 12 months preceding her discrimination.

3. Defendant, University Hospitals Health System, Inc. ("Defendant University Hospitals"), is a non-profit corporation located in the City of Shaker Heights, County of Cuyahoga, State of Ohio.

4. Defendant, Health Design Plus, Inc. ("Defendant Health Design"), is a for-profit corporation, owned by Defendant University Hospitals, located in the City of Shaker Heights, County of Cuyahoga, State of Ohio.

## FACTS

5. Plaintiff has been employed by Defendant Health Design since March of 2001 and works from home. Plaintiff is currently employed as a Senior Claims Examiner.

6. Plaintiff states that she struggles with stress, anxiety, depression, and chronic pain. Plaintiff states various medications have been prescribed to treat these illnesses.

7. Plaintiff states she voluntarily entered a rehabilitation program with Arrowhead Behavioral Health in January of 2016 to assist in weaning herself off her Percocet prescription. Plaintiff states she made Defendant Health Design aware of her plan to enter a program to assist in weaning herself off the prescription.

8.	Plaintiff applied for short term disability through Cigna Group Insurance. In January of 2016, Arrowhead was to contact Cigna Group Insurance regarding her application for Short Term Disability. However, rather than contacting Cigna Group Insurance, Arrowhead contacted Defendant Health Design's human resources department, thereby disclosing Plaintiff's private medical information to her employer. Defendant Health Design never made Plaintiff aware of its contact with Arrowhead.

9.	Plaintiff was discharged from treatment with Arrowhead in January of 2016. Plaintiff contacted Defendant Health Design informing Defendant Health Design that she possessed a work slip indicating her ability to return to work. Defendant Health Design initially refused to allow her to return to work and Plaintiff's supervisor indicated that she was no longer sure she could trust Plaintiff.

10.	Plaintiff states that on or about July 12, 2016, Defendant Health Design placed Plaintiff on paid administrative leave.  Plaintiff was initially told by the Vice President of Human Resources that she was being placed on administrative leave due to problems with her attendance. This could not have been justified as Plaintiff had no attendance problems. She had four weeks of vacation pay per year, 10 sick days and one personal day yearly. However, shortly after her conversation with the Vice President of Human Resources, Defendant University Hospital's Employee Assistance Program ("EAP") contacted Plaintiff indicating that she was being placed on administrative leave due to a report of Plaintiff having slurred speech. The EAP representative was Ms. Georgina Kohlbacher who was employed by University Hospitals but who received information from Health Design.

11.	Plaintiff states that Defendants' decision to place Plaintiff on administrative leave caused her extreme anxiety and stress. This stress and anxiety caused Plaintiff to become physically ill.

3

Due to this increased anxiety and stress, Plaintiff consumed a Xanax that was leftover from a prior prescription.

12. Plaintiff states that after consulting with her thyroid doctor the next day, it was determined that Plaintiff's previous thyroid surgery damaged her right vocal cord. As a result of the damage to Plaintiff's vocal cord, Plaintiff now suffers from "superior laryngeal nerve palsy." Such condition can cause a weak or more breathy voice.

13. Plaintiff states she made Defendant Health Design's EAP aware of this condition and the effect it can have on her speech. However, the EAP representative disregarded this information.

14. Plaintiff states that she was accused of having slurred speech by her employer who referred her for a fitness for duty exam. Plaintiff was then diagnosed by her ENT doctor with "superior laryngeal nerve palsy." Thereafter, what was originally titled a "Fitness for Duty" evaluation transformed into a "Chemical Dependency" evaluation. Plaintiff was never told that she was going for a chemical dependency evaluation. This evaluation was completed on July 18, 2016.

15. Plaintiff states she acknowledged that the drug screen which was taken would result in a positive for benzodiazepines, as she consumed a Xanax due to the increased stress and anxiety.

16. Plaintiff states the therapist at Firelands Regional Medical Center originally recommended Plaintiff continue with her current course of treatment and recommended multiple private practice therapy groups. Plaintiff states no mention of an Intensive Outpatient Program ("IOP") was made at that time.

17. Plaintiff states that after the results of what was actually a "Chemical Dependency" evaluation were given to Defendants' EAP, Plaintiff learned about the IOP. Plaintiff states at that point the IOP was added to the therapist's recommendations.

18. Plaintiff states prior to learning about the IOP, Plaintiff had already scheduled an appointment with Mr. Michael McGrady via the recommendation of the Firelands Regional Medical Center therapist.

19. Plaintiff states after consulting with Mr. McGrady, Mr. McGrady recommended that Plaintiff needs to complete mental health counseling, rather than a drug treatment plan. Mr. McGrady explained to Defendants' EAP that Plaintiff did not need an IOP. EAP told Mr. McGrady, along with Firelands and St. Rita's Medical Center, that Plaintiff left Arrowhead Behavioral Health early and refused its IOP and PHP, which was not recommended on the Doctor's discharge orders.

