**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| LAURA GREER, | ) | CASE NO. 1:17-cv-001438 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| UNIVERSITY HOSPITALS HEALTH | ) | |
| SYSTEM, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants University Hospitals Health System, Inc. ("UHHS") and Health Design Plus, Inc. ("HDPI") (UHHS and HDPI are collectively referred to as "Defendants"), by and through their undersigned counsel, and pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby request that this Court grant them summary judgment as to all remaining claims set forth in Plaintiff Laura Greer's ("Plaintiff") Second Amended Complaint on the grounds that there are no genuine issues of material fact and Defendants are entitled to judgment as a matter of law. On April 20, 2018, this Court granted Defendants' Third Partial Motion to Dismiss and dismissed Counts One, Four and Five of the Second Amended Complaint.

Based on this Court's dismissal order, Counts Two, Three, Six, and Seven of the Second Amended Complaint remain. Counts Two, Three and Six allege disability discrimination under state and federal law. Count Seven alleges retaliation. Summary judgment should be granted on the disability claims because Plaintiff is not disabled, Plaintiff did not request any reasonable accommodations, and Defendants treated Plaintiff consistent with state and federal law. Plaintiff had a serious drug issue and Defendants took reasonable actions to permit Plaintiff to continue working while protecting Defendants and Defendants' customers and employees from Plaintiff's

1

continued illegal drug use.  Plaintiff's retaliation claim fails because Plaintiff's failed drug test and resulting drug testing program were already in place prior to the filing of the charges.

This Motion is supported by the attached Memorandum in Support and the deposition transcript of Plaintiff.

                    Respectfully submitted,

                    */s/ Gregory C. Scheiderer*
                    David A. Campbell (0066494)
                    Gregory C. Scheiderer (0087103)
                    Donald G. Slezak (092422)
                    Vorys, Sater, Seymour and Pease LLP
                    200 Public Square, Suite 1400
                    Cleveland, Ohio 44114
                    Phone: (216) 479-6100
                    Fax: (216) 479-6060
                    dacampbell@vorys.com
                    gcscheiderer@vorys.com
                    dgslezak@vorys.com

                    *Attorneys for Defendants*

**MEMORANDUM IN SUPPORT**

**I.     SUMMARY OF THE ARGUMENT**

It is well-established that employers have the right to test and discipline employees for drug abuse. *E. Associated Coal Corp. v. Mine Workers*, 531 U.S. 57, 62 (2000); *Counts v. Kraton Polymers, U.S. L.L.C.*, 260 Fed. Appx. 825, 832 (6th Cir. 2008). This lawsuit arises out of Laura Greer's ("Plaintiff") admitted abuse of drugs during her employment with Defendants Health Design Plus, Inc. ("HDPI") and University Hospital Health System, Inc. ("UHHS") (collectively, "Defendants"). In her deposition, Plaintiff admitted to not only abusing prescription pain pills for more than a decade, but also to taking prescription medications without prescriptions.

Due to Plaintiff's positive drug screen in 2016, Defendants required Plaintiff to submit to weekly drug testing in order to continue her employment. It is undisputed that Plaintiff missed multiple drug tests, had diluted samples on multiple drug tests and had unreasonably high levels of prescription drugs in her system on multiple drug tests. However, despite the failed drug test and other drug testing issues, Defendants continued Plaintiff's employment until her unrelated attendance issues resulted in her violation of Defendants' absenteeism policy.

Plaintiff alleges that Defendants' drug testing requirements constitute disability discrimination and disability harassment under state and federal law. To the contrary, the undisputed facts demonstrate that Defendants had grounds to discharge Plaintiff for a failed drug test, but elected to permit Plaintiff to continue employment if she partook in weekly drug testing. Such a drug testing requirement is reasonable and is consistent with state and federal law. *Counts*, 260 Fed. Appx. at 827 (48-month drug testing requirement as a condition of continued employment). Plaintiff's discharge had no relation to Plaintiff's drug testing. Rather, Plaintiff

1

accumulated unexcused absences and was discharged pursuant to Defendants' attendance policy after receiving written warnings advising her of the repercussions of her continued unexcused absences. Accordingly, summary judgment should be entered in favor of Defendants on the remaining claims in Plaintiff's Second Amended Complaint.