20. Plaintiff states despite Defendants' knowledge of her "superior laryngeal nerve palsy" which can affect her speech, and her therapist's determination that a drug treatment plan was not needed, Defendants' EAP explained to Plaintiff that she to either complete the IOP or be terminated. Consequently, Plaintiff chose to complete the forced IOP at St. Rita's Medical Center. Plaintiff underwent weekly drug testing there and put 1,500 miles on her car complying with this.

21. Plaintiff states that after she completed the IOP, she was allowed to return to work at the end of September of 2016.

22. Plaintiff states upon her return to work, Defendants' EAP required her to participate in "Drug/Alcohol Screening Procedures." This includes weekly screenings for both drugs and alcohol. Plaintiff was required to sign a form listing the details of the program. However, Defendants' EAP representative Ms. Georgene Kohlbacher handwrote on the form that the weekly screenings were to remain effective for two years. The handwritten portion is not company policy.  When Plaintiff inquired as to where in the company policy it allowed Ms.

5

Kohlbacher to state the progam would last for two years, Ms. Kohlbacher stated "she would have to look into it."

23. Plaintiff states from her initial contact with Ms. Kohlbacher, Ms. Kohlbacher has been hostile towards Plaintiff. Ms. Kohlbacher has disregarded Plaintiff's medical evidence that her "superior laryngeal nerve palsy" can affect her speech and has accused Plaintiff of having slurred speech while Ms. Kohlbacher had Plaintiff on speaker phone. Further, Ms. Kohlbacher has lied about Plaintiff, stating that Plaintiff had left Defendant Arrowhead's program early and that Plaintiff refused to engage in the IOP.

**FIRST CLAIM FOR RELIEF**
**Family Medical Leave Act – 29 U.S.C. §§ 2601 et seq.**

24. Plaintiff incorporates each and every allegation contained in paragraphs one (1) through twenty-three (23) of this Complaint, *supra*, by reference in its entirety as if fully restated herein.

25. Plaintiff states at all times material hereto she was meeting or exceeding Defendants' reasonable expectations.

26. Plaintiff states that at all times material hereto Defendant employed more than fifty (50) employees and is a covered employer under the Family and Medical Leave Act.

27. Plaintiff states that she suffers from a serious health condition including laryngeal nerve palsy. On July 29, 2016, Defendant notified Plaintiff she was being placed on an FMLA leave. Instead of allowing Plaintiff end the FMLA leave and to return to work, she was kept off of work until September of 2016, and forced to complete an IOP.

28. Plaintiff states after consulting with Mr. McGrady, Mr. McGrady recommended that Plaintiff needs to complete mental health counseling, rather than a drug treatment plan. Mr. McGrady explained to Defendants' EAP that Plaintiff did not need an IOP. EAP told Mr. McGrady, along with Firelands and St. Rita's Medical Center, that Plaintiff left Arrowhead

Behavioral Health early and refused its IOP and PHP, which was not recommended on the Doctor's discharge orders.

29. Plaintiff states despite Defendants' knowledge of her "superior laryngeal nerve palsy" which can affect her speech, and her therapist's determination that a drug treatment plan was not needed, Defendant Health Designs EAP explained to Plaintiff that she to either complete the IOP or be terminated. Consequently, Plaintiff chose to complete the forced IOP at St. Rita's Medical Center. Plaintiff underwent weekly drug testing there and put 1,500 miles on her car complying with this.

30. Plaintiff contends that Defendants' action in forcing Plaintiff to utilize FMLA and requiring her to undergo an IOP constituted discrimination and retaliation against Plaintiff because of her having an FMLA qualifying condition.

31. As a proximate result of the actions of Defendants complained of herein, Plaintiff has suffered the loss of past and future wages and benefits, diminished earning capacity, professional damage, and great mental and emotional stress, anxiety, humiliation, and embarrassment. Plaintiff has also been forced to expend court costs and attorney's fees.

### SECOND CLAIM FOR RELIEF
### Disability Discrimination and Disability Harassment against Defendant University Hospitals Health System and Defendant Health Designs Plus
### 29 U.S.C. 701, Section 504 Rehabilitation Act

32. Plaintiff incorporates each and every allegation contained in paragraphs one (1) through thirty-one (31) of this Complaint, supra, by reference in its entirety as if fully restated herein.

33. At all times material hereto, Defendants were covered employers under Section 504 of the Rehabilitation Act, as they receive federal financial assistance.

34. Plaintiff states that she is a disabled individual within the meaning of Ohio Revised Code Section 4112.02(a)(13). Alternatively, Plaintiff was disabled on the basis of her record of

medical impairments and because she was perceived by defendant as being disabled. Although disabled, Plaintiff is able to safely and substantially perform the essential functions of her job with or without an accommodation. Defendants were aware of Plaintiff's record of impairments, as Plaintiff utilized FMLA leave in 2007 and 2008 for cervical and thoracic surgery.