## IV. RELEVANT FACTS

### A. Plaintiff's Employment With HDPI.

Plaintiff was hired by HDPI[1] in 2001 as a claims processor. (Dep. Plaintiff (hereafter "Dep. Plaintiff at __") at 27-28).[2] HDPI acts as a third-party administrator for various employer medical plans. (Dep. Plaintiff at 31). Plaintiff reviewed claims submitted under the employer health plans and determined whether the claims should be approved. (Dep. Plaintiff at 31-32).

Plaintiff performed these duties for HDPI at her home since 2003. (Dep. Plaintiff at 29). Plaintiff utilized a computer at her home and typically only had email contact with her supervisors and managers. (Dep. Plaintiff at 36-37). Plaintiff had no performance issues in 2016 or 2017. (Dep. Plaintiff at 26-27). Similarly, Plaintiff did not request any accommodations and had no work restrictions in 2016 or 2017. (Dep. Plaintiff at 22-24).

### B. Plaintiff Admittedly Abused Drugs During Her Employment.

Plaintiff had two back surgeries early in her employment with HDPI. (Dep. Plaintiff at 10). The second back surgery took place in 2008. (Dep. Plaintiff at 11). Due to the back surgeries, Plaintiff was prescribed Percocet. (Dep. Plaintiff at 37-38). Plaintiff admits to taking Percocet every day for ten years through January of 2016. (Dep. Plaintiff at 40-41). Plaintiff states that she was prescribed 187 Percocet tablets each month. (Dep. Plaintiff at 37-38).

---

[1] During Plaintiff's HDPI employment, UH purchased HDPI's assets. (Dep. Plaintiff at 94).
[2] Cited pages from Plaintiff's deposition are attached hereto as Exhibit 1.

2

In addition to the prescription, Plaintiff admits that she bought additional Percocet from others to satisfy her drug needs. (Dep. Plaintiff at 48).[3] Plaintiff also admits that she purchased Xanax from a friend and used the Xanax without a prescription during her employment with HDPI. (Dep. Plaintiff at 50-51 and Ex. 3).

### C. Plaintiff Voluntarily Admits Herself into a Rehabilitation Facility.

On January 14, 2016, Plaintiff voluntarily admitted herself to Arrowhead Behavioral Health ("Arrowhead"), a rehabilitation facility. (Dep. Plaintiff at 37-38, 47 and Exs. 2 and 3). Plaintiff's stated reason for entering rehabilitation was because she "was unsure about how to go about getting off" of the drugs. (Dep. Plaintiff at 38). The rehabilitation documentation confirms Plaintiff's Percocet and Xanax abuse. (Dep. Plaintiff at Exs. 2-3). However, the intake documentation also provides that Plaintiff was using Heroin. (Dep. Plaintiff at Ex. 2).

Plaintiff contacted Defendants to let them know that she was abusing Percocet, that she did not know how to stop abusing the Percocet, that she was entering Arrowhead, and that she needed short-term disability benefits because she believed the rehabilitation program would be thirty days. (Dep. Plaintiff at 41-43, 51, and 55). The Arrowhead program ultimately was only three days. (Dep. Plaintiff at 39-40, 58 and Ex. 5). When released, Arrowhead recommended that Plaintiff continue treatment, but Plaintiff declined. (Dep. Plaintiff at Ex. 4).

### D. Plaintiff Returned To Work After Being Discharged From Arrowhead.

Plaintiff was permitted to return to work with HDPI following her discharge from Arrowhead. (Dep. Plaintiff at 64-65). Plaintiff was not placed in Defendants' employee assistance program ("EAP program") at that time. (Dep. Plaintiff at 65). Rather, Plaintiff saw her own counselor from February until June of 2016. (Dep. Plaintiff at 65-66).

---

[3] Plaintiff admitted to drug issues at her deposition that were unknown to Defendants until this lawsuit. These drug issues, had they been known by Defendants during Plaintiff's employment, would have resulted in her discharge.