35. Plaintiff states that she suffers from "superior laryngeal nerve palsy," which interferes with one or more major life activities, including but not limited to speech.

36. Plaintiff states that the Defendants were at all times material hereto aware of her series of medical problems. Plaintiff states after the allegation of slurred speech, Plaintiff made Defendants' EAP representative Ms. Georgene Kohlbacher aware of her doctor's diagnosis of "superior laryngeal nerve palsy" which affects Plaintiff's speech. This information was disregarded.

37. Plaintiff states that Plaintiff was subjected to unwelcome hostile work environment harassment from co-workers and Defendants' EAP office based on Plaintiff's disability. This harassment includes, but is not limited to, Ms. Kohlbacher accusing Plaintiff of slurred speech despite her knowledge of Plaintiff's disability; Ms. Kohlbacher forcing Plaintiff to complete a "chemical dependency" evaluation when she originally told Plaintiff to complete a "Fitness for Duty" evaluation and knew of the affect Plaintiff's disability has on her speech; Ms. Kohlbacher forcing Plaintiff to complete the IOP despite Ms. Kohlbacher's knowledge of Plaintiff's disability and Plaintiff's therapist's opinion that Plaintiff did not need the IOP; and Ms. Kohlbacher forcing Plaintiff to undergo additional weekly drug and alcohol screens for a two year period, despite the length of the program not being company policy, Plaintiff completing the unnecessary IOP, and knowing Plaintiff's speech issues derived from her disability and not a drug or alcohol abuse problem.

38. Other employees who did not have disabilities which affected their speech were not forced to undergo the harassment identified herein.

39. Plaintiff was meeting and/or exceeding all of Defendants' legitimate expectations as a Senior Claims Examiner and was a highly rated and skilled employee.

40. Plaintiff states Defendants' actions violated Plaintiff's rights under Section 504 of the Rehabilitation Act.

41. As a proximate result of the actions of Defendant Health Designs and Defendant University Hospitals complained of herein, Plaintiff has suffered personal and financial damage, harassment, and great mental and emotional stress, anxiety, humiliation and embarrassment. Plaintiff has also been forced to expend court costs and attorney's fees.

### THIRD CLAIM FOR RELIEF
### Disability Discrimination and Disability Harassment against Defendant University Hospitals Health System and Defendant Health Designs Plus
### Ohio Revised Code Section 4112.02

42. Plaintiff incorporates each and every allegation contained in paragraphs one (1) through forty-one (41) of this Complaint, supra, by reference in its entirety as if fully restated herein.

43. Plaintiff states that she is a disabled individual within the meaning of Ohio Revised Code Section 4112.02(a)(13). Alternatively, Plaintiff was disabled on the basis of her record of medical impairments and because she was perceived by defendant as being disabled. Although disabled, Plaintiff is able to safely and substantially perform the essential functions of her job with or without an accommodation. Defendants were aware of Plaitniff's record of impairrments, as Plaintiff utilized FMLA leave in 2007 and 2008 for cervical and thoracic surgery.

44. Plaintiff states that she suffers from "superior laryngeal nerve palsy," which interferes with one or more major life activities, including but not limited to speech.

45. Plaintiff states that the Defendants were at all times material hereto aware of her series of medical problems. Plaintiff states after the allegation of slurred speech, Plaintiff made Defendants' EAP representative Ms. Georgene Kohlbacher aware of her doctor's diagnosis of "superior laryngeal nerve palsy" which affects Plaintiff's speech. This information was disregarded.

46. Plaintiff states that Plaintiff was subjected to unwelcome hostile work environment harassment from co-workers and Defendants based on Plaintiff's disability. This harassment includes, but is not limited to, Ms. Kohlbacher accusing Plaintiff of slurred speech despite her knowledge of Plaintiff's disability; Ms. Kohlbacher forcing Plaintiff to complete a "chemical dependency" evaluation when she originally told Plaintiff to complete a "Fitness for Duty" evaluation and knew of the affect Plaintiff's disability has on her speech; Ms. Kohlbacher forcing Plaintiff to complete the IOP despite Ms. Kohlbacher's knowledge of Plaintiff's disability and Plaintiff's therapist's opinion that Plaintiff did not need the IOP; and Ms. Kohlbacher forcing Plaintiff to undergo additional weekly drug and alcohol screens for a two year period, despite the length of the program not being company policy, Plaintiff completing the unnecessary IOP, and knowing Plaintiff's speech issues derived from her disability and not a drug or alcohol abuse problem.

47. Other employees who did not have disabilities which affected their speech were not forced to undergo the harassment identified herein.