3

The private counseling was not successful. (Dep. Plaintiff at Ex. 6). In Plaintiff's initial session, the counselor questioned whether Plaintiff was able to return to work and reported that Plaintiff "[a]ppeared a bit sedated." (Dep. Ex. 5). In her second counseling session, the counselor reported that Plaintiff failed to attend her 12 step meeting. (Dep. Ex. 6). Plaintiff admits that she disliked the 12 step meetings and would often not attend the required meetings. (Dep. Plaintiff at 69). Due to the continuing issues, the counselor required Plaintiff to submit to drug testing. (Dep. Plaintiff at 70-71). Plaintiff eventually dropped out of treatment altogether. (Dep. Plaintiff at 74-75 and Ex. 6). Importantly, Plaintiff's treatment was far from complete at the time she dropped out of treatment. (Dep. Plaintiff at Exhibit 6). Indeed, it was recommended that Plaintiff not only continue with treatment beyond June of 2016, but that Plaintiff needed "a higher level of care" than what she was receiving at that time. (Dep. Plaintiff at Ex.6).

### E. **Plaintiff is Deemed Unfit For Work.**

Plaintiff admits that her counselor advised Defendants that Plaintiff was not receptive to the counselor's treatment plan. (Dep. Plaintiff at 76). Around the same time that Plaintiff dropped out of counseling, Plaintiff began to exhibit unusual behavior at work. (Dep. Plaintiff at Ex.7). Specifically, between June 13, 2016, and June 29, 2016, Plaintiff spoke with her supervisor on several occasions via email and telephone concerning issues Plaintiff was allegedly having with her computer system. (Dep. Plaintiff at Ex. 7). During these exchanges, Plaintiff had difficulty following directions, delayed reaction time, difficulty completing simple tasks, difficulty staying on topic, and exhibited slurred speech. (Dep. Plaintiff at 66, 82, 108 and Ex. 7. Plaintiff does not deny that her speech was slurred. (Dep. Plaintiff at 84-87).[4]

---

[4] Prior to June of 2016, Plaintiff admits that she was never alleged to have slurred speech. (Dep. Plaintiff at 83).

4

Because Plaintiff exhibited the aforementioned unusual behavior several times in such a short period of time, Defendants placed Plaintiff on paid administrative leave pending the successful completion of a fitness for duty examination. (Dep. Plaintiff at 82, 88-89, 93, 108 and Exs. 12 and 16). Plaintiff took her fitness for duty test on July 12, 2016. (Dep. Plaintiff at Exs. 12 and 16). When Plaintiff arrived to the test, she "appeared obviously sedated, slurring her words, sleepy, ataxic, bending forward, leaning on walls to support herself walking, and vomited in the office while speaking to the receptionist." (Dep. Plaintiff at Ex. 16). Unfortunately, Plaintiff's drug test was positive. (Dep. Plaintiff at Ex.16).[5] Plaintiff does not dispute the failed drug test. (Dep. at 106-107). In fact, Plaintiff admits to taking Percocet several days prior to the fitness for duty examination. (Dep. Plaintiff at 108-110). Plaintiff was advised that she could return to work upon the successful completion of an intensive outpatient program ("IOP program") as well as agreeing to random drug testing. (Dep. Plaintiff at 88-89, 93, 119-120).

### F. **Plaintiff Participates In Defendants' EAP Program.**

Plaintiff returned to work on September 26, 2016. (Dep. Plaintiff at 89 and Ex. 12). As a condition to returning to work, Plaintiff was required to participate in Defendants' EAP program for a period of two years. (Dep. Plaintiff at 96 and Ex. 12). As part of the EAP program, Plaintiff was required to submit to random weekly drug tests. (Dep. Plaintiff at 96 and Ex. 12). Random drug tests were scheduled on Mondays, Wednesdays, or Fridays, and Plaintiff was required to call the EAP program on these days to determine whether she was required to submit to a drug test that day. (Dep. Plaintiff at Exhibit 12). The EAP Program further provides that, should Plaintiff anticipate the need to take time off through vacation, FMLA, or any other reason, that Plaintiff was required to contact the EAP program to reschedule her drug tests. (*Id.*).

---

[5] Plaintiff was not prescribed this medication at the time of the test. (Dep. Plaintiff at 105-106).