48. Plaintiff was meeting and/or exceeding all of Defendants' legitimate expectations as a Senior Claims Examiner and was a highly rated and skilled employee.

49. Plaintiff states Defendants' actions violated Plaintiff's rights under Section 4112.02(A) made actionable pursuant to Ohio Revised Code Section 4112.99 as amended on the basis of disability.

50. As a proximate result of the actions of Defendant Health Designs and Defendant University Hospitals complained of herein, Plaintiff has suffered personal and financial damage, harassment, and great mental and emotional stress, anxiety, humiliation and embarrassment. Plaintiff has also been forced to expend court costs and attorney's fees.

### FOURTH CLAIM FOR RELIEF
**Intentional Infliction of Emotional Distress against Defendant University Hospitals Health System and Defendant Health Designs Plus**

51. Plaintiff incorporates each and every allegation contained in paragraphs one (1) through fifty (50) of this Complaint, supra, by reference in its entirety as if fully restated herein.

52. Plaintiff states that during the course of her employment, Defendant Health Designs intentionally engaged in a course of conduct which was outrageous and beyond all possible bounds of decency and such that no reasonable person could be expected to endure the same. Plaintiff states that Defendants' conduct was calculated to cause and did cause Plaintiff to suffer serious emotional stress.

53. Plaintiff states, Defendants' EAP rep., Ms. Georgene Kohlbacher accused Plaintiff of slurred speech despite her knowledge of Plaintiff's disability; Ms. Kohlbacher forced Plaintiff to complete a "chemical dependency" evaluation when she originally told Plaintiff to complete a "Fitness for Duty" evaluation and knew that Plaintiff's speech issues were caused by Plaintiff's disability and not a drug or alcohol abuse problem; Ms. Kohlbacher forced Plaintiff to complete an IOP program despite Ms. Kohlbacher's knowledge of Plaintiff's disability and Plaintiff's therapist's opinion that Plaintiff did not need the IOP program; and Ms. Kohlbacher forced

11

Plaintiff to undergo additional weekly drug and alcohol screens for a two year period, despite the length of the program not being company policy, Plaintiff already completed the unnecessary IOP program, and Ms. Kohlbacher knew Plaintiff's speech issues derived from her disability and not a drug or alcohol abuse problem.

54. As a proximate result of the actions of Defendant Health Designs and Defendant University Hospitals complained of herein, Plaintiff has suffered personal and financial damage, harassment, and great mental and emotional stress, anxiety, humiliation and embarrassment. Plaintiff has also been forced to expend court costs and attorney's fees.

### FIFTH CLAIM FOR RELIEF
**Negligent Hiring, Retention and Supervision against Defendant University Hospitals Health System and Defendant Health Designs Plus**

55. Plaintiff incorporates each and every allegation contained in paragraphs one (1) through forty-four (44) of this Complaint, supra, by reference in its entirety as if fully restated herein.

56. Plaintiff states that she was subjected to improper discipline as a result of a defamatory and humiliating campaign. Plaintiff states that during this period of time supervisory staff and management were incompetent in exercising their respective duties as supervisor in an appropriate manner. Throughout Plaintiff's tenure, Plaintiff was subjected to outrageous rumors about her use of drugs and alcohol and fabricated facts used against her that resulted in Plaintiff having to complete lengthy, unnecessary substance abuse programs.

57. Plaintiff states that Defendants and its higher managerial employees had actual or constructive knowledge of the supervisor's incompetence and of her inappropriate dealings with Plaintiff.

58. Plaintiff alleges that Defendants and its other owners and managers were negligent in hiring and retaining the aforesaid supervisor or supervisors to supervise and/or to work with

Plaintiff. This negligence on the part of Defendants was the proximate cause of Plaintiff's injuries.

59. As a proximate result of the actions of Defendant Health Designs and Defendant University Hospitals complained of herein, Plaintiff has suffered personal and financial damage, harassment, and great mental and emotional stress, anxiety, humiliation and embarrassment. Plaintiff has also been forced to expend court costs and attorney's fees.

**WHEREFORE**, Plaintiff, Laura Greer, demands judgment against Defendants for compensatory and punitive damages for emotional distress, anxiety, humiliation and embarrassment in an amount exceeding $25,000.00 plus her costs, interest and reasonable attorney fees. Plaintiff seeks an amount of liquidated damages equal to her damages and her costs and attorneys fees all together with prejudgment and post judgment interest. Plaintiff further prays for whatever other legal or equitable relief she may appear to be entitled to.

Respectfully submitted,

**WASSERMAN, BRYAN, LANDRY & HONOLD, LLP**

**s/Francis J. Landry**
Francis J. Landry
Attorney for Plaintiff, Laura Greer

### JURY DEMAND

Plaintiff demands a jury trial as to all issues to triable in the within cause.

s/Francis J. Landry
Francis J. Landry