### G.     <u>Plaintiff Fails To Comply With The Requirements Of Her EAP Program.</u>

Plaintiff had issues complying with the requirements of the EAP Program. Specifically, several of Plaintiff's drug tests—including her first drug test in the EAP Program—revealed diluted results and/or levels of controlled substances that far exceeded any therapeutic dose. (Dep. Plaintiff at Exs. 13-15).

In addition, Plaintiff admits that she failed to attend many of her scheduled drug tests during the EAP Program. (Dep. Plaintiff at 97-98, 115 and 23). Specifically, Plaintiff admits that she called off from work on many of the days in which she was scheduled to take a drug test. (Dep. Plaintiff at 97-99).

As to Plaintiff's absences, Plaintiff failed to provide the requisite documentation to support an excused absence on many of the days in which she called off from work. (Dep. Plaintiff at Exs. 18 and 20). Accordingly, Plaintiff accumulated dozens of unexcused absences in violation of Defendants' attendance policy. (Dep. Plaintiff at Exs. 18 and 20). As a result Plaintiff was issued two written corrective actions in late 2017. (Dep. Plaintiff at Exs. 18 and 20). Specifically, Plaintiff was issued a Confirmation of Counseling on September 21, 2017, resulting from nearly 20 unexcused absences between December 2016 and August 2017. (Dep. Plaintiff at Ex.18). Plaintiff was instructed that she was required to follow Defendants' attendance policy at all times, including the requirement that Plaintiff complete and submit paperwork pertaining to any leaves of absence she may have. (Dep. Plaintiff at Ex. 18). Plaintiff was further advised that any other attendance issues would result in additional discipline. (Dep. Plaintiff at Ex. 18).

Within weeks, Plaintiff received a final written warning pertaining to the same attendance issues outlined in her September corrective action. (Dep. Plaintiff at Ex. 20). Specifically, Plaintiff received a final written warning on October 31, 2017 as a result of her missing a

6

scheduled drug test and failing to follow-up her absence with completed documentation concerning her absence. (Dep. Plaintiff at Ex. 20). Plaintiff was advised that any further disciplinary action could lead to her discharge. (Dep. Plaintiff at Ex. 20).

### H. Plaintiff's Discharge For Attendance Violations.

Despite receiving two written warnings within weeks of each other, Plaintiff's attendance issues persisted. (Dep. Plaintiff at Ex. 22). Specifically, Plaintiff requested to take a vacation from November 14, 2017, through November 20, 2017. (Dep. Plaintiff at Ex. 21). Because Plaintiff had exhausted all of her paid time off, Plaintiff's request for vacation was denied. (Dep. Plaintiff at 134-35 and Ex. 21). Plaintiff thereafter submitted FMLA paperwork seeking to use FMLA for the trip. (Dep. Plaintiff at 133-35). Plaintiff's FMLA leave was ultimately denied because the requested leave was not covered by the FMLA. (Dep. Plaintiff at 133-35).[6] Plaintiff admits that she was advised that if she failed to report to work on the days in question, she would be terminated. (Dep. Plaintiff at Exs. 22 and 23).

Despite Defendants' instructions, Plaintiff chose to take the vacation and, therefore, was absent from November 13, 2017, through November 20, 2017. (Dep. Plaintiff at Exs. 22 and 23). Accordingly, because Plaintiff had willfully violated Defendants' instructions and UH policy, Plaintiff was discharged on November 22, 2017. (Dep. Plaintiff at Ex. 22).

### I. Plaintiff's Alleged Disabilities.

Plaintiff did not request any accommodations and she had no work restrictions in 2016 or 2017. (Dep. Plaintiff at 22-24). This lawsuit, however, alleges disability discrimination. (Doc. #27, Second Amended Complaint).

---

[6] Plaintiff admits that her son did not receive deployment orders in 2017. (Dep. Plaintiff at Exhibit 23).

Plaintiff alleges that her slurred speech was due to thyroid surgery that took place prior to 2006. (Dep. Plaintiff at 83-84). Until June of 2016, Plaintiff was never accused of slurring her speech. (Dep. Plaintiff at 83). The only impact this surgery allegedly had on Plaintiff's employment was her claim that it, not drug use, caused her slurred speech in June of 2016. (Dep. Plaintiff at 84). In fact, until Defendants raised the slurred speech as an issue in 2016, Plaintiff did not even know that she suffered from any medical conditions as a result of her prior thyroid surgery. (Dep. Plaintiff at 84-85).

Plaintiff alleges that she has suffered from migraines for many years during her employment with HDPI. (Dep. Plaintiff at 128). Plaintiff admits that Defendants approved FMLA leave for Plaintiff on many occasions for Plaintiff's migraines. (Dep. Plaintiff at 128-29). Plaintiff further admits that Defendants allowed Plaintiff to take breaks during her work day to accommodate any issues she had with migraines. (Dep. Plaintiff at 24). Plaintiff admits that her migraines did not affect her ability to perform her job duties. (Dep. Plaintiff at 24-25). Consistent with this belief, Plaintiff admits that she did not have any work restrictions as a result of her migraines. (Dep. Plaintiff at 22, 24, 126 and 128).

As to Plaintiff's back issues, Plaintiff admits that these issues have existed for many years. (Dep. Plaintiff at 14,127-28). Plaintiff admits that Defendants approved FMLA leave for Plaintiff on many occasions for Plaintiff's back issues. (Dep. Plaintiff at 22). Plaintiff further admits that Defendants allowed Plaintiff to take breaks during the day to lie down, as needed to accommodate her back issues. (Dep. Plaintiff at 22-23 and 128). Plaintiff admits that her back issues did not affect her ability to perform her job duties. (Dep. Plaintiff at 23 and 25). Consistent with this belief, Plaintiff admits that she did not have any work restrictions as a result of her back issues. (Dep. Plaintiff at 22, 126 and 128).

### J.     Plaintiff Is Currently Unable To Work.

Shortly after Plaintiff's discharge, on December 1, 2017, Plaintiff was in a car accident. (Dep. Plaintiff at 12). Plaintiff suffered fractures in her back due to the car accident. (Dep. Plaintiff at 12). Plaintiff has been medically unable to work since December 1, 2017. (Dep. Plaintiff at 14-15 and 18). Plaintiff remains medically unable to work today and her claim for Social Security Disability Insurance was approved in February of 2018. (Dep. Plaintiff at 16-17). Accordingly, Plaintiff admits that had she not been discharged on November 22, 2017, that she would have soon thereafter required a medical leave of absence that would have continued for the foreseeable future. (Dep. Plaintiff at 18).

## V.     LAW AND ARGUMENT

### A.     Standard of Review.

"Summary judgment should be rendered 'if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013) (citing Fed. R. Civ. P. 56(a)). This Court must view the evidence in the light most favorable to Plaintiff and draw all reasonable inferences in her favor. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 390 (6th Cir. 2008). However, "[n]ot just any alleged factual dispute between the parties will defeat an otherwise properly supported motion for summary judgment; the dispute must present a *genuine* dispute of *material* fact." *Rogers*, 737 F.3d at 1030 (citing *Baxter*, 533 F.3d at 390) (emphasis in original). A factual dispute is considered "genuine" only if the fact is based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party. *Niemi v. NHK Spring Co., Ltd.*, 543 F.3d 294, 298 (6th Cir. 2008). Similarly, a factual dispute concerns a "material"

9

fact for purposes of summary judgment only if its resolution might affect the outcome of the suit under the governing substantive law. *Id*. at 298-99.

Plaintiff brings disability discrimination claims under the Americans with Disabilities Act ("ADA"), 29 U.S.C. 701, Section 504 (the "Rehabilitation Act"), O.R.C. § 4112.02, as well as a claim for retaliation under O.R.C. § 4112.02. Because Ohio courts generally follow federal law in analyzing disability discrimination and retaliation claims asserted under the Ohio Revised Code, Plaintiff's state and federal claims should be treated as one for purpose of analysis. *Garcia v. Whirlpool Corp.*, No. 3:08-cv-02944, 2010 U.S. Dist. LEXIS 118409, *9 (N.D. Ohio Nov. 5, 2010) (*citing Plant v. Morton Intern., Inc.*, 212 F.3d 929, 938-39 (6th Cir. 2000); *see also Columbus Civil Serv. Comm'n v. McGlone*, 697 N.E.2d 204 (1998); *see also Jones v. Potter*, 488 F.3d 397, 404 (6th Cir. 2007); *Gregg v. SBC/Ameritech*, Nos. 2:02-cv-980, 2:02-cv-1232, 2:03-cv-636, 2005 U.S. Dist. LEXIS 12577, *25-26 (S.D. Ohio June 24, 2005); *Bowers v. Hamilton City Sch. Bd. of Educ.*, 12th Dist. Butler No. CA2001-07-160, 2002 Ohio App. LEXIS 1356, *11 (Mar. 25, 2002).

### B. **Plaintiff's Disability Claim Under The Rehabilitation Act Fails As A Matter Of Law Because Plaintiff Was Not A Federal Employee.**

Count Two of Plaintiff's Second Amended Complaint alleges disability discrimination and harassment under Section 504 of the Rehabilitation Act. (Doc. #27 at ¶38). The Rehabilitation Act, however, only applies to "federal agencies." *Hiler v. Brown*, 177 F.3d 542, 545 (6th Cir. 1999). Defendants are not federal agencies and Plaintiff was not a federal employee. Accordingly, Count Two fails as a matter of law.

### C. **Plaintiff's Disability Claims Fail As A Matter Of Law.**

To recover on a claim of discrimination under either the ADA or Ohio law, Plaintiff must prove that: (1) she is disabled; (2) she is qualified for the position with or without a reasonable

10

accommodation; (3) she suffered an adverse employment action; (4) Defendants knew or had reason to know of Plaintiff's disability; and (5) she was treated less favorably than similarly situated non-disabled employees. *See Hopkins v. Electronic Data Sys.*, 196 F.3d 655, 660 (6th Cir. 1999); *see also Back v. United States Postal Serv.*, No. 99-5294, 2000 U.S. App. LEXIS 6133, *8-9 (6th Cir. Mar. 29, 2000).[7] If Plaintiff is able to satisfy her prima facie case, then the burden shifts to Defendant to articulate a legitimate non-discriminatory reason for its actions which the Plaintiff must then prove is pretext. *Hopkins*, 196 F.3d at 660 (6th Cir. 1999). Plaintiff cannot meet the first, fourth, or fifth elements of her prima facie case.

### 1. Plaintiff was Not Disabled and Defendants Did Not Know of Plaintiff's Alleged Disability

Plaintiff's claims for disability discrimination fail as a matter of law because Plaintiff was not disabled. A person is disabled under the ADA if that person "(1) has a physical or mental impairment that substantially limits one or more of the major life activities; (2) has a record of such impairment; or (3) has been regarded as having such an impairment." *Breitfelder v. Leis*, 151 Fed. Appx. 379, 383-84 (6th Cir. 2005).

Plaintiff's deposition testimony confirms that she did not suffer from a disability. Plaintiff had no work restrictions in 2016 and 2017 and she did not request any accommodations. (Dep. Plaintiff at 22-24). The impairments reported by Plaintiff had all been present for many years and Plaintiff worked without performance issues during that long period. (Dep. Plaintiff at

---

[7] Plaintiff also alleges in her Second Amended Complaint that she was subjected to harassment based upon her alleged disability. However, Plaintiff has presented no evidence whatsoever that she engaged in any harassing conduct, does not allege that she complained of any alleged harassment, admits to working from home during the relevant period, and was not disabled. Accordingly, to the extent that she is asserting a claim for harassment, such a claim fails as a matter of law. *See Poole v. M-Tek, Inc.* No. 3:08 CV 2316, 2009 U.S. Dist. LEXIS 120558, *23-24 (N.D. Ohio Dec. 29, 2009) (setting forth prima facie case for harassment based upon disability); *see also Boone v. Commonwealth*, No. 11-75-DCR, 2012 U.S. Dist. LEXIS 56242, *8-9 (E.D. KY Apr. 23, 2012).

26-27). Plaintiff admits that Defendants approved FMLA leave for Plaintiff on many occasions for her migraines and back issues. (Dep. Plaintiff at 22 and 128-29).

Plaintiff was placed in the EAP program due to a failed drug test. Plaintiff does not dispute the results of the failed drug test. Rather, she admits that she was inappropriately taking a prescription medication at the time. Accordingly, based on Plaintiff's deposition testimony, her disability claims fail as a matter of law because she was not disabled.

### 2. Plaintiff Was Not Treated Differently Than Any Similarly Situated Individuals Outside of Her Protected Class

Plaintiff was required to submit to Defendants' EAP program because she exhibited cause for drug testing and the drug test was positive. Plaintiff could have been discharged for the positive drug test (for a non-prescribed drug), but Defendants permitted Plaintiff to return to work if she completed the EAP program. Although Plaintiff agreed to the EAP program, her conduct in the EAP program raised many red flags. Nonetheless, Plaintiff was permitted to work and was not discharged until her attendance issues violated UH's attendance policy. Plaintiff points to no other employee who partook in such conduct and was not put into the EAP program. Accordingly, Plaintiff cannot establish the second element of her disability claims. *See Hopkins v. Electronic Data Sys.*, 196 F.3d 655, 660 (6th Cir. 1999) (Plaintiff unable to satisfy prima facie case for disability discrimination where he could not show he was treated differently than similarly situated employees outside of his protected class); *Counts v. Kraton Polymers, U.S. L.L.C.*, 260 Fed. Appx. 825, 827 (6th Cir. 2008) (48 month EAP program was lawfully imposed due to positive drug test).

### 3. Plaintiff Cannot Show that Defendants' Legitimate, Non-Discriminatory Reasons for Their Actions Were Pretextual

Assuming, *arguendo*, that Plaintiff is able to satisfy her prima facie cases for her claims for disability discrimination—which she cannot do—Defendants nonetheless have a legitimate,

non-discriminatory reason for each of the alleged adverse actions, which Plaintiff cannot prove are pretext for unlawful discrimination. As an initial matter, Plaintiff alleges the following adverse actions: (1) Plaintiff's participation in the IOP program; (2) Plaintiff's participation in the EAP program; and (3) Plaintiff's discharge.

First, as to Plaintiff's discharge, this Court ruled that Plaintiff's discharge was legitimate when it granted Defendants' Motion to Dismiss Plaintiff's FMLA claim. Indeed, the facts are clear that Plaintiff's November 2017 absences did not qualify for FMLA leave and Plaintiff was subsequently terminated for violating Defendants' attendance policy. As to Plaintiff's attendance, Plaintiff admits to having multiple absences, admits to receiving multiple disciplinary actions pertaining to her absences, and admits that she was placed on a final written warning and told any further attendance violations would result in her discharge. (Dep. Plaintiff at Exhibit 23). Plaintiff provides no evidence to show that her discharge for violating Defendants' attendance policy was pretext for unlawful discrimination.

As to Defendants' decision to require Plaintiff to submit to the IOP program, this Court has already found Defendants' reasons for requiring Plaintiff to submit to the EAP program to be legitimate. Indeed, in dismissing Plaintiff's FMLA claim this Court stated that "Plaintiff has not shown that Defendants' proffered reasons [for the IOP] were pretext in light of the report of Plaintiff's slurred speech just prior to her being placed on leave, as well as Plaintiff's positive test for benzodiazepines." (ECF # 32 at 9). The reasons underlying Defendants' decision to require Plaintiff to participate in its weekly drug screens upon her return to work are based upon these same reasons and, therefore, the Court's ruling with respect to the IOP program as similarly applicable to the EAP Program. Further, "[a]n employer does not discriminate in violation of the ADA by administering tests for the illegal use of drugs to former substance

13

abusers more frequently than it administers tests to those not identified as former substance abusers." *Buckley v. Consolidated Edison Co.*, 155 F.3d 150, 156 (2d Cir. 1998). Accordingly, Defendants' decision to put Plaintiff into its EAP program and submit to drug testing was not discriminatory as a matter of law. *See Keith v. Ashland, Inc.*, No. 98-4539, 2000 U.S. App. LEXIS 1940, *13-14 (6th Cir. Feb. 8, 2000) (employer's decision to condition plaintiff's return to work on the successful completion of a fitness for duty exam did not violate EAP where employer believed plaintiff was not capable of performing job duties).

Accordingly, Plaintiff cannot show that Defendants' legitimate, non-discriminatory reasons for its actions are pretext for unlawful discrimination and, therefore, her claims for disability discrimination fail as a matter of law.

  **C.**  **Plaintiff's Claim for Retaliation Fails as a Matter of Law**

In order for Plaintiff to satisfy her prima facie case for retaliation, she must prove that (1) she engaged in protected activity; (2) Defendants were aware of Plaintiff's protected activity; (3) Defendants took adverse employment action against Plaintiff; and (4) there is a causal connection between the protected activity and the adverse employment action. *Mallory v. Noble Corr. Inst.*, 45 Fed. Appx. 463, 471 (6th Cir. 2002). Plaintiff cannot satisfy the fourth element of her prima facie case.

As to the IOP and EAP, Plaintiff was already required to participate in the IOP and EAP program prior to the filing of her EEOC charges. Accordingly, Plaintiff cannot show that there was a causal connection between the IOP and EAP and her charges of discrimination. *See Reynolds v. Fed. Express Corp.*, 544 Fed. Appx. 611, 615 (6th Cir. 2013) (adverse actions contemplated before the protected activity do not establish a causal connection); *see also Yedes v. Oberlin College*, 965 F. Supp. 2d 871, 886 (N.D. Ohio 2012) ("[i]t is clear that alleged adverse

14

employment actions taken before Plaintiff engaged in protected activity are not causally related to the protected activity.").

As to Plaintiff's discharge, as set forth previously herein, this Court has found Defendants' reasons for discharging Plaintiff—her violation of Defendants' attendance policy—to be legitimate. Further, Plaintiff's discharge occurred nearly one year after her EEOC charges and, therefore, does not establish a causal connection as a matter of law. *See Tingle v. Arbors at Hilliard*, No. 2:09-cv-00159, 2011 U.S. Dist. LEXIS 43281, *23-24 (S.D. Ohio Apr. 21, 2011); (eight month gap between protected activity and adverse action is insufficient to establish an adverse action); *see also Cooper v. City of North Olmsted*, 795 F.2d 1265 (6th Cir. 1986) (finding four month delay between filing of covered complaint and discharge precludes *prima facie* case of retaliation)); *see also Henderson v. Chrysler Grp., LLC*, 610 Fed. App'x 488, 494-95 (6th Cir. 2015) (finding a six-to-seven month gap between the protected activity and the adverse action insufficient to create a triable issue of fact). As to Plaintiff's Complaint, Plaintiff offers no evidence whatsoever that Defendants' decision to discharge Plaintiff was in retaliation for the filing of the instant lawsuit other than temporal proximity. Importantly, temporal proximity alone is rarely sufficient to establish a causal connection. *See Wasek v. Arrow Energy Servs.*, 682 F.3d 463, 471-72 (6th Cir. 2012) ("we have repeatedly cautioned against inferring causation based on temporal proximity alone."); *see also Kuhn v. Washtenaw County*, 709 F.3d 612, 628 (6th Cir. 2013) ("[t]he law is clear that temporal proximity standing alone, is insufficient to establish a causal connection for a retaliation claim") (quoting *Tuttle v. Metro. Gov't Nashville*, 474 F.3d 307 (6th Cir. 2007). Accordingly, because Plaintiff cannot show a causal connection between her protected activity and the adverse actions, Plaintiff's claim for retaliation fails as a matter of law.

## IV. CONCLUSION/ADHERENCE TO LR 7.1

This lawsuit has been assigned to the standard track and the Memorandum in Support adheres to the page limitations set forth in Local Rule 7.1 of the United States District Court for the Northern District of Ohio. Based on the Motion and Memorandum in Support, Defendants respectfully request that summary judgment be granted in their favor on all remaining claims.

    Respectfully submitted,

    */s/ Gregory C. Scheiderer*
    David A. Campbell (0066494)
    Gregory C. Scheiderer (0087103)
    Donald G. Slezak (092422)
    Vorys, Sater, Seymour and Pease LLP
    200 Public Square, Suite 1400
    Cleveland, Ohio 44114
    Phone: (216) 479-6100
    Fax: (216) 479-6060
    dacampbell@vorys.com
    gcscheiderer@vorys.com
    dgslezak@vorys.com

    *Attorneys for Defendants*

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the foregoing was filed electronically on this 2nd day of July 2018.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

/s/ *Gregory C. Scheiderer*
*One of Attorneys for Defendants*