# HEALTH DESIGN PLUS
# ROLES AND RESPONSIBILITIES

| | |
|---|---|
| Job Title | Claims Processor |
| Department # and Name | # 90  Claims |
| Reports To | Claims Supervisor |
| Exempt/Non-Exempt | Non-Exempt |

## Job Summary

- To ensure that all claims received for medical, dental and vision services are paid accurately and promptly in accordance with policies and procedures, client specific summary plan descriptions and performance parameters set forth in the client's contract.

## Key Responsibilities

- Meet the HDP productivity and quality standards that relate to the processing of claims
- Ability to consistently meet Production (22-25 claims per hour) and quality standards
- Ability to read explanation of benefits and apply coordination of benefits
- To ensure all the performance requirements are met for the client
- Ability to understand and process multiple different client benefit plans
- To identify issues in the system or claim flow impacting the quality and/or productivity of the department and report them to the supervisor/manager

## Job Requirements *(Education/Certification/Skills/Competencies/Experience)*

- Minimum 2 year medical claims processing experience
- Knowledge of health benefit plans and health benefit terminology
- Knowledge of medical terminology
- Understand CPT, IDC9 and HCPCS coding
- Experience with dental and vision claims preferred, but not necessary
- Ability to utilize a claims processing system
- Ability to read an Explanation of Benefit and apply Coordination of Benefits
- Proficiency in Microsoft Excel and Word
- Good communication skills, both written and oral
- Good organization skills



DEFENDANT'S EXHIBIT
5/23/18
COLLINS REPORTING

Revised 3/2015

Approved
DEFENDANT 000090

CONFIDENTIAL



GREER, LAURA 046
M# 000025465 01/12/1970
NURSING ADMISSION A# 10103030010 01/14/2016
ANTHEM BC/BS
DR. S. YECHOOR   F IDL

LOC __✓__ INPATIENT _____ PHP

Patient: _Laura Greer_ _____ Date: _1-14-16_ Time: _1840_

1. _46_ Year Old _F_ admitted to Room _213.1_ by Dr. _Yechoor_

   With a diagnosis of _opiate dependence_

2. Patient is: _Pt alert & oriented. Mood is stable. Denies_
   _SF/HI. Vitals WNL. Gait is steady. Cooperative_
   _during assessment._

3. Detox Protocol _COW, Benzo_

4. PSA- o Completed by _assessment_ _____ o To be done _____

5. Nursing Assessment Completed by _Amy_

6. Problem areas Identified:
   a. _Fall RISK_
   b. _Chronic pain_
   c. _____

7. Admission Labs Ordered _Yes_

8. EKG ordered _no_

9. Personal Belongings search and body search done by _Amanda & Amy_

10. Patient states reason for admission is: "_To get off heroin_"

11. Oriented to the unit, encouraged to approach staff with questions or concerns by _Amy_

12. Other pertinent information
    _____
    _____

Signature: _Hallbron n_

DEFENDANT'S
EXHIBIT
2
5/23/18
COLLINS REPORTING

11'09

GREER 000235

**Arrowhead BEHAVIORAL HEALTH**
*Life is Waiting...*

GREER, LAURA    046
M# 000025465 01/12/1970
A# 10103030010 01/14/2016
ANTHEM BC/BS
DR. S. YECHOOR  F IDL

**Intake/Psychosocial Assessment**

| Pt Name (First, MI, Last): Laura Greer | DOB and Age: 46 1-12-70 | Date: 1-14-16 | Time: 1320 |
|---|---|---|---|

Pt accompanied by: Husband

Referral Source: _____

Legal Status: ☐ Voluntary ☐ Involuntary

☐ Wanding Completed
Items obtained? ☐ Yes ☐ No
If yes,

☐ Belongings secured

Legal Guardian/Custodian/POA ☐ No ☐ Yes
If yes, Name of Legal Guardian/Custodian/POA _____
Phone # _____

**Family Involvement:**
☐ Patient wishes to involve _____ in treatment _____ (relation)
☐ Release of information completed  ☑ None Reported

**PRESENTING PROBLEM** (Noting Precipitating Incident, Major Symptoms, Stressors; Family, Job, School, Relationships, Health, Financial, Disruptions of Lifestyle, Legal)
*Pt reports addiction to Percocet. Pt reports using 10-20 pills daily.*

**Alcohol/Drug History**

**AUDIT-C**
How often do you have a drink containing alcohol?
☑ Never (0) ☐ Monthly or less (1) ☐ 2-4 times a month (2) ☐ 2-3 times a week (3) ☐ 4 or more times a week (4)

How many drinks containing alcohol do you have on a typical day when drinking?
☑ 1 or 2 (0) ☐ 3 or 4 (1) ☐ 5 or 6 (2) ☐ 7 to 9 (3) ☐ 10 or more (4)

How often do you have six or more drinks on one occasion?
☑ Never (0) ☐ Less than monthly (1) ☐ Monthly (2) ☐ Weekly (3) ☐ Daily or almost daily (4)

**Total Score:** 0
The AUDIT-C is scored on a scale of 0-12. Each question above is scored from 0 to 4(the scores are in parentheses next to each response). In men, a score of 4 or more is considered positive for identifying hazardous drinking or active alcohol use disorders. In women, a score of 3 or more is considered positive.
If all of the points are from the first question and the second and third question score 0, the patient's intake over the past few months should be reviewed to confirm accuracy.

| Illegal drug use/abuse past 12 months? | ☐ No ☑ Yes | Alcohol abuse past 12 months? | ☑ No ☐ Yes |
| Prescription drug abuse past 12 months? | ☐ No ☑ Yes | | |

**Toxicology screen/ breathalyzer completed?**
☐ No ☑ Yes  If yes, results:

| | | | |
|---|---|---|---|
| Cocaine | ☐ Negative | ☐ Positive | ☐ Patient unable to provide at time of assessment |
| THC | ☐ Negative | ☐ Positive | |
| Methamphetamines | ☐ Negative | ☐ Positive | BAL: 0.0 |
| Opiate | ☐ Negative | ☐ Positive | |
| Oxycodone | ☐ Negative | ☐ Positive | |
| MDMA | ☐ Negative | ☐ Positive | |
| Amphetamines | ☐ Negative | ☐ Positive | |
| Benzodiazepines | ☐ Negative | ☐ Positive | |
| Buprenorphine | ☐ Negative | ☐ Positive | |
| Methadone | ☐ Negative | ☐ Positive | |

**Presenting with detox symptoms** ☑ No ☐ Yes  If yes, check all symptoms that apply:

☐ Tremors ☐ Vomiting ☐ Runny nose ☐ Nausea ☐ Diarrhea ☐ Chills ☐ Headache ☐ Restless ☐ Unsteady gait
☐ Body aches ☐ Fever ☐ Abdominal pain ☐ Sweats ☐ Dizziness ☐ Elevated vital signs ☐ Other (specify) _____

DEFENDANT'S EXHIBIT 3
5/23/18
COLLINS REPORTING

GREER 000281

| Drug/Substance/Alcohol/Tobacco | | Age of First Use | Date of Last Use | Amount | Frequency of Use | Pattern of use (Time of day) | How long using at reported rate | Metho (oral, Inhale Inject |
|---|---|---|---|---|---|---|---|---|
| Tobacco | ☑ yes ☐ no | 14 | today | 1/2 pk | daily | varies | years | Inha |
| Alc. | ☐ yes ☑ no | | | | | | | |
| Marijuana | ☐ yes ☑ no | | | | | | | |
| Cocaine/crack | ☐ yes ☑ no | | | | | | | |
| Opiates:  Heroin | ☐ yes ☑ no | | | | | | | |
| Oxycontin | ☐ yes ☑ no | | | | | | | |
| Percocet | ☐ yes ☐ no | 38 | 1-14-16 | 10-20 mg | pills 2-10-15 of 30's pills daily | varies | 8 yrs | Ora |
| Vicodin | ☐ yes ☑ no | | | | | | | |
| Morphine | ☐ yes ☑ no | | | | | | | |
| Methadone | ☐ yes ☑ no | | | | | | | |
| Fentanyl | ☐ yes ☑ no | | | | | | | |
| Opana | ☐ yes ☑ no | | | | | | | |
| Suboxone | ☐ yes ☑ no | | | | | | | |
| Other | ☐ yes ☑ no | | | | | | | |
| Inhalants | ☐ yes ☑ no | | | | | | | |
| Benzodiazepines: | ☑ yes ☐ no | | | | | | | |
| Xanax | ☑ yes ☐ no | unsure | today | 3-4 | daily | varies | when I have it | Ora |
| Valium | ☐ yes ☑ no | | | | | | | |
| Ativan | ☐ yes ☑ no | | | | | | | |
| Klonopin | ☐ yes ☑ no | | | | | | | |
| Other | ☐ yes ☑ no | | | | | | | |
| Amphetamines | ☐ yes ☑ no | | | | | | | |
| Barbiturates | ☐ yes ☑ no | | | | | | | |
| Hallucinogens | ☐ yes ☑ no | | | | | | | |
| Other (i.e. K2/K4/Bath salts) | ☐ yes ☑ no | | | | | | | |

History of overdose?  ☑ No  ☐ yes if yes;  ☐ accidental  ☐ intentional   When:                    On what:

Drug of Choice: _Percocet_          Longest Sobriety _NA_     When _____
Has patient ever tried to quit using on their own? ☑ No ☐ Yes # of times _____

History of Black outs: ☑ No ☐ Yes  How Often? _____     History of withdrawal seizures: ☑ No ☐ Yes  When? _____
History of DT's: ☑ No ☐ Yes

History of relapse with the past 6 months ☑ No ☐ Yes If Yes, please describe:

GREER, LAURA        046
M# 000025465 01/12/1970
A# 10103030010 01/14/2016
ANTHEM BC/BS
DR. S. YECHOOR

GREER 000282

## Alcohol/Drug Treatment History

☑ None Repo[...]

| Name of Provider Agency | Date of Service | Type of Service | Successful or Unsuccessful Discharge |
|---|---|---|---|
| | | | |
| | | | |
| | | | |

## Consequences of AoD use:

**Has patient's use impacted MH, medical conditions; family relationships (concern shown, expressed) and/or employment?**

☐ No consequences ☑ Family problems ☐ Marital problems/stress ☐ Loss of employment ☐ Work attendance ☐ Job performance
☑ Problems functioning ☑ Poor motivation ☐ Legal charges ☐ Custody Issues ☐ Medical ☐ Hospitalization ☐ Mental health

**If yes, describe:**

**Community Supports/Self Help Groups: (AA, NA, NAMIO, etc.) Sponsor: YES** ☐ **NO** ☑

## Mental Health Treatment History

**Mental Health Treatment** ☐ None Reported

| Agency | Check if Current | Past (Date) | Clinician Name/Psychiatrist |
|---|---|---|---|
| | ☐ | | |
| | ☐ | | |
| | ☐ | | |

**Psychiatric Hospitalizations:** ☑ None Reported     **Number of Psychiatric hospitalizations :**

| Hospital (list most recent) | Date of Service | Reason (suicidal, depressed, etc.) |
|---|---|---|
| | | |
| | | |
| | | |

**Previous or Current Diagnoses  (if known)** ☐ None Reported

**Past Psychotropic Medications**

☐ None Reported

| Psychotropic Medications | Reason for Discontinuation |
|---|---|
| *Wellbutrin* | — *Quit taking* — |

GREER, LAURA     046
M# 000025465 01/12/1970
A# 10103030010 01/14/2016
ANTHEM BC/BS
DR. S  [...]

GREER 000283

## Suicide Risk Assessment

Do you currently have thoughts of death or suicide? ☐ Yes ☒ No

If yes, Description of positive findings: _____

_____

_____

How strong is your desire to die? ☐ Strong  ☐ Moderate  ☐ Weak  ☒ None

How strong is your desire to live? ☐ None  ☐ Weak  ☐ Moderate  ☒ Strong

Have you had any thoughts of death or suicide in the past? ☒ Yes  ☐ No If yes, how long ago? _years ago_

Are your thoughts ☐ Increasing  ☐ Decreasing  ☐ Staying constant ☒ N/A

Do you have current intent to act? ☐ Yes ☒ No

Do you have a current plan? ☐ Yes ☒ No  If yes, specify:

When: _____ Where _____

Method: _____ Current access to means ☐ Yes ☒ No

Have you had rehearsal behaviors? ☐ Yes ☒ No  If yes, specify (i.e. putting a gun to h

neck, etc) _____

Have you had any prior attempts ☐ Yes ☒ No

If yes, specify method: ☐ Overdose  ☐ Cutting  ☐ Hanging  ☐ MVA  ☐ Shooting

Level of Risk: ☐ High  ☐ Moderate  ☒ Low

```
GREER, LAURA          046
M# 000025465  01/12/1970
A# 10103030010  01/14/2016
ANTHEM  BC/BS
DR. S. YECHOOR  F IDL
```

| DANGER TO OTHERS:<br>(Current and History) | Homicidal ideation or threats?<br>☐ Yes ☒ No<br><br>Who is threatened?<br>_____<br><br>Specific Plan? ☐ Yes ☐ No<br><br>Plan _____ | History of homicide attempts? ☐ Yes ☒ No<br><br>When: _____<br><br>Method: _____<br><br>Towards whom: _____ |
| --- | --- | --- |
| | Thoughts of aggression? ☐ Yes ☒ No<br><br>Describe:<br>_____<br><br>Towards whom: _____ | History of aggression: ☐ Yes ☒ No<br><br>Method: _____<br><br>Towards whom: _____ |

| ACCESS TO GUN OR IDENTIFIED<br>MEANS OF SELF HARM | Does the patient have access to lethal means (meds or weapons) of self harm? ☐ Yes ☐ No<br>(If so, go to the next box and mark risk factor below. If no, go to next session.)<br><br>Is there someone we can contact to remove or secure the above? ☐ Yes ☐ No<br><br>Name: _____ Phone: _____<br><br>Contact made date/time: _____ Staff Signature: _____ |
| --- | --- |

## PRESENCE OF RISK FACTORS

| | | | |
| --- | --- | --- | --- |
| ☐ Psych admits in last yr<br>☐ Current drug/alcohol abuse withdrawal<br>☐ Family history of completed or attempted suicide | ☐ Severe Insomnia<br>☐ History of reckless or self-destructive<br>☐ Serious medical illness or persistent pain | ☐ Rapid mood shifts<br>☐ Joylessness, hopelesspess, anhedonia<br>☒ Recent or impending loss of social, emotional, physical, or financial security | ☐ Vegetative symptoms<br>☐ Command Hallucinations<br><br>☐ Early marriage<br>☒ Other _____ |

Elopement Risk Factors: ☐ History of Elopement  ☐ Involuntary Status  ☐ Impulsivity  ☒ Impaired Judgment  ☐ None

GREER 000284

## PROTECTIVE FACTORS

Can you verbalize reasons for living? ___ Dependent children ___ Social Supports ___ Active religious faith
Other (specify) *Family*

Do you have proven problem solving and coping skills? ☑ Yes ☐ No If yes describe

GR___, LAURA    046
M# 000025465  01/12/1970
A# 10103030010  01/14/2016
ANTHEM BC/BS
DR. S. YECHOOR   F IDL

Do you have cultural or religious prohibitions against suicide? ☑ Yes ☐ No If yes describe

Can you tell me some positive plans for the future? ☑ Yes ☐ No If yes describe: *Family*

Can you visualize or conceive of life improving? ☑ Yes ☐ No

Can you think of actions you can take to improve your current situation? ☑ Yes ☐ No Please describe: *Family*

Have you been able to establish a working alliance with a treating professional(s) ☐ Yes ☑ No
If yes please describe:

## Trauma History (describe in comments section each element checked)

Have you ever been in a serious car accident or fire related event? ☐ YES ☑ NO
Have you or someone close to you, ever been seriously injured or gravely ill? ☐ YES ☑ NO
Have you ever experienced a natural disaster? ☐ YES ☑ NO
Have you ever had someone close to you die? ☑ YES ☐ NO  *3 yrs ago mondual*
Do you have trauma related symptoms? ☐ YES ☐ NO
    If yes, ☐ Flashbacks ☐ Nightmares ☑ Obsessive thoughts related to trauma ☐ Sleep disturbances ☐ Other:___

☐ None Reported

If yes, please describe

## Abuse History (describe in comments section each element checked)

☐ No Self Reported History of Abuse/Violence

☐ Other:

☑ Physical Abuse
☑ Emotional Abuse

☑ Victim ☐ Perpetrator

☐ Current
☐ History of, date___

☐ Domestic Violence/Abuse
☐ Elder Abuse

☐ Victim ☐ Perpetrator

☐ Current
☐ History of, date___

☐ Community Violence
☐ Sexual Abuse/Molestation

☐ Victim ☐ Perpetrator

☐ Current
☐ History of, date___

### Describe (identify if client was/is a victim of abuse or a perpetrator or both)
*Ex husband - Verbal / physical abuse*

SEXUAL ACTING OUT RISK FACTORS *(Explain any "yes" responses)*

Have you ever forced sex on another person, touched others sexually without their permission, or exposed yourself? ☐ Yes ☑ No
(if yes, describe the circumstances):

Have you ever been investigated for, charged with, or convicted of a sexual offense? ☐ Yes ☑ No
(if yes, nature of offense and what year offense occurred):

## Psychosocial Assessment

Living Situation
My Home: ☐ Rent ☑ Own ☐ Relative's/Guardian's Home ☐ Transitional housing/ halfway house ☐ Homeless Living with Friend
☐ Homeless in Shelter/No Residence ☐ Other:___

| Household Members | Relationship | Current Substance Use (i.e. etoh, THC, opiates) | Previous Substance Use (i.e. etoh, THC, opiates) |
|---|---|---|---|
| ( | Husband | NA | No  Husband take Percocutata |
| | Son | NO | NO |

GREER 000285

## Social Information

**Primary/Family/Marital/Significant Other Support Systems:**

Marital Status: ☑ Married ☐ Single ☐ Divorced ☐ Separated ☐ Widowed

Current partners name: _Paul_ _____ Length of current relationship _____ ☐ N/A

Conjugal relationship ☐ Stable relationship ☐ Significant other supportive of treatment? ☐ Yes ☑ No ☐ N/A

Are you a caretaker for anyone? ☐ Yes ☑ No
If yes who: _____ Is anyone taking care of that individual while you are here? ☐ Yes ☐ No ☐ N/A
# of children _2_ ☑ Biological ☐ Step ☐ Adopted ___
Comments

Primary supportive family member or friend: _Boys & husband_

**Pertinent Family History:** (to include family MH and AoD history) _father - ETOH, Oldest Brother ETOH._

**Childhood History:**
Father figure: ☑ Biological ☐ Step ☐ Adoptive ☐ Foster
Describe your current relationship: _don't have a relationship_

Mother figure: ☑ Biological ☐ Step ☐ Adoptive ☐ Foster
Describe your current relationship: _passed away 3 yrs ago_

Siblings: Biological _2_ Half ___ Step ___ Adopted ___ Foster ___
How do you get along with your siblings? (impact use has on relationships): _good_

**Education History** (check all that apply) ☐ GED ☑ HS Grad

☐ Other - if neither state last year completed: _____ if dropped out, why _____

☐ College /Degree: _____ ☐ Vocational/Trade Completed ☐ Other Degree: _____

**History of Learning Difficulties** ☑ None Reported ☐ Learning Disability/Type: _____ ☐ Mental Retardation
☐ ADD/ADH ☐ Reading / Writing ☐ Other: _____

**Employment** (check all that apply)
☐ Full Time (35 hrs. or more per week) ☐ Part Time (<35 hrs. per week) ☐ Unemployed/Other: _____

**Not in Labor Force**
☐ Disabled , reason _____
☐ Retired ☐ Homemaker ☐ Student ( ☐ F/T ☐ P/T ) ☐ Living in Institution
☐ Other: _____
If employed, name of employer: _Health Designs Plus_ ☐ Length of Current Employment: _15 YRS_
Job Title: _Senior Claims Examiner_ Any Professional Licensure: _____
(If Licensed with Ohio Medical Board; notify Clinical Director immediately)
Clinical Director Notified: YES ☐ NO ☐

**Attendance**
☐ Above Average ☑ Normal ☐ Tardiness ☐ Absenteeism
**Performance**
☐ Exemplary ☑ Good ☐ Average ☐ Below Average

**Occupational Stressors:** ☑ No problems ☐ Problems functioning ☐ supervisor conflict ☐ peer conflict ☐ employment in jeopardy
☐ loss of license _____

GREER, LAURA    046
M# 000025465 01/12/1970
A# 10103030010 01/14/2016
ANTHEM BC/BS

GREER 000286

**Military History:**

☐ Yes ☑ No  If yes, has the patient served in combat? _____
☐ Active Duty ☐ Reservist; Branch: _____

**Current Legal Status**

☑ _e Reported ☐ Court Ordered to Treatment ☐ Awaiting Charge ☐ AoD  GREER, LAURA  046  01/12/1970
☐ On Probation ; If yes county: _____  Probation Offi M# 000025465  01/14/2016
Phone Number: _____  A# 10103030010  ANTHEM BC/BS  DR. S. YECHOOR  F IDL

**Friendships/Social Support Relationships:**
☐ Forms Relationships ☐ Maintains friendships ☐ Supportive Friends ☐ Attends t DR  ___ns
☐ Needs social interaction ☐ Limited Support System ☑ No close friends ☐ Socially isolated ☐ Sober support
Comments:

**Religion/Spirituality:** (include any customs or practices staff may need to assist with)
Spiritual Preference: _____ n n n _____ ☐ Attends services regularly ☐ Source of Support ☐ Actively involved
☐ Source of Concern ☐ Does not attend ☐ Request clergy visit

**Meaningful Activities:** (community involvement, volunteer activities, leisure/recreation, other interests)
*denis*

**Limitations of Activities of Daily Living:** (include information relating to financial status, transportation issues, anxiety, etc.) (name at least 2)
*Poor motivation, depression*

**Strengths/Capabilities:** (name at least two)
1. *Hard Worker* 2. _____

## Problems Checklist Including Functional Domains

**Nutritional/Eating Pattern Changes/Disorders** ☐ No problems
Typ ___ diet ☐ Regular ☐ Other: _____ ☐ No changes ☐ Increased appetite ☑ Decreased appetite
☐ Loss/gain of 10 lbs or more in last month History of eating disorder: ☐ Anorexia ☐ Bulimia ☐ Binging ☐ Compulsive eating.
Use of ☐ Laxatives ☐ Diet Pills ☐ Diuretics
Describe:

**Sleep Problems** ☐ No problems
☐ Not sleeping ☑ Trouble sleeping ☐ Frequent awakening ☐ Sleeping more often ☐ Restless ☐ Night mares ☐ Night terrors
Describe:

**Depressed Mood/Sad:** ☐ None reported
☐ Suicidal ☐ Frequent crying ☑ Loss of energy ☑ Loss of motivation ☑ Changes in appetite ☐ Recurrent thoughts of death
☐ Agitated/irritable mood ☐ Poor self-care ☐ Hopeless/helpless ☑ Sad mood ☐ Self injurious behaviors ☐ Excessive guilt ☑ Grieving
Duration: _____
Describe:

**Anxiety:** ☐ None reported
☐ Panic attacks-how often _____ ☐ Sweating ☐ Nausea ☐ Trembling ☐ Dizziness ☐ Chest pain/discomfort
☐ Fear of losing control ☐ Poor concentration
Duration: _____
Describe: *"daily"*

**Manic Episode:** ☑ None reported
☐ Elevated, expansive mood ☐ Racing thoughts ☐ Inflated self-esteem/grandiose ☐ Excessive involvement in pleasurable activities
☐ Psychomotor agitation
Duration: _____
Describe:

**Pain Management:**
Any pain related issues: ☐ No ☑ Yes If yes explain: *Back / Neck, leg*
How do you address your pain?

**Bereavement Issues** ☐ none reported
☐ No ☑ Yes If yes explain: *"Mom died 3 yrs ago"*

GREER 000287

| | |
|---|---|
| Fall history: ☑ yes ☐ no<br>If yes, date of last fall: | *medical treatment needed:* no, Med Clear *(handwritten)* |

Medical History: ☐ No ☑ Yes If yes, describe: *Vit B12 deficiency*

Allergies: ☐ No ☑ Yes If yes describe: *Morse / PCN Sulfa / Vit D deficiency*

Use Oxygen: ☑ No ☐ Yes If yes, patient is on ____ liters of Oxygen

Assistive devices: ☑ No ☐ Yes If yes, ☐ Walker ☐ Cane ☐ Wheelchair ☐ Crutches ☐ Motorized Wheelchair ☐ Other:

Compliant with prescribed medications: ☐ Yes ☑ No

List of home medications brought: ☑ Yes ☐ No

Pharmacy: *Walgreens / Tinsley Dr 236*    Primary Care Physician: ☐ Yes ☐ No  If yes, Date of last visit: *(handwritten) Dr Nancy Martin William / Dr ____ / PMH*

| Clinical Interpretive Summary |
|---|

This Clinical Interpretive Summary is based upon information provided by (check all that apply):
☐ Physician   ☐ Guardian   ☐ Family/Friend   ☑ Patient/Client   ☐ Other:
☐ Service Provider   ☐ Records

| Initial Medical Screen | |
|---|---|

| Assess Vital Signs | | Unstable Values (medical consult required) | |
|---|---|---|---|
| Temperature | *98.4* | ☐ Temp> 101 | |
| Blood Pressure | *101/64* | ☐ Systolic <90 or >180 | ☐ Diastolic >100 |
| Pulse | *78* | ☐ Irregular pulse   ☐ Pulse <50 or >140 | ☐ Patient in active withdrawal |
| Gait | WNL | ☐ Unbalanced while standing/walking | ☐ Swaying while sitting |
| Respirations | WNL | ☐ Labored breathing   ☐ Shallow Breathing | ☐ Shortness of breath |
| Current Pain (1-10) | *0* | ☐ Notify physician if patient reports any pain | *Rachel Pet* |

☐ Pregnant   *NO*
☐ Lactating
☐ Any likelihood you might be pregnant
☐ Currently/recently been treated for an infection or treated with an antibiotic

☐ Recent head injury   *NO*
☐ Recent loss of consciousness
☐ Recent or active seizures
☐ Sudden onset of psychosis
☐ Overdose without medical clearance   *NO*

Tuberculosis Screen   *NO*
☐ History of active TB
☐ Persistent cough>3 weeks
☐ Afternoon or night sweats
☐ Fever in afternoon

☐ History of contagious infection, if marked; specify date and infection if known: ____
☐ History of bed bugs, if marked; specify date: ____
☐ History of MRSA or Staph infection, if marked; specify date:   *NO*
☐ No reports of above mentioned concerns

GREER, LAURA   046
M# 000025465   01/12/1970
A# 10103030010   01/14/2016
ANTHEM BC/BS
DR   YECHOOR   F IDL

GREER 000288

**Narrative Summary – Include etiology of presenting problem and maintenance of the problem; mental health history; AoD history; severity of problem:**

Pt reports addiction to percocet using up to 20 pills daily. States she also takes multiple xanex daily that are not Rx'd to her. She reports family concern et realized now poor energy et motivation et has a problem et is seeking tx for first time. Dr Yechoor admitting for detox.

| Signatures | | Date/Time |
|---|---|---|
| **Provider Signature/Credentials:** | | 1-14-16 |
| **Supervisor Signature/Credentials:** | | Date/Time |

**Complete below only if inpatient admit is ordered by physician**

| | | Date/Time |
|---|---|---|
| **Nurse given report to** | **Nurses Signature** Patterson RN | 1-14-16  1425 |
| **Physician consulted:** Yechoor | | 1-14-16  1401 |
| **Physician Signature/Credentials** | | Date/Time |
| **Assigned Therapist Signature:** | | 1/16/16  1731 |

GREER, LAURA    046
M# 000025465  01/12/1970
A# 10103030010  01/14/2016
ANTHEM BC/BS
DR  S. YECHOOR    F IDL

GREER 000289

## Mental Status Examination

| | | | |
|---|---|---|---|
| **Appearance:** | ☐ Well Groomed | ☐ Unkempt | ☑ Disheveled | ☐ Malodorous |
| **Eye Contact:** | ☐ Average | ☑ Avoidant | ☐ Intense | |
| **Speech:** | ☐ Clear | ☑ Slurred | ☐ Pressured | ☐ Rapid |
| **Thought Process:** | ☑ Logical | ☐ Loose | ☐ Blocked | ☐ Disorganized |
| **Behavior:** | ☐ Cooperative | ☐ Resistant | ☐ Agitated | ☑ Sedated |
| **Mood:** | ☐ Euthymic | ☑ Depressed | ☐ Anxious | ☐ Irritable | ☐ Labile |
| **Affect:** | ☐ Full | ☐ Constricted | ☑ Flat | ☐ Labile |
| **Insight:** | ☐ Good | ☑ Fair | ☐ Poor | |
| **Responses** | ☐ Verbalizes understanding | ☑ Verbalizes Partially | ☐ Difficulty staying on task | |

| Transfer/ Clearance at Medical Surgical Hospital: | Acute Inpatient: | Partial Hospitalization: | Intensive Outpatient: |
|---|---|---|---|
| ☐ Unstable Medical condition, which requires immediate treatment | ☐ Acute psychiatric condition requires 24 hr oversight | ☐ Requires physician-led, multidisciplinary treatment interventions | ☐ Requires structured multidisciplinary interventions |
| ☐ Medical clearance required before psychiatric or AoD treatment can proceed | ☐ Potential danger to self or others<br>☑ Less intensive treatment not safe or feasible<br>☑ Grave disability with severe deterioration in functioning<br>☑ Condition requires medically monitored detoxification | ☐ Condition would worsen without PHP structured treatment | ☐ Outpatient/ community referral: |

### Preliminary Diagnosis   ☒ DSM-V Codes (or successor)

**Principle diagnosis (formerly Axis I, II, and III):** *F11.20 Opiate Use Disorder Severe   F13.00 Sedative / Hypnotic / anxiolytic use Disorder Moderate*

**Phsychosocial Contextual Factors (formerly Axis IV):** *Severe*

GREER, LAURA - 046<br>M# 000025465 01/12/1970<br>A# 10103030010 01/14/2016<br>ANTHEM BC/BS<br>DR. S. YECHOOR   F IDL

GREER 000290

## *Social Services Therapy Note*

| **Patient Name:** Laura Greer | | | |
|---|---|---|---|
| **Date:** 1/17/16 | | **Time:** 1500-1509 | |
| **Type of Note:** ☒1:1  ☒Treatment Plan Update  ☐Treatment Plan  ☐Crisis Intervention | | | |
| ☐Discharge Note  ☐Family Session  ☐ Narrative Note  ☐Other: | | | |

### Individual Patient Observations

| | | | | |
|---|---|---|---|---|
| **Behavior:** | ☐Active | ☐Resistant | ☒Anxious | ☐Agitated |
| | ☐Limited | ☐Intrusive | ☐Inappropriate | ☐Guarded |
| | ☐Minimal | ☒Monopolizing | ☐Spontaneous | ☐Tearful |
| | ☐Attentive | ☐Drowsy | ☐Withdrawn | ☐Responsive With Prompting |
| **Affect:** | ☐Full Range | ☒Elated | ☐Blunted | ☐Incongruent |
| | ☐Alert | ☒Superficial | ☐Bright | ☐Restricted |
| | ☐Flat | ☐Labile | | |
| **Cognition:** | ☐Logical | ☐Preoccupied | ☐Loose Associations | ☒Tangential |
| | ☐Insightful | ☐Blocking | ☐Delusional | ☐Circumstantial |
| | ☐Coherent | ☐Confused | ☐Distracted | ☐Hallucinating |
| ☐ No observations if Narrative Note | | | | |

**Treatment Goals Addressed (if applicable):** ☒Substance Abuse  ☐Mental Health  ☐Other:

**Response/ Progress:** Writer met with client to review and complete discharge plan and reviewed aftercare options, client reported she doesn't need to "rack up a large bill, doesn't need medication, has no aftercare plan" Staff attempted to provide support, recommended aftercare / follow up, client declined, reported she will follow up with her pain management provider and tell them "No more pills" Displayed rapid speech and tangential thought process, difficult to redirect.

Facilitator's Signature and Credentials: _~~(signature)~~ LSW_   Date/Time: 1/17/16  1600

Co-Facilitator's Signature and Credentials: _____   Date/Time: _____

DEFENDANT'S EXHIBIT 4  5/23/18  COLLINS REPORTING

*Form Title: Social Services Individual Note*
*Revised:12/2015*
*Arrowhead Behavioral Health*

GREER, LAURA    046
M# 000025465 01/12/1970
A# 10103030010 01/14/2016
ANTHEM BC/BS

GREER 000249

## NURSING DISCHARGE NOTE

Discharge Type: _Laura G._ (Routine) Medical, AMA, Administrative)

Patient: _Laura Greer_ Date: _1-17-16_ Time: _1400_

1. Patient Discharged to: _home_

2. Discharge Placement: _Decline outpt_

3. Discharge Summary Instructions completed, reviewed, and signed.
   Copy given to the Patient: _m m_

4. Belongings returned to patient      Returned to ABH:
                                           Xtenex Shoe Laces_____ (initials)
   a. Safe _N/a_ (initials)
   b. Locked Cupboard: _m m_ (initials)
   c. Patient Bin: _m m_ (initials)
   d. Storage: _m m_ (initials)

5. Medications returned by _m m g RN_

6. Releases signed:
   a. _med rec_
   b. _crisis plan_
   c. _pk plan_

7. Copies of Labs, EKG reviewed and given to patient _Labs_

8. Other pertinent information / Progress Summary
   _AA/NA follow up - TRUE_
   _Nancy Martin MD follow up - TRUE_
   _Decline OP - FALSE_

Discharge Nurse Signature: _m m g RN_

9. Escorted to the door by _____ Date: _1-17-16_ Time: _____

Signature: _____

Form Title: NursingDischarge Form
Revised:8/2015
File in: Progress notes/Nursing
Arrowhead Behavioral Health

GREER, LAURA   046
M# 000025465 01/12/1970
A# 10103030010 01/14/2016
ANTHEM BC/BS
DR. S. YECHOOR  F IDL

GREER 000196

**Arrowhead** BEHAVIORAL HEALTH *Life is Healing*

Date Completed _____1/17/16_____ Date/Time of Scheduled Discharge_____

Reason for D/C: ☐ Successfully completed treatment ☐ Against Medical Advice ☐ Medical ☐ Administrative
Other _____

| Contact/Reason for Appointment | Address | Phone # | Appt. Time & Date | Releases signed | Refused Release | Appt. Refused |
|---|---|---|---|---|---|---|
| Psychiatrist: | | | | ☐Yes ☐No | ☐Yes ☐No | ☐Yes ☐No |
| Therapist: | | | | ☐Yes ☐No | ☐Yes ☐No | ☐Yes ☐No |
| Outpatient Program: Declines outpt AA + NA in area | | | | ☐Yes ☐No | ☐Yes ☐No | ☐Yes ☐No |
| Primary Care Physician Nancy Martin Reason: PCP | 7595 cord. 236 Findlay OH 45840 | 419-427-1984 | | ☐Yes ☐No | ☐Yes ☒No | ☒Yes ☐No |
| Suboxone Support: N/A | | | | ☐Yes ☐No | ☐Yes ☐No | ☐Yes ☐No |
| Additional Referral Source: | | | | ☐Yes ☐No | ☐Yes ☐No | ☐Yes ☐No |

Arrowhead Behavioral Health Crisis Hotline: 1-800-547-5695          Suicide Hotline: 1-800-273-TALK (8255)
www.toledoaa.com  A.A. Central Office 419-380-9862

Signature indicates discharge plans have been completed and agreed upon and acknowledgement of receipt of suicide prevention information:

_____ 1/17/16      _____ 1/17/16
Therapist   Date   Time   1503         Patient/Guardian Signature   Date   1506

To be completed at time of Discharge:
Patient and/or POA have demonstrated understanding and knowledge of:

| | Yes | No |
|---|---|---|
| Referrals and Appointments | ☑Yes | ☐No |
| When and how to seek further treatment | ☑Yes | ☐No |
| Importance of communicating with physician regarding side effects and other concerns | ☑Yes | ☐No |
| Nutritional intervention or diet | ☑Yes | ☐No |
| Medications have been explained to patient's satisfaction (potential food/drug interactions) | ☑Yes | ☐No |
| Copy of labs and EKG reviewed and given to patient | ☑Yes | ☐No |
| Safety plan reviewed and patient provided a copy | ☑Yes | ☐No |

Signature of patient/guardian indicates that their questions have been satisfactorily answered and they understand and agree with the instructions.

_____ 1-17-16         _____ 1-17-16 15:15
Patient/Guardian Signature and Date         Nurse Signature  Date/Time

*Form Title: Discharge Plan*
*Revised: June 9, 2015*
*File In: Discharge*
*Arrowhead Behavioral Health*

GREER, LAURA    046
M# 000025465 01/12/1970
A# 10103030010 01/14/2016
ANTHEM BC/BS
DR. S. YECHOOR  F IDL

GREER 000195

__Psychiatric Evaluation
__Plus Program services in response to identified health care needs
__Vocational Rehabilitation in response to identified employment needs
__N/A No further recommendations .

COPY

If symptoms do not improve or worsen, client may be referred to the following services in the future:
X Assessment: X MH __AoD
__Individual Counseling: __mental health __AoD
X Group Counseling: __Anger Management __Coping Skills __STEPPS __Survivor Group
                    __USG  X SIR __IOP __ BIP __CC  Other

(specify):_____
__CPST (MH)
__CM (AoD)
__Psychiatric Evaluation
__Plus Program services in response to identified health care needs
__Vocational Rehabilitation in response to identified employment needs
__N/A No further recommendations

Client is also being referred to the following external services: follow up with her EAP.

Client's response to recommendations:
__agreed
X declined the following: At the conclusion of the assessment BHP began to discuss with the client the treatment course that she would take and that we would verify IOP was covered by her insurance prior to putting her into the group to prevent a major bill. BHP discussed with the client that she would be seen individually until insurance authorized treatment. Client reports she did not want to complete treatment at Firelands and would like to go to a private practice. Client reports she does not feel comfortable in the groups and would only like to do individual therapy. BHP provided the client with referrals to three area agencies to assist her in getting treatment. BHP discussed with the client her history of treatment with her previous provider and the client reports it was a misunderstanding that led to her case being closed. BHP inquired if the client would like her case closed and the client stated yes. BHP received a call from the client's EAP and provided them the information that the client declined services and stated she would be going elsewhere and requested her case be closed. Client's EAP requested that BHP not close the client's case currently as they were going to call her and inform her that she would have to complete treatment recommendations. BHP informed EAP that we could not force someone to engage in treatment and client's EAP stated they would let the client know if she did not come in to treatment she would be terminated. BHP agreed to keep the client open temporarily until she could come in for treatment.

X Emergency services, resources and hotline number were provided to the client


Client reports the following treatment preferences:
__ Needs assistance reading forms
__ Need an interpreter for: __ language __ hearing impairment __
X Prefers appointments__before noon __afternoon X after 4 p.m. __specific day of the week: _____
__ Other (please clarify):

Preferences will be:
X honored

GREER 000345

**Patient Chart**
GREER, LAURA
Patient ID: 10924849
DOB: 01/12/1970
Age: 46 years  Gender: F

## Progress Notes

.D: 01/26/16 : 01:36pm
.T: Therapist - Progress Note

GREER, LAURA
01/12/70

01/26/16  START TIME: 9:05 am  END TIME: 10:15 am  LENGTH: 70 min

**SUMMARY OF SESSION:** Ct is a 46 year old MWF who is referred by her insurance company after getting out of an inpt program after 5 days there for opioid addiction. Ct states she hit "rock bottom". Ct tended to ramble quite a bit today and it was tough to keep her on task. She was disgruntled with the program she went to, frustrated they wanted to put her on Suboxone, she then went on the be blaming of her pain management, program that they only urine tested her once in 8 years. Ct does admit that she was using more of her prescribed Percocet than what she could get from the pain management doctors and she was using about 20 pills per day of varying dosages. She came with FMLA papers but I told her I could not fill those out as I was not sure if her employer would recognize a LPCC, and also I was not sure she was ready to go back.

**GOALS WORKED ON THIS SESSION:** tying to get information, build a therapeutic rapport

**CLIENT PROGRESS:** Ct appeared a bit sedated. States she has not used since going to Arrowhead but this is not verified. Would want a tox screen.

**MSE:**

**Affective:**
    Predominant Mood:  Pleasant Calm  Sad Overwhelmed Tearful Frustrated
    Range of Affect:  congruent

**Behavioral:**
    Appearance:  very thin, 107 pounds.seemed slightly sedated,
    Movement/Behavior:  overelaborate speech, poor boundaries
    Speech:  Understandable
    Attention/Manner:  Attentive  Cooperative

**Cognitive:**
    Thought Process:  Coherent  Rambling  denies any S/HI at present, is future oriented about return to work.
    Orientation:  Person Place Time
    Memory:  Adequate
    Judgment/Insight:  Limited

Printed On: 07/27/2016

DEFENDANT'S
EXHIBIT
5
5/23/18
COLLINS REPORTING

Page: 12 of 20

GREER 000320

12 step mtgs

did not attend

Next appt. Wed 2/3/16
2pm

1/29/16



DEFENDANT'S
EXHIBIT
6
2/23/18
COLLINS REPORTING

DEFENDANT 001136

CONFIDENTIAL

**Patient Chart**
GREER, LAURA
Patient ID: 10924849
DOB: 01/12/1970
Age: 46 years  Gender: F

## Discharge Summary

.D: 07/14/16 : 12:45pm
.T: DISCHARGE SUMMARY
Providers: Jayne Williams, MA, LPCC, LICDC, SAP

Date of Admission: 01/26/16 Date of Discharge: 07/14/16
Date of Last Contact: 03/14/16
Others involved in treatment: Ct's spouse attended one appt.

1. Services Provided:  Assessment. individual therapy

2. Summary of Progress:  Ct attended a few sessions and seemed to understand why she needed to be clean but underestimated what it would take to stay clean. This was evidenced by her not following through with going to support group meeting ("I forgot my proof slips at home"). Also she seemed uncomfortable talking about her use, the consequences of same. She missed two appointments and was sent the letter to notify her I was leaving and to let us know if she wanted a different provider. She did not respond.

Treatment Outcomes: Client dropped out of treatment; correspondence sent 6/21/16

3. Pertinent unresolved problems including symptoms which may indicated the need for future services:  Ct needs a higher level of care.

4. Summary of Medication Record:
Current Medications:
Rx: AMBIEN CR 12.5mg 1  AT BEDTIME - days, , Ref: 0
 Rx: B-12 INJECTION     - days, , Ref: 0
 Rx: BACLOFEN 10mg 1  TWICE DAILY - days, , Ref: 0
 Rx: CLYMOLOMYCIN    EVERY OTHER DAY - days, , Ref: 0
 Rx: IMITREX 100mg 1  - days, , Ref: 0
 Rx: TOPAMAX 50mg 1  AT BEDTIME - days, , Ref: 0
 Rx: VITAMIN D    - days, , Ref: 0
 Rx: WELLBUTRIN 300mg 1  DAILY - days, , Ref: 0

5. Client Response to Discharge/Comments:  Ct did not respond

6. Discharge Plan: Other,  Ct's EAP contacted me to say ct had been pulled off work on reasonable cause (slurring words, long delays in responding) so she most likely has relapsed. The EAP states her tx will now be mandatory and I gave her the name of Century Health as the have the most options for AoD.

Discharge Diagnosis:
Axis I F11.20 Opioid Use D/O

GREER 000322

**Patient Chart**
GREER, LAURA
Patient ID: 10924849
DOB: 01/12/1970
Age: 46 years  Gender: F

## Progress Notes

.D: 03/15/16 : 09:39am
.T: Therapist - Progress Note

**GREER, LAURA**
**01/12/70**

**03/14/16  START TIME: 1:00 pm  END TIME: 2:00 pm  LENGTH:  60 min**

**SUMMARY OF SESSION:** Ct brought to session a drug screen signed by Nancy Martin, CNP that was negative for cannabis, cocaine, opiates. She states she "forgot" again to bring her slips for AA/NA meetings. Asked her if she was really attending and she states yes but this forgetting twice seems questionable. She states she is gaining weight and does look much healthier. Her eyes are more clear. She got her son into counseling with a referral from Dunn Therapies as they are booking out until June. He goes this Friday. She is concerned about his being bullied and depression. He is aware she went to tx for drugs. Encouraged her to bring this out when she takes him as he may or may not. Ct states he is like her, "he holds a lot in". Asked if she feels she is holding things in or back. She states for years she held back how angry she was at her mom for how her mom treated them  but when mom was sick and dying, she let that go. Asked ct if she feels she is still impacted by some of these things and she said yes. We agreed to talk about this topic next time. Ct continues to deny any cravings. She polished her hardwood floor on her knees and stated next day she was in pain so used a lidocaine pain patch which she states is non narcotic.

**GOALS WORKED ON THIS SESSION:** abstinence, coping skills to stay in recovery.

**CLIENT PROGRESS:**  :I don't want to go back to that. I feel so much better."

MSE:

**Affective:**
    Predominant Mood:  Pleasant Calm
    Range of Affect:  congruent

**Behavioral:**
    Appearance:  Neat  healthier
    Movement/Behavior:  Unremarkable
    Speech:  Understandable
    Attention/Manner:  Attentive  Cooperative  Open

**Cognitive:**
    Thought Process:  Coherent  Goal-oriented  No S/HI. CT is future oriented, and has her own faith.

Printed On: 07/27/2016

**Patient Chart**
GREER, LAURA
Patient ID: 10924849
DOB: 01/12/1970
Age: 46 years  Gender: F

_____

## Progress Notes

.D: 02/26/16 : 05:23pm
.T: Therapist - Progress Note


**GREER, LAURA**
01/12/70


**02/26/16  START TIME: 3:05 pm  END TIME:4:00 pm  LENGTH:  55 min**


**SUMMARY OF SESSION:**  Ct states she is doing okay. Had a stressful work day. She states she went to 4 of 6 12 step meetings but missed 2 due to a bad cold this week. She forgot her book with signatures. Ct states she feels more comfortable at AA. She states the people at NA have less clean time and seems a bit sketchy which she admits she should not judge but she just feels that way. She states she has not spoken yet at a meeting but she has gotten some numbers from other members. Ct states her marriage seems to be better. She feels better. She checked into drug store UA's and she found a 4 panel with opiate screen for 24.00. We discussed her taking this to her doctors office to use that there. If it is unopened and they have some security measures in place that could be something to try. Ct shared she feels her 17 year old son is being bullied. He has asked her if he can go to counseling. She asked if I know any Tricare providers. Let her know to call Dunntherapy to see.


**GOALS WORKED ON THIS SESSION:**  abstinence, building recovery networks

**CLIENT PROGRESS:**  Ct seems to look healthier. She states she will be coming up on 60 days.

**MSE:**


**Affective:**
　　Predominant Mood: Pleasant Anxious
　　Range of Affect: congruent

**Behavioral:**
　　Appearance: Neat
　　Movement/Behavior: Unremarkable
　　Speech: Understandable
　　Attention/Manner: Attentive Cooperative

**Cognitive:**
　　Thought Process: Coherent Goal-oriented Denies S/HI. Ct states she is future oriented and does not want to go back.　Orientation: Person Place Time
　　Memory: Adequate
　　Judgment/Insight:  fair

**Robby Kordish**

| | |
|---|---|
| **From:** | Angela Kuhlman |
| **Sent:** | Tuesday, July 12, 2016 5:20 PM |
| **To:** | Fulton-Royer, Jill; Kohlbacher, Georgene (gkohlba2) |
| **Cc:** | Robby Kordish |
| **Subject:** | RE: Screening for UH employee |
| **Attachments:** | Incidents Laura Greer.docx |

Attached is a summary written by Angela Washington, Claims Supervisor.

**From:** Fulton-Royer, Jill [mailto:Jill.Fulton@UHhospitals.org]
**Sent:** Tuesday, July 12, 2016 12:06 PM
**To:** Kohlbacher, Georgene (gkohlba2) <Georgene.Kohlbacher@UHhospitals.org>; Angela Kuhlman
<AKuhlman@hdplus.com>
**Subject:** FW: Screening for UH employee

Angela,
Thanks for the update. Can you also send us a summary of your concerns? Thanks.

Jill Fulton, LISW-S, LICDC
Employee Assistance Manager
University Hospitals Case Medical Center
MCCO 6th Floor, Mail Stop 6035 B
11100 Euclid Ave
Cleveland, Ohio 44106
Phone-216-844-1982; Fax-216-983-3038;
Pager-30788; Cell Phone-216-408-9059



THE OFFICIAL HEALTH CARE PARTNER OF THE
**CLEVELAND BROWNS**

**From:** Angela Kuhlman [mailto:AKuhlman@hdplus.com]
**Sent:** Tuesday, July 12, 2016 11:01 AM
**To:** Fulton-Royer, Jill; Robby Kordish
**Cc:** Kohlbacher, Georgene (gkohlba2); Harmon, Heather (HR); Fernandez, Laura
**Subject:** RE: Screening for UH employee

Hello All,
Robby and I just spoke with Laura Greer. She will be waiting for Georgene's call at noon today. Please call her at 419-424-9291.

I've had a very hard time finding a cab company that will take a credit card over the phone and uber is not available in her area. At noon I will be having a conversation with a car service to hopefully arrange transportation. If I am able then I will call and let Laura know that she will be picked up. In our conversation with Laura we asked if she had someone

1

DEFENDANT'S EXHIBIT 7 5/23/18 COLLINS REPORTING

DEFENDANT 001323

**6/29/2016**

LAURA SENT AN EMAIL THAT SHE WILL NEED TO GET OFF ONCE SHE IS DONE WITH A CLAIM SHE HAD FEMALE LASER SURGERY THAT SHE WOULD MAKE HER TIME UP, TO ASSURE SHE WOULD HAVE HER 8HRS, OTHERWISE THIS IS CONSIDERED A DEVIATION OF TIME, HER REPLY WAS WHAT IF I GET A NOTE FROM MY DOCTOR, IT WAS ADVISED THAT SHE TALK TO HR IF THIS WOULD BE CONSIDERED A FMLA CONDITION. SHE WENT ON TO EXPLAIN HOW UNFAIR THIS IS AND THE EMAIL WENT ON FROM 1:03 TO 2:46.

**6/21/2016**

I SPOKE TO LAURA ON WHERE SHE EMAILED ME ON A DIFFERENT CLAIM THAT WE STILL NEED TO RESOLVE THE ABOVE MENTIONED CLAIMS THAT I HAD PROCESSED ACCORDINGLY. SHE MAKES MENTION THAT SHE BELIEVES SHE DELETED THE CLAIMS BECAUSE THEY WERE INCORRECT. I ADVISED HER TO PULL UP THE EMAIL ALONG WITH THE CLAIM, SO THAT SHE CAN RECREATE AND FOLLOW THE INSTRUCTIONS. THE CONVERSATION WAS VERY BROKEN; SHE HAD WENT ON TO ANOTHER TOPIC SEVERAL TIMES. ONCE I INTERUPTED THE CONVERSATION ASKING HOW FAR WAS SHE WITH THE HANDKEY, SHE SAID OH! YOUR CLAIMS ARE RIGHT HERE, THEY WEREN'T DELETED AND SHE BEGIN TO MODIFY THE CLAIMS, (SHE SAYS) EXPLAINING HOW SHE WAS SPLITING THE PAYMENT LIKE THEY USE TO DO. I EXPLAINED AGAIN THAT SHE WILL NEED TO FOLLOW THE INSTRUCTIONS AS CINDI PROVIDED, AND AGAIN SHE MENTIONS HOW IT USE TO BE DONE AND SHE DOES NOT UNDERSTAND WHY SHE CAN NO LONGER DO IT THAT WAY. I AS A FINAL POINT EXPLAINED, THAT SHE IS TO RECREATE THE CLAIMS I CREATED IF SHE DELETED THEM, FOLLOWING CINDI'S INSTRUCTION AND TO NOTIFY ME ONCE SHE HAD COMPLETED. I REITERATED CINDI'S INSTRUCTIONS, AND ENDED THE CALL.

**6/15/2016**

PROCESSING --LAURA WAS ASKED TO PROCESS TWO CLAIMS, MANUALLY ENTERING THE CLAIMS, AND SPLITTING THE PAYMENT. (SPECIFIC CLAIM INSTRUCTION WAS PROVIDED). LAURA WAS UNABLE TO FOLLOW THOSE INSTRUCTIONS, SO I MANUALLY ENTERED THE CLAIMS AND PROCEED THEM AND ADVISED LAURA TO REVIEW FOR FUTURE USE. (6/16/2016) ON 6/17/2016 LAURA EMAILED ME AND CONVEYED THE CLAIMS WERE INCORRECT AND THAT WE NEED TO SETUP TIME TO REVIEW. (PHONE CALL)

**6/13/2016**

I was informed by Cindi Roberts on 6/13/2016 @ 1:07 pm that Laura Greer was experiencing issues with her Salesforce screen. Based on the "screen shot" that she sent, I immediately saw that her Salesforce screen was "maximized". I emailed Laura at that time and advised her to use her "back" button. She did not reply my assumption was that this advised worked for her, and she was able to proceed with processing. At 1:30 I received the below screen shot accompanied by an email stating "Once I start working sales force will pop back over and Salesforce will not allow me to anything- I've logged out 3 times and signed in but Salesforce is still there?" Again I advised her to use her "back button".

DEFENDANT 001324



Shortly before 3:00 pm Janet Goubeaux came over to my cubicle and advised she has been on the phone with Laura and has logged into her system to assist. She believes Laura's system is "dying/crashing" due to the error she is getting.  (Please see below).



DEFENDANT 001325

CONFIDENTIAL

I then advised Janet that this was an issue that Laura had earlier although the screen looks different now than before this could be a result of having too many sessions open due to her multiple attempts to log-in.

When I called Laura she was in the process of logging into her son's PC, I asked if the she believed this PC was safe and secure and she replied yes.  She then began to talk off topic and with haziness about the UH discount program and how the military does not offer competitive discounts to the Kalahari Park, and that she had chest pain and took one of her husband's Nitro pills and that it did help and that the neighbor lady helped her yesterday and she would make it through.  I interrupted and asked if she had logged into the PC successfully and she replied no, that she is getting the same screen she got on her screen, I replied then your system is not dying.



After further review of her screen Janet agreed.  I advised Laura to log out of her son's PC and go back to her PC to log back in.

She than expressed she was unsure on how to log in.  I took a picture of the remote log in instructions b and sent them to her via text message. (Please see instructions)  After several unsuccessful attempts, Laura successfully logged into HealthPac.  I mentioned that should she experience issue such as this moving forward she is not to go through another processor for resolution, that she will need to alert Cindi Roberts or myself, she replied she did not know any of our numbers, that she had texted Cindi and Cindi advised her to contact Angela (me), that she called three times to the front desk and ask to be "patched" to Angela Kuhlman. I told her that she was to call me Angela Washington in urgencies such as this.

DEFENDANT 001326

We continued to discuss what she saw once she logged in, and she said that her Salesforce screen was still up.  I advised her to use her Alt+tab to view the many sessions she had open and when she came to each session to "x" out of them.  She could not comply. I advised her to put her thumb on the Alt button and her index finger on the tab button and slowly tap the Tab button to review each session.  She could not comply, Janet advised that since we now know the issue that we go to Michaels office and he log into her system to minimize her Sales force screen.  I advised Laura that we would call her right back.

Janet and I went into Michael's office he logged into her system and advised reviewed how to minimized and advised to use function key F11, I asked since he was signed in her system if he would simply do it while logged in.  I came back to my cubicle and called Laura, she was logged in, I again reiterate the instruction provided earlier regarding immediate contact with Cindi or me, along with a follow up email.

DEFENDANT 001327

CONFIDENTIAL

# POLICY & PROCEDURE

 **University Hospitals**

## HR-85 – Employee Assistance Program

### Key Points

- **University Hospitals (UH) recognizes that an employee's job performance may be affected by personal concerns. The Employee Assistance (EA) Program is a counseling/referral service that is available to all employees and/or their immediate household members to assist them in receiving appropriate professional care for work-related and personal concerns.**

- **Employees are encouraged to seek assistance for problems that pose a threat to their health or well being at the earliest possible time.**

### Policy & Procedure

1  An employee may schedule an appointment with EA during off-duty time or work-time. An employee's visit to EA during their scheduled work hours will be considered on work time and the supervisor may request a note verifying the time and date that the employee was seen at EA.

2  The employee/household member is responsible for any medical charges not covered by the individual's health care benefits when using outside services recommended by EA.

3  A request for EA services will not jeopardize an employee's job security or employment opportunities. Counseling and/or treatment will not be viewed as a substitute for or a defense to receiving corrective action.

4  Types of Referrals to EA

4.1 <u>Self-referral</u>:  An employee or household member may voluntarily contact Employee Assistance to schedule an appointment. Employees are encouraged to seek assistance for problems that pose a threat to their health or well being at the earliest possible time.

4.2 <u>Mandatory Referral</u>:  The employee's supervisor may require that the employee meet with EA and comply with all EA recommendations. HR should be consulted by the supervisor prior to making a mandatory referral.

4.2.1 <u>Tier 1 Mandatory Referral</u> - Employees may be mandated to attend EA by their supervisor for the following:

(1)  Fitness for Duty; or

HR 85 – Employee Assistance Program
Owner: Human Resources Department
Revised November 2013
Page 1 of 5
Uncontrolled document - printed version only reliable for 24 hours



DEFENDANT 001401

CONFIDENTIAL

(2) Violent, hostile, or reckless behavior that endangers the safety of employees, visitors, patients or physicians or that causes others to fear for his/her safety; or

(3) Reasonable suspicion of alcohol/drug use including, evidence of drug diversion.

4.2.1.1 When an employee displays any of the above behaviors, all steps of the EA referral should be followed and the employee should be removed from the immediate work area and placed off duty. This decision should be made in consultation with EA and Human Resources. An employee who is placed off duty during a Fitness for Duty evaluation will be compensated for up to 30 working days while the FFD determination is being made. This time will be paid by either the referring department or if the employee is eligible, Short Term Disability. Return to work will be determined after the FFD assessment, including a substance abuse screening if applicable, is completed. Failure to comply with the EA referral within 24 hours will result in corrective action up to, and including, termination of employment.

4.2.1.1.1 The supervisor should contact Human Resources and EA prior to meeting with the employee to discuss the appropriateness of the referral. The supervisor will complete the EA referral form (Attachment A). The EA assessment must occur within one business day after the Tier 1 Mandatory Referral.

4.2.1.1.2 The employee's supervisor is required to be involved in the Tier 1 mandatory referral process (e.g. coordinating, escorting or arranging transportation for an EA intervention).

4.2.1.1.3 When an employee appears under the influence of drugs or alcohol while on the job or the supervisor has a reasonable suspicion of drug/alcohol use that is affecting job performance, UH policy mandates immediate testing at a UH approved site. (Please refer to UH System-wide Policies and Procedures, HR-9, Substance Abuse Policy, for further action)

4.2.1.1.4 The employee's department will be charged for consultant fees e.g. non-UH psychiatric referral or Independent Medical Examiner, if determined to be necessary (Fitness for Duty etc.)

4.2.2 Tier 2 Mandatory Referral - Employees may be mandated to attend EA in circumstances where the supervisor has previously met with the employee due to one or more of the following concerns:

(1) Attendance issues.

DEFENDANT 001402

CONFIDENTIAL

(2) Conflictive work relationship

(3) Deteriorating job performance

4.2.2.1 The supervisor has counseled the employee, done a corrective action or performance improvement plan and there has been no measurable improvement in job performance. Prior to mandating the EA referral, the supervisor has <u>documented</u> counselings that have demonstrated that the employee is aware of the job performance issue and has had opportunity to correct it.

4.2.2.2 The supervisor should contact Human Resources and EA prior to meeting with the employee to discuss the appropriateness of the referral.   The supervisor will complete the EA referral form (Attachment A).

4.2.2.3 The employee must contact EA scheduling, at (216) 844-4948 within 5 business days of a Tier 2 Mandatory Referral to schedule a confidential appointment. Failure to comply with EA referral will result in corrective action up to and including discharge.

4.3 <u>Critical Incident Referral</u>: When employee(s) have been affected by a traumatic event at work or in the community, they may request the opportunity to meet with EA. The request may be initiated by the employee, a supervisor, EA, HR, or senior administration.

5   Confidentiality

5.1 Discussions between the EA counselor and the employee are confidential and protected under Ohio law.

5.2 EA cannot share any verbal or written information about the employee without the employee's prior written authorization.

5.3 The supervisor may only request feedback from EA on attendance.

5.4 The employee will be monitored as determined by the EA counselor or supervisor.

5.5 In a mandatory referral, EA will notify the employee, supervisor and HR of the date the employee is cleared for re-entry into the workplace (Return to Work Authorization form).

5.6 If either the supervisor, EA or HR determines that communication between and/or among them would be helpful in addressing the matter, a release of information signed by the employee is required.

5.7 Employees' EA records are maintained in a secure area and kept separate from personnel files and medical records.

DEFENDANT 001403

CONFIDENTIAL

5.8 Information from EA may be shared without a release and authorization in response to state or federal statute/regulation (e.g. Homicidal/suicidal ideation; child and elder abuse/neglect), a court ordered subpoena or an official investigation by a government agency.  The employee will be notified if this should occur and an attempt will be made to obtain a release and authorization prior to the disclosure.

**Attachments:**
EA Referral Form

**See Also:**
System Substance Abuse Policy #9

| Approvals | | |
|---|---|---|
| Chief Executive Officer | | 11-8-13 |
| | | Date |
| Chief Human Resource Officer | | 11-8-13 |
| | | Date |

DEFENDANT 001404

CONFIDENTIAL

# ATTACHMENT A

UNIVERSITY HOSPITALS HEALTH SYSTEM
EMPLOYEE ASSISTANCE PROGRAM
REFERRAL FORM

Employee:_____ Position:_____ Date:_____ Phone:_____

You are being referred to the EMPLOYEE ASSISTANCE PROGRAM (EAP) because of the concerns noted below. EAP services are confidential, in compliance with the law. Your supervisor will be told only whether you kept the appointment, and whether you complied with the EAP recommendations. Your supervisor will not be told what was discussed unless you specifically authorize it and sign a release of information specifying the information to be released. Information from EA may be shared without a release and authorization in response to state or federal statute/regulation (e.g. Homicidal/suicidal ideation; child and elder abuse/neglect), a court ordered subpoena or an official investigation by a government agency.

☐ A Tier 1 Mandatory Referral has been made to EAP for the following reason:
   ☐ Fitness for Duty
   ☐ Violent, hostile, or reckless behavior that endangers the safety of others or that causes others to fear for their safety
   ☐ Reasonable suspicion of drug/alcohol use including evidence of drug diversion.

Please phone EAP at 216-844-4948 to confirm your scheduled appointment on _____.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

☐ A Tier 2 Mandatory Referral has been made to EAP for the following job performance concern(s):
   ☐ Attendance issues
   ☐ Conflictive work relationship
   ☐ Deteriorating job performance
   ☐ Other _____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Please phone EAP at 216-844-4948 within 5 business days of today's date, to schedule an appointment.

Explanation of counseling, anecdotal, corrective actions or other concerns relative to the above-checked concerns:

My supervisor has explained the reason for this EAP referral. I understand that my supervisor will be notified whether I keep my appointment and whether I comply with the EAP recommendations. I have been given a copy of this form.

Employee Signature:_____ Date:_____

Supervisor Signature: _____ Dept:_____ Phone:_____

EAP Counselor Signature:_____ Date:_____

☐ Employee attended EAP session        ☐ Employee did not attend EAP session

☐ Employee complied                    ☐ Employee did not comply

DEFENDANT 001405

CONFIDENTIAL

 **University Hospitals**

# MEDICAL/PSYCHIATRIC FFD – TIER 1 PROCESS

# HR/MANAGER PROTOCOL

- Manager to make contact with HR/EAP to initiate FFD process.

- Consultation (phone/in person) to be scheduled by EAP to include HR, manager, Corporate Health, and EAP within 24 hour timeframe.

- Prior to conference call, manager needs to write up summary with history of performance issues (including corrective actions), behavioral, psychiatric, chemical dependency and/or medical concerns.

- During the call, disposition of type of EAP referral will be determined. Once decision to proceed with tier 1 FFD is made, an initial appointment for evaluation will be scheduled with EAP only for psychiatric evaluations. Medical FFD's will be scheduled with EAP counselor and nurse practitioner.

- Attachment "A" to be completed by manager and reviewed by employee prior to meeting with Corporate Health and EAP. Manager to review FFD policy and protocol with the employee including evaluation, toxicology screen, and off duty status.

- Employee will be placed off duty with pay for up to 30-days pending the results of the FFD evaluation. If FFD goes beyond 5- days, manager needs to initiate FMLA/MLOA, if employee is eligible. If off work for 7-days, employee should apply for short term disability if eligible.

- Employee will be seen by EAP and/or nurse practitioner for initial evaluation. Employee will be referred to appropriate medical/psychiatric provider for further evaluation and treatment. A toxicology screen will be conducted by Corporate Health at the time of initial evaluation. Department referring the employee will be charged for the psychiatric evaluation. The manager will provide their oracle number for the EAP Assistant to process payment through accounts payable.

- Employee will be notified of RTW/FFD recommendations by EAP and Corporate Health. Release of information for manager, human resource, and care advocates will be completed at this time, regarding workplace recommendations.

DEFENDANT 001406

CONFIDENTIAL

- Manager and HR will be notified by Corporate Health and EAP regarding RTW recommendations.  If employee is cleared to return to work, consultation with employee, manager, HR, corporate health, and EAP will be initiated to discuss compliance and performance expectations.

- If employee is placed off duty, FMLA and STD will be determined at this time and manager will be responsible for initiating this process.  Employee will be advised of STD process and EAP will give contact information on this process. Employee will sign release of information to notify care advocates and short-term disability department of off duty status.  EAP/Corporate Health will send release of information document to all appropriate providers.

- Employee will be case managed by EAP and/or corporate health during their leave.  The manager and all parties involved will be notified who is the contact person.

- If Employee is off duty longer than 30 days, EAP and Corporate Health will reconvene and assess current disposition. Once determined, Corporate Health and EAP will notify HR, Manager, and disability management services of the disposition of the case.

DEFENDANT 001407

CONFIDENTIAL



# University Hospitals

# TIER 2 MANDATORY PROTOCOL

- Manager to make contact with HR/EAP to initiate referral process

- Consultation (phone/in person) from manager to be scheduled by EAP

- Manager needs to write up a summary with history of performance issues (including Corrective actions), behavioral, psychological, chemical dependency and/or medical Concerns and send to EAP.

- Once disposition of Tier 2 is determined, an appointment can be scheduled at that time with a counselor or the employee will need to call within 5 days of notification.

- Attachment "A" to be completed by manager and reviewed with employee prior to meeting with EAP. Referral form to be sent to EAP Department prior to appointment.

- Employee will be seen by EAP counselor and provided a copy of EAP policy and referral form. Verbal explanation of policy and mandatory referral guidelines, including confidentiality and compliance with recommendations, will be provided at the onset.

- Complete psycho-social assessment at the intake appointment. Employee may be referred to appropriate medical, CD or psychiatric provider for further evaluation and treatment, if indicated. Releases of information to be signed at this time. Employee may be responsible for co-pays if treatment is recommended.

- Employee will be monitored for compliance with tx recommendations as determined by the provider and EAP. Compliance contract to be completed by EAP counselor and employee. Follow up with employee, HR, manager, and tx provider may continue for 3-6 as indicated.

- EAP will assess employee if non-compliance issues arise. Employee may be given opportunity to re-engage in treatment. If non-compliance continues, EAP will notify HR and manager.

DEFENDANT 001408

CONFIDENTIAL

Listed below are common performance, behavioral, and attendance related problems typically exhibited by troubled employees. Review the list and then construct your documentation based upon the signs and symptoms you identify. Be sure to cite examples and use measurable terms.

## Performance Symptoms Checklist

| JOB PERFORMANCE ISSUES | CHECK / NOTES |
|---|---|
| 1. Observed drug or alcohol use during breaks or meal periods, or during work hours. | |
| 2. Observed drug or alcohol use preceding the start of the work day. | |
| 3. The smell of marijuana or alcohol on the employee. | |
| 4. Lapses of attention, with increased inability to concentrate. Appears not to pay attention in conversations. | |
| 5. Physical signs of needle use on arms (blood marks on arms or hands) | |
| 6. Accidents with or without injury on the job. | |
| 7. Observed confusion and difficulty in handling assignments. | |
| 8. Sleeping on the job. | |
| 9. Agitated behavior | |
| 10. Hyperactivity and anxiousness uncharacteristic of the employee | |
| 11. Employee found with evidence of alcohol or drug use on or near person (bottles, paraphernalia, etc.) | |
| 12. Absence from work post/site without good reason, without notice, or without authorization. | |
| 13. Shaking and tremulousness (such an employee may be a safety risk in withdrawal, although may not be under the influence.) | |
| 14. Disturbed psychomotor coordination: stumbling, etc. | |
| 15. Odor of alcohol on the breath (different that smelling of alcohol above, which may result from metabolism of alcohol) | |
| 16. Slurred speech | |
| 17. Inappropriate attitude, character, or speech in reference to specific events | |
| 18. Inappropriate laughter and giddiness | |
| 19. Red or bloodshot eyes | |
| 20. Complaints from fellow workers about attitude, behavior, team player issues, profanity, unpredictability. | |
| 21. Overreaction to real, or imagined criticism and paranoid behavior. | |
| 22. Violent behavior, loudness, or aggressiveness. | |
| 23. Third person report of OBSERVED employee action—a determined reliable and credible source. | |
| 24. Exaggerated work accomplishments. Inability to recognize others' contributions, opinions, feelings, needs for validation. | |
| 25. Grandiose, aggressive, and/or belligerent behavior toward coworkers, supervisor, customers, students, parents, public. | |
| 26. Unreasonable resentments — "people are out to get me." "There is a conspiracy against me." | |
| 27. Domestic problems interfere with work, attendance, conduct on the job. | |
| 28. Evidence of financial problems, including borrowing or attempting to borrow money from coworkers. | |
| 29. Deterioration of hygiene and personal appearance. | |
| 30. Apparent loss of ethical values. Demonstrates disrespect toward supervisor and coworkers. | |
| 31. Property is damaged, tools lost, or stolen while in possession or being watched or guarded by employee. | |
| 32. Excessive personal phone calls, pagers, use of cell phone while at work. | |
| 33. Mood swings during the day. | |
| 34. Mood swings from one day to the next. Unwillingness to "pitch in" and help out coworkers. | |
| 35. Complaints of not feeling well to the exclusion of duties. | |
| 36. Claims of getting help for various personal problems without improving job performance, attendance, or attitude. | |
| 37. Inappropriate requests for outstanding recognition of mediocre job performance. | |
| 38. Excessive apologizing for work, attendance problems, etc., without correcting problematic behavior. | |
| 39. Refusal to follow reasonable instructions of work supervisor. | |
| 40. Complaints of sexual or other types of harassment from coworkers/visitors/customers. | |
| 41. Disparaging remarks, jokes, and humor of an ethnic or racial nature. | |
| 42. Use of profanity on the job that is offensive to coworkers. | |

V0007 © 2007 EAPTOOLS.COM

CONFIDENTIAL

DEFENDANT 001409

DEFENDANT 001410

## Screening for Reasonable Suspicion
## Observation Check List

Employee Name: _____    Date: _____

**THIS IS TO BE USED AS A GUIDELINE TO ASSIST IN DETERMINING IF AN EMPLOYEE IS UNDER THE INFLUENCE OF ALCOHOL OR DRUGS**

Directions: Circle any characteristics that apply based on your observation of the employee. If alcoholic beverage is detected on the employee's breath or if two or more of the other characteristics are detected, refer to UHP 43A, *Substance Abuse Screening.*

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 1. Breath: | no alcoholic beverage odor | faint alcoholic beverage odor | strong alcoholic beverage odor | | | | |
| 2. Speech | normal | shouting | silent | slurred | stabbering | whispering | slow |
| 3. Demeanor: | normal | sleepy | crying | silent | talkative | fighting | excited |
| 4. Actions: | normal | resisting | profanity | hyperactive | hostile | unruly | defensive |
| | | threatening | drowsy | fighting | erratic | argumentative | |
| 5. Eyes | normal | bloodshot | glassy | watery | droopy | closed | |
| 6. Face | normal | flushed | pale | sweaty | | | |
| 7. Appearance/Clothing | normal | disheveled | messy | dirty | partially dressed | stains on clothing | |
| 8. Standing/Walking | normal | stumbling | staggering | falling | holding on | unsteady | unable to |
| 9. Movements | normal | fumbling | jerky | slow | nervous | hyperactive | |

Other Observation: _____

**NOTE: These characteristics could also be a sign of medical conditions, which require immediate attention!**

Signed: _____    Date: _____
      (Supervisor)

Signed: _____    Date: _____
      (Witness)

Signed: _____    Date: _____
      (Employee)

Distribution    Employee    Department File    EAP Coordinator    Attach to Corrective Action Form

CONFIDENTIAL

**University Hospitals**

216-983-4EAP (4327)
within UHCMC: B-WELL (x2-9355)

## Employee Assistance Program

### *Helping you achieve a better work-life balance*

**EAP is:**
- Supported by UH and devoted to helping people do the best job they can.
- A benefit to full-time and part-time staff, as well as immediate family, whose personal problems are affecting their sense of well-being and/or job performance.
- Available to help by discussing possible solutions and resources to address identified problems.

**EAP Services include:**
- Assessment and identification of personal and/or work-related problems.
- Brief counseling and follow-up, as needed.
- Crisis intervention.
- Child and elder care resources.
- Referral to appropriate and accessible resources at UH or in the community.
- Education workshops and support groups.
- Workplace consultations.
- Mediations.
- Critical incident stress debriefing.
- Life Coaching and Leadership Coaching.

**EAP Staff:**
EAP's professional staff is composed of master's-level certified employee assistance professionals who represent a wide range of training and experience. They focus on the total well-being of employees and their families.

## Frequently Asked Questions

**When should I use EAP?**
The choice to meet with a counselor is personal.
Typically we recommend contacting EAP if you are experiencing:
- Stress: personal or work-related
- Concerns: marital, family, work
- Depression
- Financial concerns
- Addiction: alcohol or drug
- Conflict resolution/workplace violence
- Anxiety
- Grief

**Is the EAP confidential?**
All visits to EAP are strictly confidential.
No information can be shared unless the employee signs an authorization for release of information. The only exception to confidentiality is when information is required by law, such as when a person is likely to harm him/herself or others, or when there is a reasonable suspicion of child/elder abuse/neglect.

**How long is an EAP appointment?**
Plan on an hour for your appointment to allow the EAP professional to learn about your problem or concern.
By the end of the appointment, both of you will have a plan of action or recommendations identified.

**Can I meet with EAP professional on work time?**
An employee may schedule an appointment with EAP during off-duty time or work-time. An employee's visit to EAP during their scheduled work hours will be considered on work time. The supervisor may request a note verifying the UH time and date the employee was seen at EAP.

**When does a supervisor/manager refer an employee to EAP?**
Without job performance problems:
A supervisor who is concerned about an employee's well-being may refer him/her to EAP for support and guidance.  With job performance problems:
A supervisor may suggest the use of EAP as a resource. If job performance deteriorates or the employee demonstrates significant psychological and/or medical impairment in the workplace, the employee may be mandated to EAP by their supervisor (UH policy HR-85).

DEFENDANT 001411

CONFIDENTIAL

# POLICY & PROCEDURE

 **University Hospitals**

## HR-9 – Substance Abuse

### Key Points

- It is the policy of University Hospitals (UH) to maintain an environment which is free of impairment related to alcohol and/or substance abuse by any of its employees.
- UH requires that each employee arrives for work in a condition free of the influence of alcohol and illegal drugs and remains free of the influence while on the job.
- UH recognizes that alcohol/drug abuse/or chemical dependency is a progressive, chronic disease that has adverse effects on the employee's quality of life and job performance and may severely jeopardize patient and co-worker safety.
- Non-employees who may be suspected of drug or alcohol use (agency personnel, vendors, contractors, students, etc.) will be referred to their appropriate supervisors as needed.

### Policy & Procedure

1. For the purpose of this policy, an employee is considered to be "on duty" at all times during his/her shift. This includes breaks, whether on or off UH property and/or while conducting UH business whether on/off UH property. Employees reporting to work, finishing work or "on-call" will be considered "on duty."

2. The following are strictly prohibited and will subject an employee to corrective action up to and including discharge (see UH Policy #HR-72, Corrective Action).

    2.1. Consuming, using, possessing, manufacturing, or trafficking alcohol or illegal drugs on the premises of or while on-duty at UH.

    2.2. Dispensing or prescribing legal drugs without therapeutic reason or exchange for money or other consideration.

    2.3. Theft of and/or tampering with hospital pharmaceuticals.

    2.4. Engaging in improper self medication including the use of another person's prescribed medication.

    2.5. Having a positive test result after being referred for a substance abuse screening.

    2.6. Possession of drug paraphernalia on UH property.

    2.7. Using adulterant agents to prevent the detection of drug use in drug testing samples.

3. A supervisor who has reasonable suspicion that an employee is using or is under the influence of drugs or alcohol on UH property or while conducting UH business should refer to the definitions including "reasonable suspicion" and "under the influence." Being under the influence will not excuse another violation of UH policy.

DEFENDANT'S EXHIBIT
5/23/18
COLLINS REPORTING

CONFIDENTIAL

DEFENDANT 001389

4.  For employee and patient safety, an employee is required to notify his/her Corporate Health Services whenever a medication or homeopathic (herbal) remedy, either prescribed or over the counter, is being taken that may and is reasonably expected to materially impair judgment and/or job performance when taken as directed (i.e., drowsiness or mood changes).

    4.1.  Failure to notify Corporate Health Services may subject the employee to corrective action up to and including discharge.

    4.2.  A statement from the prescribing physician may be required to validate an employee's fitness for duty while on medications.

5.  An employee is required to report to his/her supervisor any criminal convictions, including "no contest" pleas, for alcohol or drug-related violations of law.

    5.1.  The report shall be submitted no later than five (5) calendar days after the date of conviction.

    5.2.  Failure to report criminal conviction will result in corrective action up to and including discharge.

6.  Chemical abuse/dependency is treatable and early recognition and treatment is advisable.

    6.1  UH maintains Employee Assistance (EA) to provide confidential assessments and treatment referrals.

    6.2  Employees who suspect they may have a problem with alcohol and/or drugs are encouraged to seek assistance through EA.

    6.3  The employee's decision to seek/receive treatment through EA or any other resource will not be used as a basis for corrective action.

7.  The employee's manager or other designee will follow the protocol below for reasonable suspicion testing/screening for cause.

    7.1  Alcohol and Drug testing/screening Monday through Friday 7:30 a.m. to 4:00 p.m. can be conducted at the various sites identified on Attachment A.

    7.1.1 If based on the criteria for reasonable suspicion testing and/or the supervisor believes that the employee is under the influence, the supervisor must immediately contact the entity Human Resources (HR) representative and Employee Assistance (EA) for consultation and to arrange for screening.

    7.1.2 The employee will be escorted by his/her supervisor to the designated site for screening. The employee will be asked by the designated screener to sign the Agreement to Submit to an Alcohol and/or Drug Screen form (Attachment B) prior to screening. If the testing site is not the employee's current location, transportation should be arranged through the manager via taxicab or if requested, by a family member.

    7.1.3 The designated screener will collect the test specimens and ensure the chain of custody of the specimen.

    7.1.3.1  Breath alcohol testing (BAT) will be performed in addition to urine toxicology screening for substances of abuse.

HR-9 – Substance Abuse
Owner: Human Resources
Reviewed: June 2015
Page 2 of 12
Uncontrolled document - printed version only reliable for 24 hours

DEFENDANT 001390

CONFIDENTIAL

Employees found to have a BAT level of .02 or above will be considered positive for alcohol.

7.1.3.2 If BAT is not available, a blood sample for blood alcohol will be drawn in addition to urine toxicology screening.

7.1.3.3 Blood will be collected at that time by UH lab personnel. The blood sample will be taken to Chemistry for a "stat" blood alcohol level. A coded requisition will be sent without the employee's name for confidentiality.

7.1.3.4 Results of the blood alcohol level will be given to Corporate Health, who will contact EA for purposes of assessment and to expedite the referral.

7.1.4 Employees in specific areas or circumstances may require additional testing. This may include but is not limited to those professionals who may handle Schedule II drugs (meperidine, fentynal, vicodan, nalbuphine, pentazocine, oxycodone, oxycotin, etc.). If this is the case, a "Professional Panel" (v870 will be added to the requisition).

7.1.5 In the event that an incident may occur causing reasonable suspicion in an area where multiple employees work (i.e. diversion of drugs), it may be necessary to do reasonable suspicion testing on all employees in the area. The decision on how to proceed with this type of multiple screening event will be on a case-by-case basis after careful investigation and consultation by EA, Corporate Health Services (CHS), the Legal Department, Human Resources, the Director of Pharmacy Services, the Department Manager/Director, the Chief Nursing Officer and the Sr. VP/General Manager of the area or the Administrator on-Call.

7.1.6 Further consultation and evaluation by EA may take place at this time, depending on the circumstances.

7.2 After-hours, weekends, and holiday screenings can be performed at designated locations for all UH employees. (See Attachment C)

7.3 After the screening is complete, the employee's supervisor will notify the entity HR representative and EA that an employee was screened for cause or reasonable suspicion.

7.4 Supervisors will not use force or coercion of any kind to secure compliance with alcohol and/or substance abuse screening. The employee's participation in the reasonable suspicion testing and the signing of any forms is voluntary on the part of the employee.

7.5 If the employee refuses to sign the agreement to submit to alcohol and/or substance abuse screening, he/she will have 20 minutes in which to reconsider and sign the form (Attachment B).

7.5.1 If the employee is significantly impaired and unable to comprehend the screening process, immediate medical attention is warranted through the ED or a medical facility.

7.6 Refusal by the employee to submit to an alcohol and/or substance screen, per this policy, will result in corrective action up to and including discharge from employment at UH.

DEFENDANT 001391

CONFIDENTIAL

7.7 Once the employee has been tested, the employer's supervisor will schedule the employee off duty with pay pending the results of the test and further evaluation.

    7.7.1 Results from alcohol and/or substance abuse screening may take 72 hours or longer to be reported back to Corporate Health.

    7.7.2 The supervisor must indicate to the employee that appropriate corrective action, up to and including discharge will be taken.

7.8 The supervisor will make arrangements for the employee's transportation home. If requested by the employee, an attempt will be made to contact the employee's family to assist the employee in getting home. In the event a family member is unavailable, arrangements for a taxi cab will be made to provide transportation for the employee, when appropriate. Paid transportation, i.e., taxi cab fare should be provided. Managers or other employees should not provide transportation for the employee.

7.9 If the employee refuses assistance, the supervisor must document the refusal. If possible, have another supervisor or Corporate Health employee/designee witness such refusal. At this point the entity HR representative should be notified. When appropriate, UHPD or entity-designated agency may be asked to detain the employee to protect the employee or others.

7.10 In the case of a diversion of drugs with employee positive results, those results and the decision on how to proceed will be determined by consultation with EA, Human Resources, the Legal Department, Pharmacy Services and the appropriate department head (i.e. Chief Nursing Officer, Anesthesia department head, etc.).

    7.10.1 At this time the department head/designee will report those licensed personnel (i.e. nursing, medicine, hemodialysis technicians, etc.) to the appropriate Ohio state board.

7.11 If the employee is referred to EA, see UH Policies and Procedures, #HR-85, Employee Assistance Program, to initiate the appropriate referral.

7.12 When an employee has tested positive for a substance or adulterant not involving a diversion of drugs, he/she will remain off duty when referred to EA. EA will receive results and the entity HR representative and the department manager will only be advised if positive or negative. A request for FMLA must be initiated through Manager Direct Access (MDA) by the manager on behalf of the employee.

8. If the employee is referred to EA for evaluation and treatment, in order to return to work, the employee is expected to adhere to the following steps:

8.1 The employee will be required to successfully complete an alcohol and/or substance abuse assessment.

8.2 The employee can only be released for duty by the physician/provider treating him/her for alcohol or substance abuse. The FMLA Return to Work/Fitness for Duty must be completed by the provider and submitted to the entity HR representative.

8.3 The employee must be re-evaluated through EA before reporting to work.

8.4 The employee must submit to another alcohol or substance abuse screen in Corporate Health and have a negative result prior to returning to work.

DEFENDANT 001392

CONFIDENTIAL

8.5 The employee will participate in the Substance Abuse Random Screening Program coordinated by EA and done in Corporate Health for two (2) years.

8.5.1 Nursing and/or other licensed professionals may be screened and monitored through their own licensing board.

8.5.2 If a positive screening occurs during this time, the manager and the entity HR representative will be notified by EA. At this time, further corrective action up to and including discharge will be considered.

8.6. If the employee does not successfully complete the assessment or treatment and there is not a medical clearance, the employee will not be allowed to return to work. He/she will have five (5) days in which to contact and engage the alcohol and/or substance abuse provider for assessment and/or treatment. If the second attempt is not successfully completed, the employee may be subject to corrective action up to and including discharge.

9. When reasonable suspicion exists that substances are present on UH property, the supervisor should contact UHPD or entity-designated agency for appropriate intervention.

9.1 After consultation with the Law Department and Human Resources representatives, UHPD or entity-designated agency, the local police department or another designee may perform a search of UH property and items located on UH property including offices, desks, lockers, personal effects and vehicles.

9.2 In all matters (whether on/off UH property) UHPD or entity-designated agency will evaluate the need for appropriate intervention by local authorities.

10. Confidentiality will be maintained at all times such that only those with a business need to know will be aware of employee substance abuse matters.

## Definitions

Abuse – any use of an illegal drug; intentional misuse of any over-the-counter drug in cases where such misuse impairs job performance; use of any prescription drug in a manner inconsistent with its medically prescribed use, or under circumstances where use is not permitted; any use of alcohol; and intentional and inappropriate use of any substance, legal or illegal, which impairs job performance.

Adulterants – masking agents that prevent the detection of drug use in drug testing samples.

Alcohol – ethyl alcohol or ethanol.

Alcohol and Drug Screening – a method used to screen for substances of abuse (i.e. urine, blood or breath), administered for the purpose of determining the presence or absence of a drug, drug metabolites or alcohol.

Cause – where circumstances of reasonable suspicion exist.

Chain of Custody – the procedure which accounts for the integrity of each urine and/or blood specimen by tracking its handling and storage from point of specimen collection to final disposition of the specimen at an independent lab.

DEFENDANT 001393

CONFIDENTIAL

Collection Site – a pre-designated location where individuals present themselves for the purpose of providing a specimen of their urine or blood to be analyzed for the presence of alcohol, drugs or drug metabolites. No third party tests performed independent of this process will be considered.

Drugs – any chemical substance illegal or prescribed (including alcohol) that produces a physical, mental, emotional or behavioral change in the user.

Illegal Drugs – any substance, other than alcohol, having psychological and/or physiological effects on a human being that is not a prescription or non-prescription medication, including controlled dangerous substances and controlled substance analogs of volatile substances which produced the psychological and/or physiological effects of a controlled dangerous substance.

Improper Self-Medication – includes using drugs prescribed to someone else, using prescription medication at other than the prescribed dose, or using over-the-counter medication in a manner not in accord with the manufacturer's instructions.

Legal Drug – includes alcohol, prescribed drugs and over-the-counter drugs which have been lawfully obtained and possessed which are being used for the purpose for which they are prescribed or manufactured and in the dosages and frequency prescribed.

Multiple Screening Events – in the event an incident may occur causing reasonable suspicion in an area where multiple employees work, it may be necessary to do reasonable suspicion testing on all employees in the area.

Positive Test Result – a test result that was positive on an initial FDA-approved immunoassay test, confirmed by a gas chromatography/mass spectrometry assay (or other confirmatory test(s) meeting national institute on drug abuse standards), and reviewed and verified by the MRO or an alcohol test which equals or exceeds a threshold level established as constituting a positive test for being under the influence of alcohol.

Possession of Drugs – the possession on an employee's person or personal property of an illegal drug or alcohol.

Reasonable Suspicion Testing – alcohol or other drug testing based on a belief that an employee is using or has used drugs in violation of UH policy drawn from specific facts and reasonable inferences drawn from those facts in light of experience, and may be based upon:

- Observable phenomena, such as direct observation of drug use and/or the physical symptoms or manifestations of being under the influence of a drug; abnormal conduct or erratic behavior while at work, absenteeism, tardiness, or deterioration in work performance;
- A report of drug use provided by reliable and credible sources, which has been independently corroborated;
- Evidence that an individual has tampered with a drug test during his/her employment with UH;
- Evidence that an employee is involved in the use, possession, sale, solicitation, or trafficking alcohol and/or other drugs while working, or while on UH property or operating the employer's vehicle, machinery or equipment;
- Repetitive industrial accidents; and/or
- Theft of and/or tampering with hospital pharmaceuticals (See UH Policy CP-8, Loss of and Tampering with Dangerous Drugs)

Substance – alcohol or drugs.

Trafficking – buying, selling, prescribing or exchanging drugs for money or for other consideration.

Under the influence – use of any drug, both legal and illegal including homeopathic (herbal) remedies where there is any possibility that such use may impair the employee's ability to safely perform his/her job, or may adversely affect patient safety or the safety of others.

DEFENDANT 001394

CONFIDENTIAL

UH Business – any activity or circumstance in which an employee is or is supposed to be attending to his/her responsibilities as an employee.

UH Property – any UH premises, including any building, site, parking garage, parking lot, location, facility, vehicle or other open areas owned, leased, rented or regularly used by or for UH, as well as any site or location where an employee is performing services on behalf of UH.


**SEE ALSO:**

**UH Policies and Procedures:**
      Policy #HR-72, Corrective Action
      Policy #HR-85, Employee Assistance Program
      Policy #CP-8, Loss of and Tampering with Dangerous Drugs


**Attachment A:** List of Designated Sites Providing Screens During Hours

**Attachment B:** Agreement to Submit to an Alcohol and/or Drug Screen

**Attachment C:** List of Designated Sites Providing Screens After Hours


| APPROVALS | | |
|---|---|---|
| CHIEF EXECUTIVE OFFICER | | 6/15/15 Date |
| SENIOR LEADERSHIP DESIGNATED BY PPG | | 6-12-15 Date |

DEFENDANT 001395

CONFIDENTIAL

# THE FITNESS-FOR-DUTY EXAMINATION

I.  **Overview**

   A.  Fitness-for-duty examinations are sometimes required by employers in order to gauge whether an employee is able to perform essential job functions.

   B.  Federal law places several restrictions on the way the tests are conducted and what results can be used by the employer

II.  **Fitness-for-duty examinations for prospective employees**

   A.  A fitness-for-duty examination may only be given after a job offer has been made.

   B.  It is strictly prohibited to ask a prospective employee in the pre-offer stage to submit to a fitness-for-duty examination.

   42 U.S.C. §12112(c)(B)(1994); 29 C.F.R. §1630.13(a)(1998)

   C.  However, an employer can make pre-employment inquiries into the ability of the prospective employee to perform job-related functions.

   42 U.S.C. §12112(d)(3)(1994); 29 C.F.R. §1630.14(b)(1998)

   D.  An employer is allowed to make a job offer conditioned upon the successful completion of a medical exam if two conditions are met

      (1)  The examination must be applied uniformly to all entering employees in the same job category.

      (2)  The medical information must be kept confidential.

   42 U.S.C. §12112(d)(3)(1994); 29 C.F.R. §1630.14(b)(1998)

III.  **Fitness-for-duty examinations for current employees under the ADA**

   A.  In order to ask for a fitness-for-duty examination of current employees, the employer must have a "reasonable belief, based on objective evidence" that:

© 2007 McAnany, Van Cleave & Phillips, P.A.

DEFENDANT'S EXHIBIT
10
5/23/18
COLLINS REPORTING

GREER 000877

(1) employee's ability to perform essential job functions will be impaired by a medical condition; or

(2) an employee will pose a direct threat due to a medical condition.

B. Sometimes this standard may be met when an employer knows about a particular employee's medical condition, has observed performance problems, and reasonably can attribute the problems to the medical condition. An employer may also be given reliable information by a credible third party that an employee has a medical condition, or the employer may observe symptoms indicating that an employee may have a medical condition that will impair his/her ability to perform essential job functions or will pose a direct threat.

C. An employer cannot "require a medical examination or make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability"

D. However, employers are allowed to ask disability-related questions and mandate mandatory medical examinations if the inquiry is "job-related and consistent with business necessity."

(1) **Example 1:** A fork lift driver's job is to transport and stack pallets weighing several hundred to a thousand pounds in a storage warehouse with numerous workers on the floor. After an impeccable ten-year work record, the fork lift driver crashes into a wall of stacked pallets, narrowly missing a co-worker. The employee explains that he felt dizzy and became disoriented, and that this has happened a few other times, although never at work. The employer believes that the employee may pose a direct threat and sends him for a medical examination to determine if he is fit to perform his job. The employer provides the doctor with a description of the job to help ensure an accurate determination. This examination would be considered job-related and consistent with business necessity.

(2) **Example 2:** Several months ago, a supervisor overheard two employees talking about another co-worker, who had told them about having a serious heart condition that necessitates the use of medication and frequent doctor's visits. The individual comes to work every day and successfully performs her duties as a computer

© 2007 McAnany, Van Cleave & Phillips, P.A.

GREER 000878

programmer. In this case, the employer does not have a reasonable belief that the computer programmer's ability to perform her essential job functions are impaired or that she poses a direct threat due to a medical condition. The employer may not make disability-related inquiries or require a medical examination.

IV.  **What if an employee applies for a job transfer or promotion?**

A.  The EEOC requires employers to treat these employees as job applicants.  As a result, the employee may only be given a fitness-for-duty examination after a job offer has been extended to the applicant.

B.  The job offer may be conditioned, however, on passing the medical examination.

42 U.S.C. §12112(d)(3)(1994); 29 C.F.R. §1630.14(b)(1998).

V.  **What if an employee requests accommodations for his/her disability?**

A.  An employer may request documentation to substantiate the employee's need for the requested accommodation but cannot ask for unrelated documentation.

(1)  Thus, the employer cannot ask for the employee's complete medical record, in most cases.

29 C.F.R. pt. 1630 app. §1630.9 (1998)

B.  When an employee requests an accommodation, the employee has the choice of which doctor to see

C.  An employer can only require an employee to go to a doctor of its choice if the information provided by the employee is insufficient to establish either: 1) that the employee is disabled; or 2) that the employee needs a reasonable accommodation.

VI.  **What if an employer reasonably believes the employee poses a direct threat?**

© 2007 McAnany, Van Cleave & Phillips, P.A.

GREER 000879

A. The employer is allowed to have the employee examined by a medical professional of the employee's choice.

B. Any medical examination, however, must be limited to determining whether the employee can perform his/her job without posing a direct threat, with or without reasonable accommodation.

VII. **Fitness-for-duty examinations for current employees under the FMLA**

A. An employer can ask the employee to obtain a medical certificate regarding his/her serious health condition before returning to work. This is usually done to ensure that the current employee is able to perform essential job functions after his/her return.

29 C.F.R. § 825.310

B. The employer can only request information contained in the Department of Labor's "Certification of Health Care Provider" Form. This information includes:

(1) A certification as to which part of the definition of a serious health condition applies and the facts supporting the certification

(2) The approximate date the condition commenced and its probable duration

(3) A statement as to whether it is necessary for the employee to take intermittent or reduced schedule leave and the probable duration of such a schedule

(4) If the condition is pregnancy, or a chronic health condition, or whether the patient is incapacitated and the likely duration and frequency of episodes of incapacity

(5) If additional treatments are required, the estimated number of treatments, the interval between treatments, and the scheduled dates of treatments, if known

(6) If a regimen of continuing treatment under the supervision of a health care provider is required, a description of the regimen

© 2007 McAnany, Van Cleave & Phillips, P.A.

GREER 000830

(7) If medical leave is required, whether the employee will be required to be absent from work, or if not, whether the employee is unable to perform certain duties, including one or more essential functions of the job.

## VIII. What about Return to Work Situations?

A. Under the ADA, employers may require examinations for those returning to work from medical leave if the employer has a "reasonable belief that the employee's present ability to perform essential job functions will be impaired or that he/she will pose a direct threat due to a medical condition."

B. Any inquiries or examinations, however, must be limited in scope as to what is needed to make an assessment of the employee's ability to work.

C. The examination must be tailored to: 1) the actual medical condition that caused the absence, and 2) the ability to perform the essential functions of the job.

    (1) Example 1: A data entry clerk broke her leg while skiing and was out of work for four weeks, after which time she returned to work on crutches. In this case, the employer does not have a reasonable belief, based on objective evidence, either that the clerk's ability to perform her essential job functions will be impaired by a medical condition or that she will pose a direct threat due to a medical condition. The employer, therefore, may not make any disability-related inquiries or require a medical examination but generally may ask the clerk how she is doing and express concern about her injury.

    (2) Example 2: As the result of problems he was having with his medication, an employee with a known psychiatric disability threatened several of his co-workers and was disciplined. Shortly thereafter, he was hospitalized for six weeks for treatment related to the condition. Two days after his release, the employee returns to work with a note from his doctor indicating only that he is "cleared to return to work." Because the employer has a reasonable belief, based on objective evidence, that the employee will pose a direct threat due to a medical condition, it may ask the employee for additional documentation regarding his

© 2007 McAnany, Van Cleave & Phillips, P.A.

GREER 000881

medication(s) or treatment or request that he submit to a medical examination.

IX.   **What about drug testing and medication inquiries?**

A. Since individuals who use illegal drugs are not protected by the ADA, employers may engage in testing for illegal drugs

B. With regard to medication inquiries, questions regarding their use are appropriate only if the employer can demonstrate that it is "job-related and consistent with business necessity."

(1) Example: An airline can require pilots to report when they are taking prescription medication which could impair their ability to fly, but a fire department cannot require employees who perform administrative duties to report their use of medication.

Disclaimer and warning: This information was published by McAnany, Van Cleave & Phillips, P.A., and is to be used only for general informational purposes and should not be construed as legal advice or legal opinion on any specific facts or circumstances. This is not inclusive of all exceptions and requirements which may apply to any individual claim. It is imperative to promptly obtain legal advice to determine the rights, obligations and options of a specific situation.

© 2007 McAnany, Van Cleave & Phillips, P.A.

GREER 000882

# POLICY & PROCEDURE

 **University Hospitals**

## HR-71 – Attendance

### Key Points

- This policy applies to all University Hospitals regular full-time and part-time non-supervisory employees.

### Policy & Procedure

1. Definitions:
    1.1. No Fault Policy:
    If an employee is absent for any reason other than approved time off, the absence counts as an occurrence of absenteeism.
    For purposes of this policy, the following will **not** be counted as occurrences of absence:
        * approved leaves of absence (See HR-70 Leaves of Absence, HR-19 FMLA)
        * approved workplace illnesses and injuries, off duty due to known exposure to patient communicable disease per Infection Control or Corporate Health Services
        * scheduled paid time off (PTO), pre-approved time off for medical appointments, or scheduled vacation time
        * Jury duty and/or bereavement leave
        NOTE: The fact that an employee presents a physician's note does not preclude an occurrence of absence being charged.
    1.2. Call-Off:
    Notifying the supervisor in charge of an absence in accordance with departmental policy and procedure.  Instances of failure to notify the supervisor in charge of any absence according to the department's policy and procedures.  (i.e. Late Call-Offs) will be subject to corrective action.
    1.3. Scheduled Shift:
    Any day or part of a day for which an employee is assigned to work.  Any shift or part of a shift that an employee agrees to work in addition to their original scheduled hours.
    1.4. Occurrence of absence:
        1.4.1. Being away from the job for 25% or more of a scheduled shift. This applies to straight time and overtime. If an employee receives PTO or vacation time pay for an unscheduled absence, it is still considered to be an occurrence of absence.
        1.4.2. Each day of absence will count as one occurrence.  Consecutive scheduled days of absenteeism due to the employee's own illness



GREER 000404

will count as one occurrence a maximum of 2 times per attendance year. After that, additional consecutive days of absenteeism due to the employee's own illness would count as one occurrence per day absent.

1.4.3. In instances where a request for scheduled paid time off was not approved, each day of absence will be considered as a separate occurrence.

NOTE: FMLA may be initiated any time an eligible employee experiences an overnight stay in the hospital, a period of incapacity of more than 3 consecutive calendar days or is absent on an intermittent basis for a reason that qualifies under the FMLA regulation.

1.5. Pattern:

A predictable or regular sequence of absences. An employee who has developed a pattern of absenteeism is subject to the corrective action process. The following examples are not all inclusive:

1.5.1. A Pattern of calling off the day before or after a scheduled day off.

1.5.2. A Pattern of calling off when scheduled to work a holiday.

1.5.3. Calling off for multiple days on a patterned basis.

1.5.4. Abuse of the rolling 12-month period

1.5.5 A pattern of calling off consecutive days in a row due to the employee's own illness. (i.e. Calling off for 2 or 3 days at a time more than twice in a 12 month period.)

NOTE: A pattern may develop over a period of weeks, months or in some cases, year to year.

1.6. No call/no show:

Absence from a scheduled shift without notification. The first day of no call/no show will be subject to a confirmation of counseling if the employee has no current corrective action. If the employee has a current corrective the next level of corrective action should be applied. Each additional day of no call/no show will result in advancing two levels of progressive corrective action (i.e. employee at confirmation of counseling will advance to final warning level with a 2nd no call/no show) subject to qualifying Family & Medical Leave Act (FMLA) time.

Any employee who has three consecutive days of no call/no show on days when he/she was scheduled to work could be assumed as voluntary termination

2. Policy:

2.1. Attendance is an important factor of every employee's total work performance and will be included as a factor in any performance evaluation.

2.2. Each manager will administer the policy in a fair and consistent manner while using management discretion to determine required action in cases of absenteeism issues.

2.3. Each manager or department will monitor the attendance pattern of the employees in his/her work group.

GREER 000405

2.4. It is the manager's discretion based on scheduling and the department workload whether or not to approve time off.

2.5. Tracking Occurrences:

2.5.1. Attendance Year Definition: the rolling 12 months prior to the most recent occurrence of an attendance infraction. Once an occurrence is older than 12 months, it will not be considered part of the attendance year and cannot be used for further corrective action unless it is a pattern.

2.5.2. Any employee who accumulates 6 occurrences of unscheduled absences within any consecutive 12-month period will be subject to progressive corrective action up to and including discharge. The employee must complete 12 months from the date of the last occurrence without acquiring any additional unscheduled occurrences of absences to avoid progressive corrective action. Each occurrence after the first 6 will progress the level of action taken depending on where the employee is in the corrective action process at the time of the attendance infraction.

- 6 occurrences = next level corrective action
- 7 occurrences = next level corrective action
- 8 occurrences = next level corrective action
- 9 occurrences = next level corrective action

2.5.3. Absence

2.5.3.1. Each occurrence of absence as defined above (1.3) will count as one occurrence.

2.5.4. Tardiness / Early Leave / Kronos Punch Violations:

2.5.4.1. Tardiness will be tracked according to departmental policy and procedures. Employees who fail to adhere to department policy and procedures will be subject to progressive disciplinary action up to and including discharge.

---

**Approvals**

_____   2/8/15
Chief Executive Officer            Date

_____   2-3-15
Chief Human Resource Officer       Date

---

GREER 000406



**University Hospitals**

**Employee Assistance Program**
**Drug/Alcohol Screening Procedures**

The Employee Assistance Counselors will determine whether an employee must participate in the drug and/or alcohol screening program. Once the decision is made, all employees (mandatory and/or self-referred) must follow the guidelines as stated below.

1. Upon acceptance into the program, the employee must meet with the EAP Secretary. The EAP Secretary will provide information about the drug and/or alcohol screening program and verify the employee's information:
   Name _____Mina Greer_____
   Home phone number _X 419-454-9281 - 419-957-2459_
   Work phone number _____
   Pager number _____
   (This information must be given in order for Employee Assistance to contact employees.)

2. The employee is required to take a drug and/or alcohol screening weekly. _2 yrs effective_

3. The drug and/or alcohol screening is done randomly; therefore, the employee must contact the EAP Secretary at 844-4948 every Monday, Wednesday and Friday between the hours of 8:00 A.M. to 4:30 P.M. At that time, the EAP Secretary will inform the employee if the screen is due that day. In the event the EAP Secretary is unavailable, please leave a phone mail message and she will return your call if your screening is due that day, otherwise your call-in will be documented. _9/26/16 - 9/26/18_

4. The employee is required to call every Monday, Wednesday and Friday even when the employee has had a drug/alcohol screening for the week. This step is essential and must be adhered to because an employee may be asked to retake a drug/alcohol screening at the request of an Employee Assistance Counselor.

5. The employee is requested to show up for the screening as soon as possible that same day. If an employee fails to fulfill that obligation the Employee Assistance Secretary must turn that employee's name over to the Employee Assistance Counselor assigned to that case.

6. The employee must contact the Employee Assistance Secretary before taking time off for vacation, etc. If he/she is to be excused from the drug and/or alcohol screening for the week.

7. The employee should contact the Counselor assigned to his/her case when the EAP Secretary is out on vacation to confirm call-in and/or whether or not to come in for screening.

_Mina Greer_                              _X 09-26-2016_
Employee                                  Date

_____          _____
Employee Assistance Counselor            Date



DEFENDANT'S EXHIBIT
12
3/23/18
COLLINS REPORTING

GREER 000467



**University Hospitals™**

**Employee Assistance Program
Conditions of Employment**

**Compliance Contract
between**

*Laura Greer*

**Employee**

**and the**

**Employee Assistance Program Counselor**

I understand that my supervisor referred me to the Employee Assistance Program (EAP) as a Mandatory Referral. I understand that my EAP assessment resulted in certain recommendations and I must comply with them.

I understand that my compliance with the EAP attendance recommendation and treatment plan must be monitored as determined by the EAP counselor. If I do not comply with the recommendation and/or treatment plan within __1__ week (s) my supervisor and /or HR will be informed. Non-compliance may result in corrective action up to and including discharge.

The EAP recommendation/treatment plan requirements are as follows: _____ per D/C instructions per St. Rita's
1) F/u c Dr. Rala + his recommendations
2) F/u c Mike McGregor Wyandot Counseling + his recommendations
3) F/u Family Practice Nancy Williams CNP + recommendations

I understand and agree to comply with the conditions of this Contract.

_Laura Greer_
**Employee**

_09-26-2016_
**Date**

_____
**EAP Counselor**

_____
**Date**

# ATTACHMENT A

### UNIVERSITY HOSPITALS HEALTH SYSTEM
### EMPLOYEE ASSISTANCE PROGRAM
### REFERRAL FORM

Employee: **Laura Greer**  Position: **Claims Processor**  Date: **7-12-16**  Phone: **419 424-9291**

You are being referred to the EMPLOYEE ASSISTANCE PROGRAM (EAP) because of the concerns noted below. EAP services are confidential, in compliance with the law. Your supervisor will be told only whether you kept the appointment, and whether you complied with the EAP recommendations. Your supervisor will not be told what was discussed unless you specifically authorize it and sign a release of information specifying the information to be released. Information from EA may be shared without a release and authorization in response to state or federal statute/regulation (e.g. Homicidal/suicidal ideation; child and elder abuse/neglect), a court ordered subpoena or an official investigation by a government agency.

☒ A Tier 1 Mandatory Referral has been made to EAP for the following reason:

- ☒ Fitness for Duty
- ☐ Violent, hostile, or reckless behavior that endangers the safety of others or that causes others to fear for their safety
- ☐ Reasonable suspicion of drug/alcohol use including evidence of drug diversion.

Please phone EAP at 216-844-4948 to confirm your scheduled appointment on **7-12-16 @ 12 pm**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

- ☐ A Tier 2 Mandatory Referral has been made to EAP for the following job performance concern(s):
  - ☐ Attendance issues
  - ☐ Conflictive work relationship
  - ☐ Deteriorating job performance
  - ☐ Other _____

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Please phone EAP at 216-844-4948 within 5 business days of today's date, to schedule an appointment.

Explanation of counseling, anecdotal, corrective actions or other concerns relative to the above-checked concerns:

My supervisor has explained the reason for this EAP referral. I understand that my supervisor will be notified whether I keep my appointment and whether I comply with the EAP recommendations. I have been given a copy of this form.

Employee Signature: _____  Date: _____

Supervisor Signature: **Angela Kuhl**  Dept: **HR**  Phone: **330 463 1135**

EAP Counselor Signature: _____  Date: _____

☐ Employee attended EAP session  ☐ Employee did not attend EAP session

☐ Employee complied  ☐ Employee did not comply

CONFIDENTIAL

DEFENDANT 001316

*Neg to EAP*
*10/05/16*



3949 N. Main St. Suite D
Findlay, OH 45840
Phone: 419-425-5121
Fax: 419-425-5738

Date: 10/5/2016

Re: Laura Greer
SSN: 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

DER: Laura Fernandez
Employer: University Hospitals Case Med Center

This letter is in regard to the random urine drug screen collected on 9/28/2016 from Laura Greer. This test is reported as "Negative." The specimen was also Dilute.

As the Medical Review Officer for this test, I was able to confirm that there is a legitimate medical prescription in use, consistent with the chemical detected in the specimen. Because there is a legitimate medical explanation for the presence of this substance, this drug test is declared as "Negative." I would like you to be aware that use of this medication may have side effects that could present safety-sensitive issues. The employee's personal physician may be a better judge of how the individual reacts to the medication with respect to job duties.

Please feel free to contact me if you have any further questions or concerns.

Sincerely,

Stephanie A. Matuszak MD, MRO
Well at Work

DEFENDANT'S
EXHIBIT
13
5/23/18
COLLINS REPORTING

GREER 000680

# Alcohol Testing Form (Non-DOT)

*(The instructions for completing this form are on the back of Copy 3)*

**STEP 1: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

A: Employee Name (Print) (First, M.I., Last): *Laura Greer*

B: SSN or Employee ID No.: *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*

C: Employer Name: *University Hospitals Case M.C.*

Street: *MCCO 6th Floor, 11100 Euclid Ave*
*Mail stop 6035B*

City, State, Zip: *Cleveland, OH 44106*

DER Name and Telephone No.: *Laura Fernandez 216-844-4828*
DER Name / DER (Area Code & Phone Number)

D: Reason for Test: ☐ Reasonable Susp. ☐ Post-Accident ☐ Return to Duty ☐ Follow-up ☐ Pre-employment
☑ Random (tests the job related and consistent with business necessity requirement)

```
ALCOMONITOR CC  001224
09/28/16
TEST NO. 218

SBJ: 300603228........

SCREENING TEST
0/210L      TIME
.000 AUTO    09:16
```

**STEP 2: TO BE COMPLETED BY EMPLOYEE**

I certify that I am about to submit to alcohol testing and that the identifying information provided on the form is true and correct.

Signature of Employee: *[signature]*
Date: *09* Month / *28* Day / *2016* Year

**STEP 3: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

(If the technician conducting the screening test is not the same technician who will be conducting the confirmation test, each technician must complete their own form.) I certify that I have conducted alcohol testing on the above named individual, that I am qualified to operate the testing device(s) identified, and that the results are as recorded.

TECHNICIAN: ☑ BAT ☐ STT   DEVICE: ☐ SALIVA ☑ BREATH*  15-Minute Wait: ☐ Yes ☐ No

SCREENING TEST: (For BREATH DEVICE* write in the space below only if the testing device is not designed to print.)

| Test # | Testing Device Name | Device Serial # OR Lot # & Exp. Date | Activation Time | Reading Time | Result |
|--------|---------------------|--------------------------------------|-----------------|--------------|--------|
|        |                     |                                      |                 |              |        |

CONFIRMATION TEST: Results MUST be affixed to each copy of this form or printed directly onto the form.

REMARKS:

Alcohol Technician's Company: *WELL at WORK*

(PRINT) Alcohol Technician's Name (First, M.I., Last): *EDITH GRINE*

Signature of Alcohol Technician: *Edith Grine*
Date: *9* Month / *28* Day / *16* Year

Company Street Address: *3949 N. Main St.*
*Findlay, OH 45840*
Company City, State, Zip: *419-425-5121*
*Fax 419-425-5738*
Phone Number (Area Code & Number)

**Well at Work**

**STEP 4: TO BE COMPLETED BY EMPLOYER IF TEST RESULT IS POSITIVE**

I certify that I have submitted to the alcohol test, the results of which are accurately recorded on this form. I understand that I must not drive, perform safety-sensitive duties, or operate heavy equipment because the results are positive.

Signature of Employee: Date ___ Month / Day / Year

COPY 1 - ORIGINAL - FORWARD TO THE EMPLOYER          8363 (Rev. 2/14)

Affix Or Print Screening Results Here ▼
Affix With Tamper Evident Tape ▼
Affix Or Print Confirmation Results Here ▼
Affix With Tamper Evident Tape ▼
Affix Or Print Additional Test Results Here ▼
▲ Affix With Tamper Evident Tape

GREER 000681

Well at Work

## MRO Analysis Form

| | | | |
|---|---|---|---|
| Laura Greer | 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 | 01-12-1970 | 419-957-2459 |
| | | 216-844-4828 | 216-844-3990 |
| Employer: University Hospitals Case M. C | Laura Fernandez | 419-425-5121 | 419-425-5738 |
| Collector: Well at Work | April Vandenberg | 800-832-3244 | |
| Lab: MEDTOX | | | |
| | RT | Z31611034 | COLLPROT |
| 9/28/2016 | | | |

Lab Results:

| Substance | Lab Result | Lab Level | Finding |
|---|---|---|---|
| Amp Exp | Negative | 0 | |
| Barbiturates (Urine) 5620 | Negative | 0 | |
| Benzodiazepines 5630 | Positive | 232.0000 | alprazolam |
| Cocaine Metabolite 5640 | Negative | 0208 | alpha hydroxy alprazolam |
| Marijuana Metabolite 5671 | Negative | 0 | |
| Meperidine 5730 | Negative | 0 | |
| Methadone 5680 | Negative | 0 | |
| Opiates (Urine) 5650 | Negative | 0 | |
| Oxycodone - Urine 5653 | Negative | 0 | |
| Phencyclidine 5660 | Negative | 0 | |
| Propoxyphene 5700 | Negative | 0 | |
| TRAMADOL 5720 | Negative | 0 | |

☑ Review Chain of Custody Documents:
 ✓ Acceptable ___ Unacceptable  (explain:) _____

Employee Notification Phone Log:

Phone  419-957-2459

Date/Time  10/3/16 14:25
10/5/16 13:28

Response  *Voicemail Not set up*
sounds fired, slightly
confused

☐ If unable to notify employee, company's Drug Test Program Coordinator
 notified. Date: __/__/__   Name: _____

Works from home on comput
OATERS: alprazolam 0.25 #30
9/13/2016 #65 99920
(Also zolpidem)

☑ Notify employee of positive results
☑ Review possible legitimate reasons for a positive result
 Employee's Reason(s) given for Positive Test:

 Prescription Medicine(s) being taken:  ___ Waives  ___ Requests Split

☐ Notify right to request split sample within 72 hours

Final Result:  ☐ Positive   ☑ Negative   ☐ Canceled   ☐ Dilute   ☐ Refused-Adulterated   ☐ Refused-Substituted

_[signature]_  Verified On: 10/5/2016
Stephanie A. Matuszak, MD                    216-844-4828
Medical Review Officer     Contact LAURA FERNANDEZ   Date: 10-6-16  Time: 9:01

☐ Notify employer of results

Comments:                                                                Page

Printed on: 10/03/2016  11:21:26AM    V:\REPORTS\SCREENING\MRO ANALYSIS FORM_<b>v7.32>#0186

GREER 000682

9/03/2016  09:46:21          Medtox Laboratories -  AG:FROUELLAT  BT: G4194664          Page:01 of

MEDTOX LABORATORIES INC.                          Jennifer A. Collins, Ph.D.
402 WEST COUNTY ROAD D
ST PAUL, MN 55112
651-636-7466
                                   LABORATORY REPORT

Account #: 4746912                 Accession #:  G4197040
BLANCHARD VALLEY HEALTH SYSTEM      Specimen I.D.: 331611034
HRO: STEPHANIE MATUSZAK, MD        Donor Name/ID: GREER, LAURA
WELL AT WORK                       SSN:           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
3949 N MAIN ST STE D               Age:    Sex:
FINDLAY, OH 45840                  Reason for test: Random

                                    Date          Date          Date
                                   Collected      Received      Reported
General Information                09/28/2016     09/29/2016    10/03/2016
                                   10:00                        9:43AM

    TEST(S) REQUESTED              RESULTS        UNITS  THERAPEUTIC RANGE
    ----------------               -------        -----  -----------------

DRUGS OF ABUSE SCREEN
  DRUG TEST RESULT                 POSITIVE
  AMPHETAMINES                     NEGATIVE       ng/ml
  BARBITURATES                     NEGATIVE       ng/ml
  BENZODIAZEPINES                  +++POSITIVE+++  ng/ml
  COCAINE METABOLITE               NEGATIVE       ng/ml
  OPIATES                          NEGATIVE       ng/ml
  OXYCODONE                        NEGATIVE       ng/ml
  PHENCYCLIDINE (PCP)              NEGATIVE       ng/ml
  MARIJUANA METABOLITE (THC)       NEGATIVE       ng/ml
  METHADONE                        NEGATIVE       ng/ml
  PROPOXYPHENE                     NEGATIVE       ng/ml
  TRAMADOL                         NEGATIVE       ng/ml
  MEPERIDINE                       15.4      (L)  mg/dl    > = 20
  CREATININE                                      mcg/ml   < 200
  NITRITES                         NEGATIVE

THIS SPECIMEN WAS SCREENED BY IMMUNOASSAY. ANY POSITIVE RESULT
HAS BEEN CONFIRMED BY CHROMATOGRAPHY WITH MASS SPECTROMETRY.
THE FOLLOWING THRESHOLD CONCENTRATIONS WERE USED FOR THIS ANALYSIS

                    SCREENING THRESHOLD      CONFIRMATION THRESHOLD
DRUG
AMPHETAMINES            1000 NG/ML
  AMPHETAMINE                                    500 NG/ML
  METHAMPHETAMINE                                500 NG/ML
  MDMA                                           500 NG/ML
  MDA                                            500 NG/ML
  MDEA                                           200 NG/ML
BARBITURATES             300 NG/ML              100 NG/ML
BENZODIAZEPINES          300 NG/ML
  DIAZEPAM, DESMETHYLDIAZEPAM
  OXAZEPAM, TEMAZEPAM
  ALPRAZOLAM, ALPHA-OH-ALPRAZOLAM
  LORAZEPAM, ALPHA-HYDROXYTRIAZOLAM
  HYDROXYETHYLFLURAZEPAM,
  ALPHA-HYDROXYMIDAZOLAM, 7-AMINOCLONAZEPAM      150 NG/ML
COCAINE METABOLITE       300 NG/ML
OPIATES                  300 NG/ML              300 NG/ML
  CODEINE                                        300 NG/ML
  MORPHINE                                       300 NG/ML
  HYDROCODONE                                    300 NG/ML
  HYDROMORPHONE                                  100 NG/ML
OXYCODONE                100 NG/ML
                        REPORT CONTINUED ON NEXT FORM

GREER 000683

8/03/2016  09:46:21          Medtox Laboratories -  AG:FRONELLAT  ST: 641946864                     Page:82 of

CONTINUED REPORT
MEDTOX LABORATORIES INC.                              Jennifer A. Collins, Ph.D.
  402 WEST COUNTY ROAD D
  ST PAUL, MN 55112
  651-636-7466
                                     LABORATORY REPORT

Account #: 4746912                   Accession #: G4197040
BLANCHARD VALLEY HEALTH SYSTEM       Specimen I.D.: 231611094
MRO: STEPHANIE MATUSZAK, MD          Donor Name/ID: GREER, LAURA
WELL AT WORK                         SSN:        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
3949 N MAIN ST STE D                 Age:    Sex:
FINDLAY, OH 45840                    Reason for test: Random

                                      Date        Date        Date
                                     Collected   Received    Reported
General Information                  09/28/2016  09/29/2016  10/03/2016
                                       10:00                  9:43AM


        TEST(S) REQUESTED         RESULTS          UNITS THERAPEUTIC RANGE

   PHENCYCLIDINE            25 NG/ML              25 NG/ML
   MARIJUANA METABOLITE     50 NG/ML              15 NG/ML
   METHADONE               300 NG/ML             300 NG/ML
   PROPOXYPHENE            300 NG/ML             300 NG/ML
   TRAMADOL                200 NG/ML             100 NG/ML
   MEPERIDINE              200 NG/ML             100 NG/ML

   ALTERNATIVE EXPLANATIONS SHOULD BE EXPLORED FOR POSITIVE RESULTS.
   THIS PANEL INCLUDES TESTING FOR SPECIMEN VALIDITY.

   **SOME COMPONENTS OF THE TEST PANEL WERE DEVELOPED AND PERFORMANCE
   CHARACTERISTICS DETERMINED BY LABCORP. THEY HAVE NOT BEEN CLEARED
   OR APPROVED BY THE FOOD AND DRUG ADMINISTRATION.


   Certified by: GREEN,LEAH
   SPECIFIC GRAVITY                  1.003      ✓

   Certified by: GREEN,LEAH
   EXPANDED BENZODIAZEPINE CONFIRM
   ALPRAZOLAM                         232        ✓       ng/ml
   ALPHA-HYDROXYALPRAZOLAM            208        ✓       ng/ml


   QUANTITATIVE BENZODIAZEPINE CONFIRMATION INCLUDES DIAZEPAM,
   DESMETHYLDIAZEPAM, OXAZEPAM, TEMAZEPAM, ALPRAZOLAM,
   ALPHA-HYDROXYALPRAZOLAM, HYDROXYETHYLFLURAZEPAM, LORAZEPAM,
   ALPHA-HYDROXYTRIAZOLAM, ALPHA-HYDROXYMIDAZOLAM, 7-AMINOCLONAZEPAM
   AT A THRESHOLD OF 100 ng/mL.
   ANALYSIS PERFORMED BY LIQUID CHROMATOGRAPHY/TANDEM MASS
   SPECTROMETRY (LC/MS/MS).


              ** FINAL REPORT **

         Collected at 4194253121  MEDTOX collection site #607
         WELL AT WORK - FINDLAY
         FINDLAY, OH

GREER 000684

@AO
4/25/17



3949 N. Main St. Suite D
Findlay, OH 45840
Phone: 419-425-5121
Fax: 419-425-5738

Date: 4/24/2017

Re: Laura Greer
SSN: 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

DER: Laura Fernandez
Employer: University Hospitals Case Medical Center

This letter is in regard to the latest in a series of weekly random follow-up drug screens collected on 4/19/2017 from Laura Greer. This test is reported as "Negative."

As the Medical Review Officer for this test, I was able to confirm that there is a legitimate medical prescription in use, consistent with the chemical detected in the specimen. Because there is a legitimate medical explanation for the presence of this substance, this drug test is declared as "Negative." I would like you to be aware that use of this medication may have side effects that could present safety-sensitive issues. The employee's personal physician may be a better judge of how the individual reacts to the medication with respect to job duties.

Please feel free to contact me if you have any further questions or concerns.

Sincerely,

Stephanie A. Matuszak MD, MRO
Well at Work

DEFENDANT'S
EXHIBIT
14
5/23/18
COLLINS REPORTING

GREER 000805

14/14/2017  23:32:19                Medtox Laboratories -   AG:FROMELLAT   BT: 64387807

CONTINUED REPORT                              Jennifer A. Collins, Ph.D.
MEDTOX LABORATORIES INC.
402 WEST COUNTY ROAD D
ST PAUL, MN 55112
651-636-7466                        LABORATORY REPORT

Account #: 47469                    Accession #:  GS529273
EMPLOYER:                           Specimen I.D.: 233458657
MRO: STEPHANIE MATUSZAK, MD         Donor Name/ID: GREER,LAURA
WELL AT WORK                        SSN:
3949 N MAIN ST STE D                        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
FINDLAY, OH 45840                   Age:    Sex:
                                    Reason for test: Random

General Information                 Date         Date         Date
47469                               Collected    Received     Reported
                                    04/10/2017   04/11/2017   04/14/2017
                                    13:23                     11:30PM

                                    RESULTS      UNITS THERAPEUTIC RANGE
          TEST(S) REQUESTED                            100 NG/ML
          ------------------        100 NG/ML          100 NG/ML
OXYCODONE                           25 NG/ML            25 NG/ML
PHENCYCLIDINE                       50 NG/ML            15 NG/ML
MARIJUANA METABOLITE                300 NG/ML           300 NG/ML
METHADONE                           300 NG/ML           300 NG/ML
PROPOXYPHENE                        200 NG/ML           100 NG/ML
TRAMADOL                            200 NG/ML           100 NG/ML
MEPERIDINE

ALTERNATIVE EXPLANATIONS SHOULD BE EXPLORED FOR POSITIVE RESULTS.
THIS PANEL INCLUDES TESTING FOR SPECIMEN VALIDITY.

**SOME COMPONENTS OF THE TEST PANEL WERE DEVELOPED AND PERFORMANCE
CHARACTERISTICS DETERMINED BY LABCORP. THEY HAVE NOT BEEN CLEARED
OR APPROVED BY THE FOOD AND DRUG ADMINISTRATION.

Certified by: LANGER,CRAIG        1.002          ✓
SPECIFIC GRAVITY

Certified by: LANGER,CRAIG
EXPANDED BENZODIAZEPINE CONFIRM    270          ✓      ng/ml
  ALPRAZOLAM                       397          ✓      ng/ml
  ALPHA-HYDROXYALPRAZOLAM

QUANTITATIVE BENZODIAZEPINE CONFIRMATION INCLUDES DIAZEPAM,
DESMETHYLDIAZEPAM, OXAZEPAM, TEMAZEPAM, ALPRAZOLAM,
ALPHA-HYDROXYALPRAZOLAM, HYDROXYETHYLFLURAZEPAM, LORAZEPAM,
ALPHA-HYDROXYTRIAZOLAM, ALPHA-HYDROXYMIDAZOLAM, 7-AMINOCLONAZEPAM
AT A THRESHOLD OF 100 ng/mL.
ANALYSIS PERFORMED BY LIQUID CHROMATOGRAPHY/TANDEM MASS
SPECTROMETRY (LC/MS/MS).

                ** FINAL REPORT **

        Collected at 4194255121  MEDTOX collection site #607
        WELL AT WORK - FINDLAY
        FINDLAY, OH

GREER 000806

14/14/2017  23:32:18                    Medtox Laboratories  -  AO:FAXMELLAT  BY: 64387887

MEDTOX LABORATORIES INC.                                 Jennifer A. Collins, Ph.D.
    402 WEST COUNTY ROAD D
    ST PAUL, MN 55112
    651-636-7466
                                      LABORATORY REPORT

Account #: 47469                      Accession #:  G5529273
EMPLOYER:                             Specimen I.D.: 233458657
NPO: STEPHANIE MATUSSAK, MD           Donor Name/ID: GREER, LAURA
WELL AT WORK                          SSN:           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
3949 N MAIN ST STE D                  Age:    Sex:
FINDLAY, OH 45840                     Reason for test: Random

                                      Date          Date          Date
                                      Collected     Received      Reported
General Information                   04/10/2017    04/11/2017    04/14/2017
47469                                 13:23                       11:30PM

     TEST(S) REQUESTED              RESULTS         UNITS  THERAPEUTIC RANGE

DRUGS OF ABUSE SCREEN 96042        POSITIVE
  DRUG TEST RESULT                 DILUTE
  REMARKS                          NEGATIVE        ng/ml
  AMPHETAMINES                     NEGATIVE        ng/ml
  BARBITURATES                     +++POSITIVE+++  ng/ml
  BENZODIAZEPINES                  NEGATIVE        ng/ml
  COCAINE METABOLITE               NEGATIVE        ng/ml
  OPIATES                          NEGATIVE        ng/ml
  OXYCODONE                        NEGATIVE        ng/ml
  PHENCYCLIDINE (PCP)              NEGATIVE        ng/ml
  MARIJUANA METABOLITE (THC)       NEGATIVE        ng/ml
  METHADONE                        NEGATIVE        ng/ml
  PROPOXYPHENE                     NEGATIVE        ng/ml
  TRAMADOL                         14.8     (L)    mg/dl      >= 20
  MEPERIDINE                       NEGATIVE        mcg/ml     < 200
  CREATININE
  NITRITES

THIS SPECIMEN WAS SCREENED BY IMMUNOASSAY. ANY POSITIVE RESULT
HAS BEEN CONFIRMED BY CHROMATOGRAPHY WITH MASS SPECTROMETRY.
THE FOLLOWING THRESHOLD CONCENTRATIONS WERE USED FOR THIS ANALYSIS

DRUG                         SCREENING THRESHOLD      CONFIRMATION THRESHOLD
AMPHETAMINES                   1000 NG/ML               500 NG/ML
  AMPHETAMINE                                           500 NG/ML
  METHAMPHETAMINE                                       500 NG/ML
  MDMA                                                  500 NG/ML
  MDA                                                   500 NG/ML
  MDEA                                                  200 NG/ML
BARBITURATES                    300 NG/ML               100 NG/ML
BENZODIAZEPINES                 300 NG/ML
  DIAZEPAM, DESMETHYLDIAZEPAM
  OXAZEPAM, TEMAZEPAM
  ALPRAZOLAM, ALPHA-OH-ALPRAZOLAM
  LORAZEPAM, ALPHA-HYDROXYTRIAZOLAM
  HYDROXYETHYLFLURAZEPAM,
  ALPHA-HYDROXYMIDAZOLAM, 7-AMINOCLONAZEPAM         150 NG/ML
COCAINE METABOLITE              300 NG/ML               300 NG/ML
OPIATES                         300 NG/ML               300 NG/ML
  CODEINE                                               300 NG/ML
  MORPHINE                                              300 NG/ML
  HYDROCODONE                                           300 NG/ML
  HYDROMORPHONE

                    REPORT CONTINUED ON NEXT FORM

Called results _____

Entered _____

Faxed/Mailed _____

# Alcohol Testing Form (Non-DOT)

*(The instructions for completing this form are on the back of Copy 3)*

## STEP 1: TO BE COMPLETED BY ALCOHOL TECHNICIAN

A: Employee Name (Print) (First, M.I., Last) *Laura Greer*

B: SSN or Employee ID No. *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*

C: Employer Name *University Hospitals*

Street *MCCO 6th Floor 11100 Euclid A*
*Mail Stop 6035B*

City, State, Zip *Cleveland OH 44106*

DER Name and Telephone No. *Laura Fernandez 216-844-4828*

DER Name / DER (Area Code & Phone Number)

D: Reason for Test:
☐ Reasonable Susp. ☐ Post-Accident ☐ Return to Duty ☐ Follow-up ☐ Pre-employment
☑ Random (meets the job related and consistent with business necessity requirements)

## STEP 2: TO BE COMPLETED BY EMPLOYEE

I certify that I am about to submit to alcohol testing and that the identifying information provided on this form is true and correct.

Signature of Employee

Date: *04 / 10 / 17*  Month / Day / Year

## STEP 3: TO BE COMPLETED BY ALCOHOL TECHNICIAN

(If the technician conducting the screening test is not the same technician who will be conducting the confirmation test, each technician must complete their own form.) I certify that I have conducted alcohol testing on the above named individual, that I am qualified to operate the testing device(s) identified, and that the results are as recorded.

TECHNICIAN: ☑ BAT ☐ STT  DEVICES: ☐ SALIVA ☐ BREATH* 15-Minute Wait: ☐ Yes ☐ No
SCREENING TEST: (For BREATH DEVICE* write in the space below only if the testing device is not designed to print.)

| Test # | Testing Device Name | Device Serial # OR Lot # & Exp. Date | Activation Time | Reading Time | Result |
|--------|--------------------|--------------------------------------|-----------------|--------------|--------|
|        |                    |                                      |                 |              |        |

CONFIRMATION TEST: Results MUST be affixed to each copy of this form or printed directly onto the form.

REMARKS:

Well at Work
3949 N. Main St
Findlay, OH 45840
P(419) 425-5121
F(419) 425-5738

Alcohol Technician's Company

Alcohol Technician's Name (First, M.I., Last)

Signature of Alcohol Technician

Company Street Address

Company City, State, Zip

Phone Number (Area Code & Number)

Date: *4 / 10 / 17*  Month / Day / Year

## STEP 4: TO BE COMPLETED BY EMPLOYER IF TEST RESULT IS POSITIVE

I certify that I have submitted to the alcohol test, the results of which are accurately recorded on this form. I understand that I must not drive, perform safety-sensitive duties, or operate heavy equipment because the results are positive.

Signature of Employee

Date: ___ Month / Day / Year

6383 (Rev. 2/14)

COPY 1 - ORIGINAL - FORWARD TO THE EMPLOYER

---

ALCOMONITOR CC 001224
04/10/17
TEST NO. 235

SBJ: 300603228.......

SCREENING TEST
G/210L     TIME
XXXX VOID 6 13:25
INSUFF. BREATH

---

ALCOMONITOR CC 001224
04/10/17
TEST NO. 236

SBJ: 300603228.......

SCREENING TEST
G/210L     TIME
.000 AUTO   13:26

---

▼ Affix Or Print Screening Results Here
▼ Affix With Tamper Evident Tape
▼ Affix Or Print Confirmation Results Here
▼ Affix With Tamper Evident Tape
▼ Affix Or Print Additional Test Results Here
▲ Affix With Tamper Evident Tape

GREER 0008

Well at Work
## MRO Analysis Form

| Name: Laura A. Greer | 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 | 01-12-1970 | 419-957-2459 |
|---|---|---|---|
| | | | 216-844-4828 | 216-844-3990 |

| | | Laura Fernandez | 216-844-4828 | 216-844-3990 |
| Employer: University Hospitals Case M. C | | Stephanie Stauffer | 419-425-5121 | 419-425-5738 |
| Collector: Well at work | | | 800-832-3244 | |
| Lab: MEDTOX | | | | |

| | | | COLLPROT |
|---|---|---|---|
| 4/19/2017 | RT | 233458686 | |

Lab Results:

| Substance | Lab Result | Lab Level | Finding |
|---|---|---|---|
| Amp Exp | Negative | 0 | |
| Barbiturates (Urine) 5620 | Negative | 0 | |
| Benzodiazepines 5630 | Positive | 453.0000 | ✓ |
| Cocaine Metabolite 5640 | Negative | 0 | |
| Marijuana Metabolite 5671 | Negative | 0 | |
| Meperidine 5730 | Negative | 0 | |
| Methadone 5680 | Negative | 0 | |
| Opiates (Urine) 5650 | Negative | 0 | |
| Oxycodone - Urine 5655 | Negative | 0 | |
| Phencyclidine 5660 | Negative | 0 | |
| Propoxyphene 5700 | Negative | 0 | |
| TRAMADOL 5720 | Negative | 0 | |

☐ Review Chain of Custody Documents:
____ Acceptable       ____ Unacceptable   (explain:) _____

Employee Notification Phone Log:
Phone _____  Date/Time _____

Response
_latest m series of weekly_
_random Flu tests with_
_same fact pattern_

_____  _____

_____  _____

_____  _____

☐ If unable to notify employee, company's Drug Test Program Coordinator
   notified.  Date: __/__/__        Name: ORNNS  *Alprazolam 0.25 #60*
                                    *Ikava 4/12/2017 #693761*

☐ Notify employee of positive results

☐ Review possible legitimate reasons for a positive result
   Employee's Reason(s) given for Positive Test: _____

   Prescription Medicine(s) being taken: _____

                            ____ Waives       ____ Requests Split

☐ Notify right to request split sample within 72 hours

Final Result: ☐ Positive  ☑ Negative   ☐ Canceled    ☐ Dilute    ☐ Refused-Adulterated
                                                                  ☐ Refused-Substituted

_Smatuszak_ (signature)                Verified On: 4/24/2017
Stephanie A. Matuszak, MD
Medical Review Officer

☐ Notify employer of results   Contact: _____  Phone: _____  Date: _____  Time: _____

Comments:

Page 1

GREER 000800

Page:01 of

14/24/2017 97:33:38                  Medtox Laboratories  -  AC:FROJELLAT  BT:54397801

Jennifer A. Collins, Ph.D.

MEDTOX LABORATORIES INC:
402 WEST COUNTY ROAD D
ST PAUL, MN 55112
651-636-7466

Account #: 47469
EMPLOYER:
MRO: STEPHANIE MATUSZAK, MD
WELL AT WORK
3949 N MAIN ST STE D
FINDLAY, OH 45840

General Information
47469

**LABORATORY REPORT**

Accession #:  GS600535
Specimen I.D.:  Z33458686
Donor Name/ID:  GREER,LAURA
SSN:  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
Age:      Sex:
Reason for test: Random

| | Date Collected | Date Received | Date Reported |
|---|---|---|---|
| | 04/19/2017 10:12 | 04/20/2017 | 04/24/2017 7:31AM |

| TEST(S) REQUESTED | RESULTS | UNITS | THERAPEUTIC RANGE |
|---|---|---|---|
| DRUGS OF ABUSE SCREEN 96042 | | | |
| DRUG TEST RESULT | POSITIVE | ng/ml | |
| AMPHETAMINES | NEGATIVE | ng/ml | |
| BARBITURATES | NEGATIVE | ng/ml | |
| BENZODIAZEPINES | +++POSITIVE+++ | ng/ml | |
| COCAINE METABOLITE | NEGATIVE | ng/ml | |
| OPIATES | NEGATIVE | ng/ml | |
| OXYCODONE | NEGATIVE | ng/ml | |
| PHENCYCLIDINE (PCP) | NEGATIVE | ng/ml | |
| MARIJUANA METABOLITE (THC) | NEGATIVE | ng/ml | |
| METHADONE | NEGATIVE | ng/ml | |
| PROPOXYPHENE | NEGATIVE | ng/ml | |
| TRAMADOL | NEGATIVE | ng/ml | |
| MEPERIDINE | 21.3 | ng/dl | > = 20 |
| CREATININE | NEGATIVE | mcg/ml | < 200 |
| NITRITES | | | |

THIS SPECIMEN WAS SCREENED BY IMMUNOASSAY. ANY POSITIVE RESULT
HAS BEEN CONFIRMED BY CHROMATOGRAPHY WITH MASS SPECTROMETRY.
THE FOLLOWING THRESHOLD CONCENTRATIONS WERE USED FOR THIS ANALYSIS

| DRUG | SCREENING THRESHOLD | CONFIRMATION THRESHOLD |
|---|---|---|
| AMPHETAMINES | 1000 NG/ML | |
| AMPHETAMINE | | 500 NG/ML |
| METHAMPHETAMINE | | 500 NG/ML |
| MDMA | | 500 NG/ML |
| MDA | | 500 NG/ML |
| MDEA | | 200 NG/ML |
| BARBITURATES | 300 NG/ML | 100 NG/ML |
| BENZODIAZEPINES | 300 NG/ML | |
| DIAZEPAM, DESMETHYLDIAZEPAM | | |
| OXAZEPAM, TEMAZEPAM | | |
| ALPRAZOLAM, ALPHA-OH-ALPRAZOLAM | | |
| LORAZEPAM, ALPHA-HYDROXYTRIAZOLAM | | |
| HYDROXYETHYLFLURAZEPAM, | | |
| ALPHA-HYDROXYMIDAZOLAM, 7-AMINOCLONAZEPAM | | 150 NG/ML |
| COCAINE METABOLITE | 300 NG/ML | |
| OPIATES | 300 NG/ML | |
| CODEINE | | 300 NG/ML |
| MORPHINE | | 300 NG/ML |
| HYDROCODONE | | 300 NG/ML |
| HYDROMORPHONE | | 100 NG/ML |
| OXYCODONE | 100 NG/ML | |

REPORT CONTINUED ON NEXT FORM

GREER 0008

14/24/2017  07:33:39          Medtox Laboratories  -  AC:FR03ELLAT  BT: 64397001

CONTINUED REPORT                                    Jennifer A. Collins, Ph.D.
MEDTOX LABORATORIES INC.
    402 WEST COUNTY ROAD D
ST PAUL, MN 55112
651-636-7466
                              LABORATORY REPORT

Account #: 47469                  Accession #:  05600535
EMPLOYER:                         Specimen I.D.: 233450686
MRO: STEPHANIE MATUSZAK, MD       Donor Name/ID: GREER,LAURA
WELL AT WORK                      SSN:           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
3949 N MAIN ST STE D              Age:      Sex:
FINDLAY, OH 45840                 Reason for test: Random

General Information                Date         Date         Date
47469                            Collected     Received     Reported
                                04/19/2017    04/20/2017   04/24/2017
                                   10:12                    7:31AM

    TEST(S) REQUESTED               RESULTS      UNITS THERAPEUTIC RANGE
  ------------------              ---------     -------------------------

                                25 NG/ML              25 NG/ML
PHENCYCLIDINE                    50 NG/ML              15 NG/ML
MARIJUANA METABOLITE            300 NG/ML             300 NG/ML
METHADONE                       300 NG/ML             300 NG/ML
PROPOXYPHENE                    200 NG/ML             100 NG/ML
TRAMADOL                        200 NG/ML             100 NG/ML
MEPERIDINE

ALTERNATIVE EXPLANATIONS SHOULD BE EXPLORED FOR POSITIVE RESULTS.
THIS PANEL INCLUDES TESTING FOR SPECIMEN VALIDITY.

**SOME COMPONENTS OF THE TEST PANEL WERE DEVELOPED AND PERFORMANCE
CHARACTERISTICS DETERMINED BY LABCORP. THEY HAVE NOT BEEN CLEARED
OR APPROVED BY THE FOOD AND DRUG ADMINISTRATION.


Certified by: GREEN,LEAH
EXPANDED BENZODIAZEPINE CONFIRM          389           ng/ml
  ALPRAZOLAM                             453           ng/ml
  ALPHA-HYDROXYALPRAZOLAM


QUANTITATIVE BENZODIAZEPINE CONFIRMATION INCLUDES DIAZEPAM,
DESMETHYLDIAZEPAM, OXAZEPAM, TEMAZEPAM, ALPRAZOLAM,
ALPHA-HYDROXYALPRAZOLAM, HYDROXYETHYLFLURAZEPAM, LORAZEPAM,
ALPHA-HYDROXYTRIAZOLAM, ALPHA-HYDROXYMIDAZOLAM, 7-AMINOCLONAZEPAM
AT A THRESHOLD OF 100 ng/mL.
ANALYSIS PERFORMED BY LIQUID CHROMATOGRAPHY/TANDEM MASS
SPECTROMETRY (LC/MS/MS).


                        ** FINAL REPORT **
            Collected at 4194255121  MEDTOX collection site #607
            WELL AT WORK - FINDLAY
            FINDLAY, OH

GREER 00081



# Alcohol Testing Form (Non-DOT)

*(The instructions for completing this form are on the back of Copy 3)*

**STEP 1: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

A: Employee Name (Print) (First, M.I., Last): Laura Greer

B: SSN or Employee ID No.: 300-100-3228

C: Employer Name: University Hospitals

Street: MCCO 10th Floor 11100 Euclid Av / Mail Stop 10035B

City, State, Zip: Cleveland, OH 44106

DER Name and Telephone No.: Laura Fernandez

DER Name — DER (Area Code & Phone Number)

D: Reason for Test: ☐ Reasonable Susp. ☐ Post-Accident ☐ Return to Duty ☐ Follow-up ☐ Pre-employment ☐ Reasonable Susp. ☒ Random (meets the job related and consistent with business necessity requirements)

**STEP 2: TO BE COMPLETED BY EMPLOYEE**

I certify that I am about to submit to alcohol testing and that the identifying information provided on the form is true and correct.

Signature of Employee: [signature] Date: Month / Day / Year: 04 / 19 / 2017

**STEP 3: TO BE COMPLETED BY ALCOHOL TECHNICIAN**

(If the technician conducting the screening test is not the same technician who will be conducting the confirmation test, each technician must complete their own form.) I certify that I have conducted alcohol testing on the above named individual, that I am qualified to operate the testing device(s) identified, and that the results are as recorded.

TECHNICIAN: ☒ BAT ☐ STT DEVICE: ☐ SALIVA ☒ BREATH* 15-Minute Wait: ☐ Yes ☐ No

SCREENING TEST: (For BREATH DEVICE* write in the space below only if the testing device is not designed to print.)

| Test # | Testing Device Name | Device Serial # OR Lot # & Exp. Date | Activation Time | Reading Time | Result |
|---|---|---|---|---|---|
| | | | | | |

CONFIRMATION TEST: *Results MUST be affixed to each copy of this form or printed directly onto the form.*

REMARKS:

Well at Work
3949 N. Main St
Findlay, OH 45840
P(419) 425-5121
F(419) 425-5738

Alcohol Technician's Company: [signature] — Company Street Address

(PRINT) Alcohol Technician's Name (First, M.I., Last): Stephanie [illegible] — Company City, State, Zip

Phone Number (Area Code & Number)

Signature of Alcohol Technician: [signature] Date: Month / Day / Year: 4/19/17

**STEP 4: TO BE COMPLETED BY EMPLOYEE IF TEST RESULT IS POSITIVE**

I certify that I have submitted to the alcohol test, the results of which are accurately recorded on this form. I understand that I must not drive, perform safety-sensitive duties, or operate heavy equipment because the results are positive.

Signature of Employee — Date: Month / Day / Year

6363 (Rev. 2/14)

COPY 1 - ORIGINAL - FORWARD TO THE EMPLOYER

▼ Affix Or Print Screening Results Here

ALCOMONITOR CC 001224
04/19/17
TEST NO. 265
SBJ: 300603228.......
SCREENING TEST
0/210L TIME
.000 AUTO 10:14

▼ Affix With Tamper Evident Tape

▼ Affix Or Print Confirmation Results Here

▼ Affix With Tamper Evident Tape

▼ Affix Or Print Additional Test Results Here

SCANNED

▲ Affix With Tamper Evident Tape

GREER 0008

og nene
8/28/17

August 16, 2017

University Hospitals Case M.C
Attn: Laura Fernandez
MCCO 6th Floor, 11100 Euclid A
Mail Stop 6035B
Cleveland, OH 44106

  RE: Laura Greer
  SSN 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

Dear Laura,

This letter is in regards to the drug screen collected by Well at Work on August 4, 2017 from Laura Greer.  As the Medical Review Officer for this test, a legitimate medical prescription was found to be in use containing the compounds found in the urine specimen.  This prescription has been confirmed.  Because there is a legitimate medical reason for the presence of this compound, this drug test is declared negative.  However, I would like you to be aware that the medication may have side effects that may represent a Safety-Sensitive issue. The employee's personal physician may be a better judge of how the individual will react to the medications.

Please feel free to contact me if you have any further questions or concerns.

Sincerely,

Lawrence Kale, MD, MRO
Well at Work
LK/sss

3849 North Main Street, Suite D • Findlay, Ohio 45840 • 419-425-5121 • FAX 419-425-5738

DEFENDANT'S
EXHIBIT
15
5/23/18
COLLINS REPORTING

GREER 00

Page:01 of

10/12/2017  14:42:02

Medtox Laboratories  -  AG:FRO4ELLAT  BT: 54507009

Jennifer A. Collins, Ph.D.

MEDTOX LABORATORIES INC.
402 WEST COUNTY ROAD D
ST PAUL, MN 55112
651-636-7466

**LABORATORY REPORT**

Accession #:  G6367642
Specimen I.D.:  R33926002
Donor Name/ID:  GREER, LAURA
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

Account #: 47469
EMPLOYER:
LAWRENCE A KALE, MD
WELL AT WORK
3949 N MAIN ST STE D
FINDLAY, OH 45840

SSN:
Age:            Sex:
Reason for test: Random

General Information
47469

| | Date Collected | Date Received | Date Reported |
|---|---|---|---|
| | 08/04/2017 10:58 | 08/05/2017 | 08/12/2017 2:39PM |

| TEST(S) REQUESTED | RESULTS | UNITS | THERAPEUTIC RANGE |
|---|---|---|---|
| DRUGS OF ABUSE SCREEN 96042 | | | |
| DRUG TEST RESULT | POSITIVE | ng/ml | |
| AMPHETAMINES | NEGATIVE | ng/ml | |
| BARBITURATES | NEGATIVE | ng/ml | |
| BENZODIAZEPINES | +++POSITIVE+++ | ng/ml | |
| COCAINE METABOLITE | NEGATIVE | ng/ml | |
| OPIATES | NEGATIVE | ng/ml | |
| OXYCODONE | NEGATIVE | ng/ml | |
| PHENCYCLIDINE (PCP) | NEGATIVE | ng/ml | |
| MARIJUANA METABOLITE (THC) | NEGATIVE | ng/ml | |
| METHADONE | NEGATIVE | ng/ml | |
| PROPOXYPHENE | NEGATIVE | ng/ml | |
| TRAMADOL | NEGATIVE | mg/dl | >= 20 |
| MEPERIDINE | 63.7 | mcg/ml | < 200 |
| CREATININE | | | |
| NITRITES | NEGATIVE | | |

THIS SPECIMEN WAS SCREENED BY IMMUNOASSAY. ANY POSITIVE RESULT
HAS BEEN CONFIRMED BY CHROMATOGRAPHY WITH MASS SPECTROMETRY.
THE FOLLOWING THRESHOLD CONCENTRATIONS WERE USED FOR THIS ANALYSIS

| DRUG | SCREENING THRESHOLD | CONFIRMATION THRESHOLD |
|---|---|---|
| AMPHETAMINES | 1000 NG/ML | 500 NG/ML |
| AMPHETAMINE | | 500 NG/ML |
| METHAMPHETAMINE | | 500 NG/ML |
| MDMA | | 500 NG/ML |
| MDA | | 200 NG/ML |
| MDEA | | 100 NG/ML |
| BARBITURATES | 300 NG/ML | |
| BENZODIAZEPINES | 300 NG/ML | |
| DIAZEPAM, DESMETHYLDIAZEPAM | | |
| OXAZEPAM, TEMAZEPAM | | |
| ALPRAZOLAM, ALPHA-OH-ALPRAZOLAM | | |
| LORAZEPAM, ALPHA-HYDROXYTRIAZOLAM | | |
| HYDROXYETHYLFLURAZEPAM, 7-AMINOCLONAZEPAM | | 150 NG/ML |
| ALPHA-HYDROXYMIDAZOLAM, | | |
| COCAINE METABOLITE | 300 NG/ML | 300 NG/ML |
| OPIATES | 300 NG/ML | 300 NG/ML |
| CODEINE | | 300 NG/ML |
| MORPHINE | | 300 NG/ML |
| HYDROCODONE | | 300 NG/ML |
| HYDROMORPHONE | | 100 NG/ML |
| OXYCODONE | 100 NG/ML | |

REPORT CONTINUED ON NEXT FORM

Called results _____

Entered _____

Faxed/Mailed _____

GREER 000

Page:02 of

Medtox Laboratories - AG:FAXMELLAT BT: 64587089

08/12/2017 14:42:02

CONTINUED REPORT
MEDTOX LABORATORIES INC.
  402 WEST COUNTY ROAD D
  ST PAUL, MN 55112
  651-636-7466

Jennifer A. Collins, Ph.D.

LABORATORY REPORT

Account #: 47469
EMPLOYER:
LAWRENCE A KALE, MD
WELL AT WORK
3949 N MAIN ST STE D
FINDLAY, OH 45840

Accession #:  G6367642
Specimen I.D.: Z33926002
Donor Name/ID: GREER,LAURA
               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
SSN:
Age:      Sex:
Reason for test: Random

General Information
47469

| Date Collected | Date Received | Date Reported |
|---|---|---|
| 08/04/2017 10:58 | 08/05/2017 | 08/12/2017 2:39PM |

| TEST(S) REQUESTED | RESULTS | UNITS THERAPEUTIC RANGE |
|---|---|---|
| | | 25 NG/ML |
| PHENCYCLIDINE | 25 NG/ML | 15 NG/ML |
| MARIJUANA METABOLITE | 50 NG/ML | 300 NG/ML |
| METHADONE | 300 NG/ML | 300 NG/ML |
| PROPOXYPHENE | 300 NG/ML | 100 NG/ML |
| TRAMADOL | 200 NG/ML | 100 NG/ML |
| MEPERIDINE | 200 NG/ML | |

ALTERNATIVE EXPLANATIONS SHOULD BE EXPLORED FOR POSITIVE RESULTS.
THIS PANEL INCLUDES TESTING FOR SPECIMEN VALIDITY.

**SOME COMPONENTS OF THE TEST PANEL WERE DEVELOPED AND PERFORMANCE
CHARACTERISTICS DETERMINED BY LABCORP. THEY HAVE NOT BEEN CLEARED
OR APPROVED BY THE FOOD AND DRUG ADMINISTRATION.

Certified by: PAGEL,BECKY
EXPANDED BENZODIAZEPINE CONFIRM                     ng/ml
  ALPRAZOLAM                          1140          ng/ml
  ALPHA-HYDROXYALPRAZOLAM             2192

QUANTITATIVE BENZODIAZEPINE CONFIRMATION INCLUDES DIAZEPAM,
DESMETHYLDIAZEPAM, OXAZEPAM, TEMAZEPAM, ALPRAZOLAM,
ALPHA-HYDROXYALPRAZOLAM, HYDROXYETHYLFLURAZEPAM, LORAZEPAM,
ALPHA-HYDROXYTRIAZOLAM, ALPHA-HYDROXYMIDAZOLAM, 7-AMINOCLONAZEPAM
AT A THRESHOLD OF 100 ng/mL.
ANALYSIS PERFORMED BY LIQUID CHROMATOGRAPHY/TANDEM MASS
SPECTROMETRY (LC/MS/MS).

** FINAL REPORT **

Collected at 4194255121 MEDTOX collection site #607
WELL AT WORK - FINDLAY
FINDLAY, OH

GREER 0006

Well at Work
## MRO Analysis Form

| | | | | |
|---|---|---|---|---|
| Laura A. Greer | 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 | 01-12-1970 | 419-957-2459 | |
| Employer: University Hospitals Case M. C | | Mary ARmao | 216-844-4828 | 216-844-3990 |
| Collector: Well At Work | | Amber Young | 419-425-5121 | 419-425-5738 |
| Lab: MEDTOX | | | 800-832-3244 | |
| 8/4/2017 | RT | Z33926002 | | COLLPROT |

Lab Results:

| Substance | Lab Result | Lab Level | Finding |
|---|---|---|---|
| Amp Exp | Negative | 0 | |
| Barbiturates (Urine)5620 | Negative | 0 | |
| Benzodiazepines 5630 | Positive | 2,182.0000 | |
| Cocaine Metabolite 5640 | Negative | 0 | |
| Marijuana Metabolite 5671 | Negative | 0 | |
| Meperidine 5730 | Negative | 0 | |
| Methadone 5680 | Negative | 0 | |
| Opiates (Urine) 5650 | Negative | 0 | |
| Oxycodone - Urine 5653 | Negative | 0 | |
| Phencyclidine 5660 | Negative | 0 | |
| Propoxyphene 5700 | Negative | 0 | |
| TRAMADOL 5720 | | | |

☐ Review Chain of Custody Documents:
___ Acceptable ___ Unacceptable (explain:) _____

Employee Notification Phone Log:
Phone _____ Date/Time _____ Response _____

☐ If unable to notify employee, company's Drug Test Program Coordinator
notified. Date: __/__/__ Name: _____

☐ Notify employee of positive results

☐ Review possible legitimate reasons for a positive result     *DRRS @ alprazolam*
Employee's Reason(s) given for Positive Test:
Prescription Medicine(s) being taken: _____
___ Waives ___ Requests Split

☐ Notify right to request split sample within 72 hours

Final Result: ☐ Positive  ☑ Negative   ☐ Canceled   ☐ Dilute   ☐ Refused-Adulterated   ☐ Refused-Substituted

LAWRENCE KALE, MD     Verified On: 8/15/17
Medical Review Officer

☐ Notify employer of results      Contact: *Mary*   Phone: _____   Date: 8/15/17   Time: _____

Comments:

Page 1

Printed on: 08/14/2017  1:50:01AM      VAREPORTS\SCREENING\MRO ANALYSIS FORM_<b>v7.32+K0187

GREER 0006

Page:01 of

08/14/2017 14:13:11

Medtox Laboratories - AC:FROMELLAT BT:64589804

Jannifer A. Collins, Ph.D.

MEDTOX LABORATORIES INC.
402 WEST COUNTY ROAD D
ST PAUL, MN 55112
651-636-7466

**LABORATORY REPORT**

Accession #: G6382185
Specimen I.D.: 233925821
Donor Name/ID: GREER, LAURA
SSN:                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

Account #: 47469
EMPLOYER:
LAWRENCE A KALE, MD
WELL AT WORK
3949 N MAIN ST STE D
FINDLAY, OH 45840

Age:        Sex:
Reason for test: Random

|  | Date Collected | Date Received | Date Reported |
|---|---|---|---|
|  | 08/07/2017 11:18 | 08/08/2017 | 08/14/2017 2:10PM |

General Information

| TEST(S) REQUESTED | RESULTS | UNITS | THERAPEUTIC RANGE |
|---|---|---|---|
| DRUGS OF ABUSE SCREEN 96042 |  |  |  |
| DRUG TEST RESULT | POSITIVE | ng/ml |  |
| AMPHETAMINES | NEGATIVE | ng/ml |  |
| BARBITURATES | NEGATIVE | ng/ml |  |
| BENZODIAZEPINES | +++POSITIVE+++ | ng/ml |  |
| COCAINE METABOLITE | NEGATIVE | ng/ml |  |
| OPIATES | NEGATIVE | ng/ml |  |
| OXYCODONE | NEGATIVE | ng/ml |  |
| PHENCYCLIDINE (PCP) | NEGATIVE | ng/ml |  |
| MARIJUANA METABOLITE (THC) | NEGATIVE | ng/ml |  |
| METHADONE | NEGATIVE | ng/ml |  |
| PROPOXYPHENE | NEGATIVE | ng/ml |  |
| TRAMADOL | NEGATIVE | mg/dl | > = 20 |
| MEPERIDINE | 133.2 | mcg/ml | < 200 |
| CREATININE | NEGATIVE |  |  |
| NITRITES |  |  |  |

THIS SPECIMEN WAS SCREENED BY IMMUNOASSAY. ANY POSITIVE RESULT
HAS BEEN CONFIRMED BY CHROMATOGRAPHY WITH MASS SPECTROMETRY.
THE FOLLOWING THRESHOLD CONCENTRATIONS WERE USED FOR THIS ANALYSIS

| DRUG | SCREENING THRESHOLD | CONFIRMATION THRESHOLD |
|---|---|---|
| AMPHETAMINES | 1000 NG/ML |  |
| AMPHETAMINE |  | 500 NG/ML |
| METHAMPHETAMINE |  | 500 NG/ML |
| MDMA |  | 500 NG/ML |
| MDA |  | 500 NG/ML |
| MDEA |  | 200 NG/ML |
| BARBITURATES | 300 NG/ML | 100 NG/ML |
| BENZODIAZEPINES | 300 NG/ML |  |
| DIAZEPAM, DESMETHYLDIAZEPAM |  |  |
| OXAZEPAM, TEMAZEPAM |  |  |
| ALPRAZOLAM, ALPHA-OH-ALPRAZOLAM |  |  |
| LORAZEPAM, ALPHA-HYDROXYTRIAZOLAM |  |  |
| HYDROXYETHYLFLURAZEPAM, |  |  |
| ALPHA-HYDROXYMIDAZOLAM, 7-AMINOCLONAZEPAM |  | 150 NG/ML |
| COCAINE METABOLITE | 300 NG/ML |  |
| OPIATES | 300 NG/ML | 300 NG/ML |
| CODEINE |  | 300 NG/ML |
| MORPHINE |  | 300 NG/ML |
| HYDROCODONE |  | 300 NG/ML |
| HYDROMORPHONE |  | 100 NG/ML |
| OXYCODONE | 100 NG/ML |  |

REPORT CONTINUED ON NEXT FORM

GREER 0000

08/14/2017  14:13:12

Medtox Laboratories  -  AG:FRO3ELLAT  BT: 64589884

Page:82 of

Jennifer A. Collins, Ph.D.

CONTINUED REPORT
MEDTOX LABORATORIES INC.
402 WEST COUNTY ROAD D
ST PAUL, MN 55112
651-636-7466

LABORATORY REPORT

Account #: 47469
EMPLOYER:
LAWRENCE A KALE, MD
WELL AT WORK
3949 N MAIN ST STE D
FINDLAY, OH 45840

Accession #:  G6382185
Specimen I.D.: 233925821
Donor Name/ID:  GREER, LAURA
                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
SSN:
Age:      Sex:
Reason for test: Random

General Information

| Date Collected | Date Received | Date Reported |
|---|---|---|
| 08/07/2017 11:18 | 08/08/2017 | 08/14/2017 2:10PM |

| TEST(S) REQUESTED | RESULTS | UNITS | THERAPEUTIC RANGE |
|---|---|---|---|
| PHENCYCLIDINE | 25 NG/ML | 25 NG/ML | |
| MARIJUANA METABOLITE | 50 NG/ML | 15 NG/ML | |
| METHADONE | 300 NG/ML | 300 NG/ML | |
| PROPOXYPHENE | 300 NG/ML | 300 NG/ML | |
| TRAMADOL | 200 NG/ML | 100 NG/ML | |
| MEPERIDINE | 200 NG/ML | 100 NG/ML | |

ALTERNATIVE EXPLANATIONS SHOULD BE EXPLORED FOR POSITIVE RESULTS.
THIS PANEL INCLUDES TESTING FOR SPECIMEN VALIDITY.

**SOME COMPONENTS OF THE TEST PANEL WERE DEVELOPED AND PERFORMANCE
CHARACTERISTICS DETERMINED BY LABCORP. THEY HAVE NOT BEEN CLEARED
OR APPROVED BY THE FOOD AND DRUG ADMINISTRATION.

Certified by: MARZITELLI,SUSULA
EXPANDED BENZODIAZEPINE CONFIRM        1621              ng/ml
ALPRAZOLAM

QUANTITATIVE BENZODIAZEPINE CONFIRMATION INCLUDES DIAZEPAM,
DESMETHYLDIAZEPAM, OXAZEPAM, TEMAZEPAM, ALPRAZOLAM,
ALPHA-HYDROXYALPRAZOLAM, HYDROXYETHYLFLURAZEPAM, LORAZEPAM,
ALPHA-HYDROXYTRIAZOLAM, ALPHA-HYDROXYMIDAZOLAM, 7-AMINOCLONAZEPAM
AT A THRESHOLD OF 100 ng/mL.
ANALYSIS PERFORMED BY LIQUID CHROMATOGRAPHY/TANDEM MASS
SPECTROMETRY (LC/MS/MS).

** FINAL REPORT **

Collection Site Phone Number NOT PROVIDED

GREER 000

Well at Work
## MRO Analysis Form

| | | | Phone | |
|---|---|---|---|---|
| | 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 | 01-12-1970 | 419-957-2459 | |
| Laura A. Greer | | | | |

| | | | Phone | | Fax |
|---|---|---|---|---|---|
| Employer: | University Hospitals Case M. C | Mary ARmao | 216-844-4828 | | 216-844-3990 |
| Collector: | Well At Work | Amber Young | 419-425-5121 | | 419-425-5738 |
| Lab: | MEDTOX | | 800-832-3244 | | |

| | | | | COLLPROT |
|---|---|---|---|---|
| 8/4/2017 | RT | 233926002 | | |

| | Substance | Lab Result | Lab Level | Finding |
|---|---|---|---|---|
| **Lab Results:** | Amp Exp | Negative | 0 | _____ |
| | Barbiturates (Urine)5620 | Negative | 0 | _____ |
| | Benzodiazepines 5630 | Positive | 2,182.0000 | _____ |
| | Cocaine Metabolite 5640 | Negative | 0 | _____ |
| | Marijuana Metabolite 5671 | Negative | 0 | _____ |
| | Meperidine 5730 | Negative | 0 | _____ |
| | Methadone 5680 | Negative | 0 | _____ |
| | Opiates (Urine) 5650 | Negative | 0 | _____ |
| | Oxycodone - Urine 5653 | Negative | 0 | _____ |
| | Phencyclidine 5660 | Negative | 0 | _____ |
| | Propoxyphene 5700 | Negative | 0 | _____ |
| | TRAMADOL 5720 | Negative | 0 | _____ |

☐ Review Chain of Custody Documents:
_____ Acceptable _____ Unacceptable  (explain:) _____

Employee Notification Phone Log:
Phone                Date/Time                Response

_____        _____            _____
_____        _____            _____
_____        _____            _____

☐ If unable to notify employee, company's Drug Test Program Coordinator

    notified. Date: __/__/__          Name: _____

☐ Notify employee of positive results

☐ Review possible legitimate reasons for a positive result     OANR8 P
    Employee's Reason(s) given for Positive Test: _____

    Prescription Medicine(s) being taken: _____
                                          _____ Waives     _____ Requests Split

☐ Notify right to request split sample within 72 hours

Final Result:  ☐ Positive   ☑ Negative   ☐ Canceled   ☐ Dilute   ☐ Refused-Adulterated
                                                                  ☐ Refused-Substituted

_Lawrence Kale_                    Verified On:  KALE

LAWRENCE KALE, MD
Medical Review Officer        Contact: Mary    Phone: _____  Date 8/15/17  Time: _____

☐ Notify employer of results

Comments:

Page 1





3949 N. Main St. Suite D
Findlay, OH 45840
Phone: 419-425-5121
Fax: 419-425-5738

Date: 7/25/2016

Re: MRO Verification for Donor:  Laura Greer  SSN: 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

Information for EAP / SAP regarding Positive Drug Screen

Dear SAP Provider:

A Reasonable Suspicion drug screen was collected at our office for Laura Greer on 7-12-2016, and I performed the MRO verification for this test. The drug levels found on the test are attached.

When Ms. Greer came to our office for collection on 7-12-2016, she appeared obviously sedated, slurring her words, sleepy, ataxic, bending forward, leaning on the walls to support herself walking, and vomited in the office while speaking to the receptionist. When I spoke to her on the phone at 12:21 pm on 7-20-2016, she sounded similarly sleepy, slurring her words and repeating herself. She reported at that time that on July 10th she had a 13 hour migraine not responsive to 2 Imitrex tablets, and as she had no oxycodone left from a December 2015 prescription, she took one belonging to her sister-in-law. She stated she had taken some cough syrup and her usual prescription of sleeping medication. Then she states she was notified on July 12th that she was on administrative leave due to slurring her speech. She states she was very upset, so upset that she dug through her old travel medications and found a pill bottle into which she had put some old medications for travel, including a few old leftover alprazolam tablets, and took one because she was so upset. She states she was then notified that she had to present for a drug screen. We were able to establish the presence of several prescriptions for alprazolam 0.5 and 0.25 mg from late 2013, as late as 11/3/2013, with a weaning dosage and quantity over several months. Ms. Greer presented to the office again in person on 7-25-2016 with a note from an ENT physician stating that she has a "mild weakness of the right vocal cord due to superior laryngeal nerve palsy. This would be an effect of the previous thyroid surgery on the right side. This will cause a weak or more breathy voice." The note does not mention slurring. On presentation today, the donor appeared alert and oriented. She did have a slightly breathy or hoarse and deliberate speech pattern, but was not slurring her words, ambulated without difficulty, and did not appear to be confused. She did repeat herself a few times, but appeared to be in an attempt to make a point about the facts of her case. She produced an old pill bottle from late 2013 with several old-appearing tablets in it, including what resembles 2 different doses of alprazolam.

I explained to the donor that I need to report the oxycodone as Positive, because she took another person's medication. The alprazolam can be reported as Negative due to the identified legitimate prescription, although it is



GREER 0006?





3949 N. Main St. Suite D
Findlay, OH 45840
Phone: 419-425-5121
Fax: 419-425-5738

Date: 7/25/2016

Re: Laura Greer
SSN: 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

DER: Laura Fernandez
Employer: University Hospitals Case Medical Center

This letter is in regard to the Reasonable Suspicion drug screen collected on 7/12/2016 from Laura Greer. It is my unfortunate duty to report that the test was "Positive" for Oxycodone. The donor had a prescription for oxycodone in the past, but admits that she was out of this medication, had acute pain on the day prior to her drug screen and took an oxycodone belonging to her sister-in-law. The test is "Negative" for another scheduled and potentially sedating medication, for which the donor can produce a more remote prescription.

As the Medical Review Officer for this test, I was not able to confirm the existence of a legitimate medical prescription in use for the chemical detected in the specimen based upon the donor's verbal report of using medication prescribed for someone else. The donor has been successfully contacted for notification of the results and discussion of the implications. For urine drug screens, the donor was offered an opportunity to request retesting by an alternate lab of the "split specimen" collected at the same time as the original drug test, and the donor waives this reconfirmation test.

Please keep this letter and a copy of the chain of custody record in a confidential file, separate from your employee's personnel file, to verify that the collection procedure was proper, and that your employee's specimen was secured throughout the testing and reporting process.

Please feel free to contact me if you have any further questions or concerns.

Sincerely,

Stephanie A. Matuszak, MD, MRO

Page:92 of

08/27/2017  10:05:58       Medtox  Laboratories - RG:FROMELLAT  BT:64522BR3

CONTINUED REPORT                                    Jennifer A. Collins, Ph.D.                COPY
MEDTOX LABORATORIES INC.
  402 WEST COUNTY ROAD D
  ST PAUL, MN 55112
  651-636-7466
                                    LABORATORY REPORT

Account #: 47469                    Accession #:  G6479342
EMPLOYER:                           Specimen I.D.: 234537225
LAWRENCE A KALE, MD                 Donor Name/ID: GREER, LAURA
WELL AT WORK                        SSN:                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
3949 N MAIN ST STE D                Age:   Sex:
FINDLAY, OH 45840                   Reason for test: Random

                                        Date      Date        Date
General Information                    Collected  Received    Reported
                                      08/21/2017 08/22/2017  08/27/2017
                                        10:38                  10:03AM

                                   RESULTS         UNITS THERAPEUTIC RANGE

   TEST(S) REQUESTED

PHENCYCLIDINE            25 NG/ML               25 NG/ML
MARIJUANA METABOLITE     50 NG/ML               15 NG/ML
METHADONE               300 NG/ML              300 NG/ML
PROPOXYPHENE            300 NG/ML              300 NG/ML
TRAMADOL                200 NG/ML              100 NG/ML
MEPERIDINE              200 NG/ML              100 NG/ML

ALTERNATIVE EXPLANATIONS SHOULD BE EXPLORED FOR POSITIVE RESULTS.
THIS PANEL INCLUDES TESTING FOR SPECIMEN VALIDITY.

**SOME COMPONENTS OF THIS TEST PANEL WERE DEVELOPED AND PERFORMANCE
CHARACTERISTICS DETERMINED BY LABCORP. THEY HAVE NOT BEEN CLEARED
OR APPROVED BY THE FOOD AND DRUG ADMINISTRATION.

Certified by: FALKOFSKE,JENNIFER
EXPANDED BENZODIAZEPINE CONFIRM
   ALPRAZOLAM                       2074             ng/ml
   ALPHA-HYDROXYALPRAZOLAM          3588             ng/ml

QUANTITATIVE BENZODIAZEPINE CONFIRMATION INCLUDES DIAZEPAM,
DESMETHYLDIAZEPAM, OXAZEPAM, TEMAZEPAM, ALPRAZOLAM,
ALPHA-HYDROXYALPRAZOLAM, HYDROXYETHYLFLURAZEPAM, LORAZEPAM,
ALPHA-HYDROXYTRIAZOLAM, ALPHA-HYDROXYMIDAZOLAM, 7-AMINOCLONAZEPAM
AT A THRESHOLD OF 100 ng/mL.
ANALYSIS PERFORMED BY LIQUID CHROMATOGRAPHY/TANDEM MASS
SPECTROMETRY (LC/MS/MS).

           ** FINAL REPORT **

    Collected at 4194255121  MEDTOX collection site 8607
    WELL AT WORK - FINDLAY
    FINDLAY, OH

GREER 000

Page:01 of

10/27/2017  10:05:49        Medtox  oratories - AG:FROMELLAT  BT: 64522883

Jennifer A. Collins, Ph.D.

**COPY**

MEDTOX LABORATORIES INC.
402 WEST COUNTY ROAD D
ST PAUL, MN 85112
651-636-7466

### LABORATORY REPORT

Account #: 47469                     Accession #:  G6479342
EMPLOYER:                            Specimen I.D.:  834537225
LAWRENCE A KALE, MD                 Donor Name/ID:  GREER,LAURA
WELL AT WORK                        SSN:            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
3949 N MAIN ST STE D                Age:    Sex:
FINDLAY, OH 45840                   Reason for test: Random

General Information

|  | Date Collected | Date Received | Date Reported |
|---|---|---|---|
|  | 08/21/2017 10:38 | 08/22/2017 | 08/27/2017 10:03AM |

| TEST(S) REQUESTED | RESULTS | UNITS | THERAPEUTIC RANGE |
|---|---|---|---|
| DRUGS OF ABUSE SCREEN 96042 | POSITIVE |  |  |
| DRUG TEST RESULT | NEGATIVE | ng/ml |  |
| AMPHETAMINES | NEGATIVE | ng/ml |  |
| BARBITURATES | +++POSITIVE+++ | ng/ml |  |
| BENZODIAZEPINES | NEGATIVE | ng/ml |  |
| COCAINE METABOLITE | NEGATIVE | ng/ml |  |
| OPIATES | NEGATIVE | ng/ml |  |
| OXYCODONE | NEGATIVE | ng/ml |  |
| PHENCYCLIDINE (PCP) | NEGATIVE | ng/ml |  |
| MARIJUANA METABOLITE (THC) | NEGATIVE | ng/ml |  |
| METHADONE | NEGATIVE | ng/ml |  |
| PROPOXYPHENE | NEGATIVE | ng/ml |  |
| TRAMADOL | NEGATIVE | ng/ml |  |
| MEPERIDINE | 82.8 | ng/dl | > = 20 |
| CREATININE | NEGATIVE | mcg/ml | < 200 |
| NITRITES |  |  |  |

THIS SPECIMEN WAS SCREENED BY IMMUNOASSAY. ANY POSITIVE RESULT
HAS BEEN CONFIRMED BY CHROMATOGRAPHY WITH MASS SPECTROMETRY.
THE FOLLOWING THRESHOLD CONCENTRATIONS WERE USED FOR THIS ANALYSIS

| DRUG | SCREENING THRESHOLD | CONFIRMATION THRESHOLD |
|---|---|---|
| AMPHETAMINES | 1000 NG/ML |  |
| AMPHETAMINE |  | 500 NG/ML |
| METHAMPHETAMINE |  | 500 NG/ML |
| MDMA |  | 500 NG/ML |
| MDA |  | 500 NG/ML |
| MDEA |  | 500 NG/ML |
| BARBITURATES | 300 NG/ML | 200 NG/ML |
| BENZODIAZEPINES | 300 NG/ML | 100 NG/ML |
| DIAZEPAM, DESMETHYLDIAZEPAM |  |  |
| OXAZEPAM, TEMAZEPAM |  |  |
| ALPRAZOLAM, ALPHA-OH-ALPRAZOLAM |  |  |
| LORAZEPAM, ALPHA-HYDROXYTRIAZOLAM |  |  |
| HYDROXYETHYLFLURAZEPAM, |  |  |
| ALPHA-HYDROXYMIDAZOLAM, 7-AMINOCLONAZEPAM |  | 150 NG/ML |
| COCAINE METABOLITE | 300 NG/ML |  |
| OPIATES | 300 NG/ML |  |
| CODEINE |  | 300 NG/ML |
| MORPHINE |  | 300 NG/ML |
| HYDROCODONE |  | 300 NG/ML |
| HYDROMORPHONE |  | 100 NG/ML |
| OXYCODONE | 100 NG/ML |  |

REPORT CONTINUED ON NEXT FORM

GREER 00062

Case: 1:17-cv-01438-SO  Doc #: 36-2  Filed: 08/01/18  81 of 117.  PageID #: 676



CONTINUED REPORT
MEDTOX LABORATORIES INC.
402 WEST COUNTY ROAD D                    Jennifer A. Collins, Ph.D.
ST PAUL, MN 55112
651-636-7466

LABORATORY REPORT

Account #: 47469                          Accession #:  G3606881
EMPLOYER:                                 Specimen I.D.:  332049168
MRO: STEPHANIE MATUSZAK, MD               Donor Name/ID: GREER, LAURA
WELL AT WORK                              SSN:            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
3949 N MAIN ST STE D                      Age:    Sex:
FINDLAY, OH 45840                         Reason for test: Reasonable Suspicion/Cause

General Information                        Date          Date          Date
47469                                      Collected      Received      Reported
                                          07/12/2016    07/14/2016    07/19/2016
                                          16:18                        6:38PM

     TEST(S) REQUESTED          RESULTS              UNITS THERAPEUTIC RANGE

  PHENCYCLIDINE             25 NG/ML                    25 NG/ML
  MARIJUANA METABOLITE      50 NG/ML                    15 NG/ML
  METHADONE                300 NG/ML                   300 NG/ML
  PROPOXYPHENE             300 NG/ML                   300 NG/ML
  TRAMADOL                 200 NG/ML                   100 NG/ML
  MEPERIDINE               200 NG/ML                   100 NG/ML

ALTERNATIVE EXPLANATIONS SHOULD BE EXPLORED FOR POSITIVE RESULTS.
THIS PANEL INCLUDES TESTING FOR SPECIMEN VALIDITY.


Certified by: LANGER,CRAIG
EXPANDED BENZODIAZEPINE CONFIRM
   ALPRAZOLAM                     1664       ✓       ng/ml
   ALPHA-HYDROXYALPRAZOLAM        2497       ✓       ng/ml


QUANTITATIVE BENZODIAZEPINE CONFIRMATION INCLUDES DIAZEPAM,
DESMETHYLDIAZEPAM, OXAZEPAM, TEMAZEPAM, ALPRAZOLAM,
ALPHA-HYDROXYALPRAZOLAM, HYDROXYETHYLFLURAZEPAM, LORAZEPAM,
ALPHA-HYDROXYTRIAZOLAM, ALPHA-HYDROXYMIDAZOLAM, 7-AMINOCLONAZEPAM
AT A THRESHOLD OF 100 ng/mL.
ANALYSIS PERFORMED BY LIQUID CHROMATOGRAPHY/TANDEM MASS
SPECTROMETRY (LC/MS/MS).

OXYCODONE CONFIRMATION
   OXYCODONE                      2930       ✓       ng/ml
   OXYMORPHONE                     794       ✓       ng/ml

                   ** FINAL REPORT **

        Collected at 4194255121  MEDTOX collection site #607
        WELL AT WORK - FINDLAY
        FINDLAY, OH

GREER 000638

17/18/2016  18:43:22          Medtox Laboratories  -  AG:FRUELLAT  BT: 64118810          Page: 1 of 2



MEDTOX LABORATORIES INC.                          Jennifer A. Collins, Ph.D.
  402 WEST COUNTY ROAD D
  ST PAUL, MN 55112
  651-636-7466

                          LABORATORY REPORT

Account #: 47469
EMPLOYER:                                 Accession #:  G3606991
MRO: STEPHANIE MATUSZAK, MD               Specimen I.D.:  232049168
WELL AT WORK                              Donor Name/ID:  GREER, LAURA
3949 N MAIN ST STE D                      SSN:           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
FINDLAY, OH 45840                         Age:    Sex:
                                          Reason for test: Reasonable Suspicion/Cause

General Information                   Date          Date          Date
47469                                Collected     Received      Reported
                                     07/12/2016    07/14/2016    07/19/2016
                                       16:18                       6:39PM

        TEST(S) REQUESTED               RESULTS        UNITS THERAPEUTIC RANGE

DRUGS OF ABUSE SCREEN
   DRUG TEST RESULT                     POSITIVE
   AMPHETAMINES                         NEGATIVE        ng/ml
   BARBITURATES                         NEGATIVE        ng/ml
   BENZODIAZEPINES                      +++POSITIVE+++   ng/ml
   COCAINE METABOLITE                   NEGATIVE        ng/ml
   OPIATES                              NEGATIVE        ng/ml
   OXYCODONE                            +++POSITIVE+++   ng/ml
   PHENCYCLIDINE (PCP)                  NEGATIVE        ng/ml
   MARIJUANA METABOLITE (THC)           NEGATIVE        ng/ml
   METHADONE                            NEGATIVE        ng/ml
   PROPOXYPHENE                         NEGATIVE        ng/ml
   TRAMADOL                             NEGATIVE        ng/ml
   MEPERIDINE                           NEGATIVE        ng/ml
   CREATININE                           172.0          mg/dl     > = 20
   NITRITES                             NEGATIVE        mcg/ml    < 200

THIS SPECIMEN WAS SCREENED BY IMMUNOASSAY. ANY POSITIVE RESULT
HAS BEEN CONFIRMED BY CHROMATOGRAPHY WITH MASS SPECTROMETRY.
THE FOLLOWING THRESHOLD CONCENTRATIONS WERE USED FOR THIS ANALYSIS:

DRUG                  SCREENING THRESHOLD      CONFIRMATION THRESHOLD
AMPHETAMINES              1000 NG/ML
   AMPHETAMINE                                    500 NG/ML
   METHAMPHETAMINE                                500 NG/ML
   MDMA                                           500 NG/ML
   MDA                                            500 NG/ML
   MDEA                                           500 NG/ML
BARBITURATES              300 NG/ML              200 NG/ML
BENZODIAZEPINES           300 NG/ML              100 NG/ML
   DIAZEPAM, DESMETHYLDIAZEPAM
   OXAZEPAM, TEMAZEPAM
   ALPRAZOLAM, ALPHA-OH-ALPRAZOLAM
   LORAZEPAM, ALPHA-HYDROXYTRIAZOLAM
   HYDROXYETHYLFLURAZEPAM,
   ALPHA-HYDROXYMIDAZOLAM, 7-AMINOCLONAZEPAM
COCAINE METABOLITE        300 NG/ML              150 NG/ML
OPIATES                   300 NG/ML
   CODEINE                                        300 NG/ML
   MORPHINE                                       300 NG/ML
   HYDROCODONE                                    300 NG/ML
   HYDROMORPHONE                                  300 NG/ML
OXYCODONE                 100 NG/ML              100 NG/ML
                  REPORT CONTINUED ON NEXT FORM

GREER 000639



a sedating medication. I hope Ms. Greer's case will have a successful outcome in her EAP / SAP assessment and treatment. If further information is needed, please contact our office.

Sincerely,

Stephanie A. Matuszak, MD, MRO

GREER 000640

CMMEMO
9/5/17



419-425-5121
Fax 419-425-5738

3049 North Main Street
Findlay, Ohio 45840

September 1, 2017

University Hospitals Case M.C
Attn: Laura Fernandez
MCCO 6th Floor, 11100 Euclid A
Mail Stop 6035B
Cleveland, OH 44106

RE:  Laura Greer
SSN  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

Dear Laura,

This letter is in regards to the drug screen collected by Well at Work on August 21, 2017 from Laura Greer. As the Medical Review Officer for this test, a legitimate medical prescription was found to be in use containing the compounds found in the urine specimen. This prescription has been confirmed. Because there is a legitimate medical reason for the presence of this compound, this drug test is declared negative. However, I would like you to be aware that the medication may have side effects that may represent a Safety-Sensitive issue. The levels have been determined to be above therapeutic levels and therefore Ms. Greer should be referred to the Substance Abuse Professional (SAP) for your company. The employee's personal physician may be a better judge of how the individual will react to the medications.

Please feel free to contact me if you have any further questions or concerns.

Sincerely,

Kristy Veenstra, MROA
Well at Work
KV/sss

DEFENDANT'S
EXHIBIT
17
5/23/18
COLLINS REPORTING

*"Serving Business Healthcare Needs"*
... on affiliate of Blanchard Valley Health Association

GREER 0006?

**NON-REGULATED 5 PART DRUG TESTING CUSTODY AND CONTROL FORM**

SPECIMEN ID NO. **Z34537225**

**MEDTOX** laboratories, inc.
402 W County Rd D
St. Paul, MN 55112
(651) 636-7466
(800) 832-3244

**Step 1** To be completed by COLLECTOR or EMPLOYER REPRESENTATIVE  Account # ___

**A. Employer Name, Address, I.D. No.**
University Hospitals & EM
816-201-4628
TO WELL AT WORK
3730 N MAIN ST STE D
FINLAY, OH 45840

Account # ___

**B. MRO Name, Address, Phone and Fax No.**
LAWRENCE A KAYE MD
WELL AT WORK
3730 N MAIN ST STE D
FINLAY, OH 45840
PH: 415-225-xxxx   FAX xxx-xxx-xxxx

LAB ACCESSION NO.

Donor I.D. 300603228

Donor Daytime Phone (419) 957-2459

**C. Donor Name** (Last, First)   GREER   LAURA

**D. Reason for Test**  ☐ Pre-employment  ☐ Return to Duty  ☒ Random  ☐ Follow-up  ☐ Reasonable Suspicion/Cause  ☐ Post Accident  ☐ Other (Specify)

Collector Phone No. ___

Collector Fax No. ___

**E. Collection Site Name** ART
WELL AT WORK - FINLAY
3730 N MAIN ST, SUITE D
FINLAY, OH 45840

**F. Test(s) Ordered**  ☐ ___  ☐ ___  ☐ ___  ☐ RS710 ___  ☒ OTHER Professional Panel 2 TEST CODE 96042

14008

**STEP 2: COMPLETED BY COLLECTOR**
Read specimen temperature within 4 minutes. Is temperature between 90° and 100°F? ☒ Yes  ☐ No, Enter Remark

**Specimen Collection:** ☐ Split  ☐ Single  ☐ None Provided (Enter Remark)  ☐ Observed (Enter Remark)

REMARKS

**STEP 3:** Collector affixes bottle seal(s) to bottle(s). Collector dates seal(s). Donor initials seal(s). Donor completes STEP 5 on Copy 2 (MRO Copy)

**STEP 4: CHAIN OF CUSTODY - INITIATED BY COLLECTOR AND COMPLETED BY LABORATORY**
I certify that the specimen given to me by the donor identified in the certification section on Copy 2 of this form was collected, labeled, sealed and released to the Delivery Service noted in accordance with applicable requirements.

X _Signature of Collector_   _(PRINT) Collector Name (First, MI, Last)_

Time of Collection 10:38  ☐ AM  ☒ PM

Date (Mo/Day/Yr.) ___

**SPECIMEN BOTTLE(S) RELEASED TO:**
Name of Delivery Service Transferring Specimen to Lab
☒ FedEx  ☐ Local Courier
☐ Other

**STEP 5: COMPLETED BY DONOR**
I certify that I provided my urine specimen to the collector; that I have not adulterated it in any manner; each specimen bottle used was sealed with a tamper-evident seal in my presence; and that the information provided on this form and on the label affixed to each specimen bottle is correct.

X _Signature of Donor_   _Laura Greer_   _(PRINT) Donor's Name (First, MI, Last)_

Date (Mo. Day Yr.) 1/21/17

Daytime Phone No. (419) 957-2459   Evening Phone No. (419) 957-2459   Date of Birth 1/21/70

**STEP 6: COMPLETED BY MEDICAL REVIEW OFFICER - PRIMARY SPECIMEN**
In accordance with applicable requirements, my determination/verification is:
☐ NEGATIVE  ☐ POSITIVE  ☐ TEST CANCELLED  ☐ ADULTERATED  ☐ DILUTE  ☐ SUBSTITUTED  ☐ REFUSAL TO TEST BECAUSE: ___

REMARKS: use of drug is above therapeutic levels should be ref to SAP 8/29/17

X _Signature of Medical Review Officer_   _(PRINT) Medical Review Officer's Name (First, MI, Last)_   Date (Mo./Day/Yr.)

**STEP 7: COMPLETED BY MEDICAL REVIEW OFFICER - SPLIT SPECIMEN**
In accordance with applicable requirements, my determination/verification
☐ RECONFIRMED  ☐ FAILED TO RECONFIRM - REASON ___

X _Signature of Medical Review Officer_   _(PRINT) Medical Review Officer's Name (First, MI, Last)_   Date (Mo./Day/Yr.)

A-14A (9/12) Mfg. 10/12

COPY 2 - MEDICAL REVIEW OFFICER COPY - SEND TO MRO

GREER 00___

Well at Work
## MRO Analysis Form

| Name | Patient ID | Birthdate | Phone |
|---|---|---|---|
| Laura A. Greer | 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 | 01-12-1970 | 419-957-2459 |

| Contact | Collection Site | Phone | |
|---|---|---|---|
| Employer: University Hospitals Case M. C | Mary ARmao | 419-281-4440 | 216-844-4828 | 216-844-3990 |
| Collector: Well @ Work | Amanda Fisher | | 419-425-5121 | 419-425-5738 |
| Lab: MEDTOX | | | 800-832-3244 | |

| Collection Date | Lab Batch ID | Specimen ID | Collprot |
|---|---|---|---|
| 8/21/2017 | RT | Z34537225 | COLLPROT |

Lab Results:

| Substance | Lab Result | Lab Level | Finding |
|---|---|---|---|
| Amp Exp | Negative | 0 | |
| Barbiturates (Urine)5620 | Negative | 0 | |
| Benzodiazepines 5630 | Positive | 3,588.0000 | |
| Cocaine Metabolite 5640 | Negative | 0 | |
| Marijuana Metabolite 5671 | Negative | 0 | |
| Meperidine 5730 | Negative | 0 | |
| Methadone 5680 | Negative | 0 | |
| Opiates (Urine) 5650 | Negative | 0 | |
| Oxycodone - Urine 5653 | Negative | 0 | |
| Phencyclidine 5660 | Negative | 0 | |
| Propoxyphene 5700 | Negative | 0 | |
| TRAMADOL 5720 | | | |

☑ Review Chain of Custody Documents:
✓ Acceptable _____ Unacceptable (explain:) _____

Employee Notification Phone Log:
Phone        Date/Time        Response
_____
_____
_____

☐ If unable to notify employee, company's Drug Test Program Coordinator
notified. Date: __/__/__        Name: _____

☐ Notify employee of positive results
☑ Review possible legitimate reasons for a positive result
Employee's Reason(s) given for Positive Test:        OARRS verified  8/28/17
Prescription Medicine(s) being taken:
_____        Waives        Requests Split

☐ Notify right to request split sample within 72 hours

☐ ☐ Dilute   ☐ Refused-Adulterated
☐ Refused-Substituted

Final Result:  ☐ Positive  ☑ Negative  ☐ Canceled  ☐ Dilute

_Kristy Veenstra, MRO_        Verified On: _____

LAWRENCE HALE, MD
Medical Review Officer        Contact: MARY ARMAO   Phone: 419-281-4440   Date: 8-29-17   Time: 9:49AM

☐ Notify employer of results

Comments:   donor is above therapeutic levels. Should be referred to her
SAP.

Page 1

GREER 0006

Page:01 of

Medtox Laboratories - AC:FAXXELLAT  BT: 64522803

18/27/2017  18:85:49

Jennifer A. Collins, Ph.D.

MEDTOX LABORATORIES INC.
402 WEST COUNTY ROAD D
ST PAUL, MN 55112
651-636-7466

LABORATORY REPORT

Account #: 47469
EMPLOYER:
LAWRENCE A KALE, MD
WELL AT WORK
3949 N MAIN ST STE D
FINDLAY, OH 45840

Accession #:  G6479342
Specimen I.D.: 234537225
Donor Name/ID: GREER, LAURA
SSN:           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
Age:     Sex:
Reason for test: Random

General Information

| | Date Collected | Date Received | Date Reported |
|---|---|---|---|
| | 08/21/2017 10:38 | 08/22/2017 | 08/27/2017 10:03AM |

| TEST(S) REQUESTED | RESULTS | UNITS | THERAPEUTIC RANGE |
|---|---|---|---|
| DRUGS OF ABUSE SCREEN 96042 | POSITIVE | ng/ml | |
| DRUG TEST RESULT | NEGATIVE | ng/ml | |
| AMPHETAMINES | NEGATIVE | ng/ml | |
| BARBITURATES | +++POSITIVE+++ | ng/ml | |
| BENZODIAZEPINES | NEGATIVE | ng/ml | |
| COCAINE METABOLITE | NEGATIVE | ng/ml | |
| OPIATES | NEGATIVE | ng/ml | |
| OXYCODONE | NEGATIVE | ng/ml | |
| PHENCYCLIDINE (PCP) | NEGATIVE | ng/ml | |
| MARIJUANA METABOLITE (THC) | NEGATIVE | ng/ml | |
| METHADONE | NEGATIVE | ng/ml | |
| PROPOXYPHENE | NEGATIVE | ng/ml | |
| TRAMADOL | NEGATIVE | ng/ml | |
| MEPERIDINE | 82.8 | mg/dl | > = 20 |
| CREATININE | | mcg/ml | < 200 |
| NITRITES | NEGATIVE | | |

THIS SPECIMEN WAS SCREENED BY IMMUNOASSAY. ANY POSITIVE RESULT
HAS BEEN CONFIRMED BY CHROMATOGRAPHY WITH MASS SPECTROMETRY.
THE FOLLOWING THRESHOLD CONCENTRATIONS WERE USED FOR THIS ANALYSIS

| DRUG | SCREENING THRESHOLD | CONFIRMATION THRESHOLD |
|---|---|---|
| AMPHETAMINES | 1000 NG/ML | 500 NG/ML |
| AMPHETAMINE | | 500 NG/ML |
| METHAMPHETAMINE | | 500 NG/ML |
| MDMA | | 500 NG/ML |
| MDA | | 500 NG/ML |
| MDEA | | 200 NG/ML |
| BARBITURATES | 300 NG/ML | 100 NG/ML |
| BENZODIAZEPINES | 300 NG/ML | |
| DIAZEPAM, DESMETHYLDIAZEPAM | | |
| OXAZEPAM, TEMAZEPAM | | |
| ALPRAZOLAM, ALPHA-OH-ALPRAZOLAM | | |
| LORAZEPAM, ALPHA-HYDROXYTRIAZOLAM | | |
| HYDROXYETHYLFLURAZEPAM | | |
| ALPHA-HYDROXYMIDAZOLAM, 7-AMINOCLONAZEPAM | | 150 NG/ML |
| COCAINE METABOLITE | 300 NG/ML | |
| OPIATES | 300 NG/ML | 300 NG/ML |
| CODEINE | | 300 NG/ML |
| MORPHINE | | 300 NG/ML |
| HYDROCODONE | | 300 NG/ML |
| HYDROMORPHONE | | 100 NG/ML |
| OXYCODONE | 100 NG/ML | |

REPORT CONTINUED ON NEXT FORM

GREER 00065

10/27/2017  10:05:50

Medtox Laboratories  -  A6:FAXHELLAT  BT: 64572803

Page:02 of

Jennifer A. Collins, Ph.D.

CONTINUED REPORT
MEDTOX LABORATORIES INC.
402 WEST COUNTY ROAD D
ST PAUL, MN 55112
651-636-7466

**LABORATORY REPORT**

Account #: 47469
EMPLOYER: _____
LAWRENCE A KALE, MD
WELL AT WORK
3949 N MAIN ST STE D
FINDLAY, OH 45840

Accession #: G6479342
Specimen I.D.: 234537225
Donor Name/ID: GREER,LAURA
SSN:
Age:      Sex:
Reason for test: Random

|  | Date Collected | Date Received | Date Reported |
|---|---|---|---|
|  | 08/21/2017 10:38 | 08/22/2017 | 08/27/2017 10:03AM |

General Information

| TEST(S) REQUESTED | RESULTS | UNITS THERAPEUTIC RANGE |
|---|---|---|
| PHENCYCLIDINE | 25 NG/ML | 25 NG/ML |
| MARIJUANA METABOLITE | 50 NG/ML | 15 NG/ML |
| METHADONE | 300 NG/ML | 300 NG/ML |
| PROPOXYPHENE | 300 NG/ML | 300 NG/ML |
| TRAMADOL | 200 NG/ML | 100 NG/ML |
| MEPERIDINE | 200 NG/ML | 100 NG/ML |

ALTERNATIVE EXPLANATIONS SHOULD BE EXPLORED FOR POSITIVE RESULTS.
THIS PANEL INCLUDES TESTING FOR SPECIMEN VALIDITY.

**SOME COMPONENTS OF THE TEST PANEL WERE DEVELOPED AND PERFORMANCE
CHARACTERISTICS DETERMINED BY LABCORP. THEY HAVE NOT BEEN CLEARED
OR APPROVED BY THE FOOD AND DRUG ADMINISTRATION.

Certified by: FALKOFSKE,JENNIFER

| EXPANDED BENZODIAZEPINE CONFIRM | | |
|---|---|---|
| ALPRAZOLAM | 2074 | ng/ml |
| ALPHA-HYDROXYALPRAZOLAM | 3588 | ng/ml |

QUANTITATIVE BENZODIAZEPINE CONFIRMATION INCLUDES DIAZEPAM,
DESMETHYLDIAZEPAM, OXAZEPAM, TEMAZEPAM, ALPRAZOLAM,
ALPHA-HYDROXYALPRAZOLAM, HYDROXYETHYLFLURAZEPAM, LORAZEPAM,
ALPHA-HYDROXYTRIAZOLAM, ALPHA-HYDROXYMIDAZOLAM, 7-AMINOCLONAZEPAM
AT A THRESHOLD OF 100 ng/mL.
ANALYSIS PERFORMED BY LIQUID CHROMATOGRAPHY/TANDEM MASS
SPECTROMETRY (LC/MS/MS).

** FINAL REPORT **

Collected at 4194255121   MEDTOX collection site 8607
WELL AT WORK - FINDLAY
FINDLAY, OH

GREER 0006

 **University Hospitals**

# Corrective Action

**Employees Name:** Laura Greer          **Job Title:** HDP Claims Processor I

**Department:** HDP Claims-70005          **Employee ID:** 1167786

**Purpose of Report (Check One)**

☒ **Confirmation of Counseling**          ☐ **Final Warning**

☐ **Warning**          ☐ **Discharge**

---

**Describe event(s) in detail:**

As you know, the UH HR-71 Attendance policy states that any employee who accumulates 6 occurrences of unscheduled absences within any consecutive 12-month period will be subject to progressive corrective action up to and including discharge.  Each occurrence after the first 6 will progress the level of action taken depending on where the employee is in the corrective action process at the time of the attendance infraction. A recent review of your attendance shows that you were absent from work on the following dates, and in violation of UH policy.

- 12/27/16 – 8 hours
- 2/3/17 – 8 hours
- 2/10/17 – 8 hours
- 3/1/17 – 8 hours
- 5/3/17, 5/4/17, 5/5/17, 5/9/17, 5/10/17, 5/11/17 & 5/12/17- 51 hours
- 6/5/17 & 6/6/17 – 16 hours
- 6/13/17 - 8 hours
- 6/14/17 – 8 hours
- 6/15/17 - 8 hours
- 6/30/17 –7.48 hours
- 7/27/17 – 8 hours
- 7/28/17 – 6 hours
- 8/2/17 – 4.5 hours
- 8/17/17 – 8 hours

As a result of your excessive absenteeism, this corrective action is warranted.

**Describe any previous action taken, and/or action needed going forward:**

Laura, as reviewed with you on July 20, 2017, attendance is a major part of your work performance and you should report to work as scheduled so that department operations are not negatively impacted.  Today, please take a moment to review HR 71 Attendance policy in detail.  All UH policies are found on the UH Intranet. Should you have any questions regarding policy, please let me know.

**Confidential**

Cc:  Manager, Human Resources, Employee File

DEFENDANT'S EXHIBIT
16  lw
5/23/18
COLLINS REPORTING

DEFENDANT 000149

CONFIDENTIAL

I am available to offer you any assistance or guidance you may need. It's important to note that I have applied for multiple leaves on your behalf in a genuine effort to help you get absences covered. As we've discussed, it is imperative that you complete and submit leave paperwork to Lisa Edgehouse in a timely manner. Going forward, I expect that you will adhere to the UH Attendance policy and work your assigned shifts. Continued failure to adhere to the Attendance policy and/or meet performance expectations will result in corrective action up to and including discharge from University Hospitals.

Supervisor Signature: _____ Title: *Claims Manager* Date: *9-21-17*

I have read this report and have been given an opportunity to comment. My signature acknowledges that I have read and received a copy of this report. I understand that I may contact Stephanie Hodgkiss, HR Manager, to discuss questions or concerns related to this document including optional complaint resolution steps.

Employee's Signature: _____ Date: _____

Employee's Comments: _____

_____

_____

_____

**Confidential**

Cc: Manager, Human Resources, Employee File

DEFENDANT 000150

CONFIDENTIAL

**University Hospitals**
**Cleveland Medical Center**

## RETURN TO WORK AUTHORIZATION
### (Fitness for Duty)
**Family and Medical Leave Act (FMLA) / UH Medical Leave of Absence**

### TO BE COMPLETED BY THE EMPLOYEE

Name (print): LAURA A Greer

409 TR 212          Address          Findlay   OH   45840
                                    City / State / Zip Code

Phone #: (419) 957-2459  Social Security #: 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  Date of Birth: 01/12/1970

UH Position Title: Senior Claims Examiner

Manager Name (please print): Dave Ferko

FIN: 60820431   MRN: 000-0001
Greer, Laura Allison
DOS: 01/12/1970   DOS: 10/18/2017 10:48
Attn: Nienberg PA-C, Matthew B

### To be completed by Physician/Practitioner

Reason for Leave: Flare up in pain RT Cervical

Regimen of Care: Injections for pain relief. Spondylosis

Discharge Date: Hospital □          Office: □

Saw and treated this patient on ___/___/___ and based on the above description of the patient's current medical problem:

☒ Recommend his/her return to work with no limitations on  10/23/17

□ He/She may return to work on ___/___/___ with the following limitations (below):

### CHECK ONLY AS RELATED TO ABOVE CONDITIONS

| | |
|---|---|
| □ **CLASS (1) No Heavy Lifting** <br> • Is able to bend, stoop, push, and full. <br> • Only restriction is no lifting more than 50 pounds. | (1) In an 8/12 hour day, he/she may: <br> Only Work: ___ hrs/day; ___ days/wk |
| | Stand/Walk:  □ None  □ 1-4 Hrs  □ 4-6 Hrs  □ 6-8 Hrs |
| □ **CLASS (2) Light Work** <br> • Unlimited standing or walking. <br> • No lifting greater than 25 pounds. <br> • Occasional bending or stooping | Sit:  □ 1-3 Hrs  □ 3-5 Hrs  □ 5-8 Hrs <br> Drive:  □ 1-3 Hrs  □ 3-5 Hrs  □ 5-8 Hrs |
| | (2) He/She may use hand(s) for repetitive: <br> □ Single Grasping <br> □ Pushing & Pulling <br> □ Fine Manipulation |
| □ **CLASS (3) Semi-Sedentary** <br> • Work one-half of the time sitting and one-half standing and walking. <br> • No lifting greater than 11-20 pounds. <br> • No repetitive bending or stooping. | (3) He/She may use foot/feet for repetitive movement, as in operating foot controls. <br> □ Yes    □ No |

(4) He/She may:     Not at all    Occasionally    Frequently

□ **CLASS (4) Semi-Sedentary**
• Work in a sitting position.
• No lifting greater than 5-10 pounds.
• No repetitive bending or stooping.
• Minimal demand for physical effort.

| He/She may: | Not at all | Occasionally | Frequently |
|---|---|---|---|
| Bend | □ | □ | □ |
| Twist | □ | □ | □ |
| Squat | □ | □ | □ |
| Climb | □ | □ | □ |
| Reach | □ | □ | □ |

DEFENDANT'S EXHIBIT 19
5/22/18
COLLINS/REPORTING

### OTHER INSTRUCTIONS AND/OR LIMITATIONS (including Prescribed Medications)

□ These restrictions are in effect until ___/___/___ or until patient is reevaluated on ___/___/___

□ He/She is totally incapacitated at this time. Patient will be reevaluated on ___/___/___

□ Referred to: □ None  □ PT  □ Specialist

Signature of Physician/Practitioner: Megan Verhoff PA-C     Date: 10/23/17

Print Name: Megan Verhoff PA-C

Field of Specialization: Pain Management     Phone #: (567) 712-7741

Address: 658 W. Market St. Suite 106   City/State/Zip Code: Lima, OH 45801

Federal law prohibits employers from requesting genetic information. To comply with that law, do not provide us with any genetic information when responding to this request "Genetic Information" includes an individual's family medical history, results of genetic tests, information about genetic services or tests, or any other genetic information.

If employed by: UH Cleveland Medical Center/Rainbow Babies & Children's/Seidman Cancer Center/UH CompCare/UH
Corporate/Health Design Plus: Please fax to Lisa Edgehouse, RN at 216-201-4096.
All other entities and community hospitals: Please fax to Kara Ladulka, RN at 216-201-4095

DEFENDANT 000013

CONFIDENTIAL

 **University Hospitals**

# Corrective Action

**Employee's Name:** Laura Greer     **Job Title:** HDP Claims Processor I

**Department:** HDP Claims-70005     **Employee ID:** 1167786

**Purpose of Report (Check One)**

☐    Confirmation of Counseling      ☒    **Final Warning**

☐    Warning                         ☐    Discharge

**Describe event(s) in detail:**

As previously discussed with you, the UH HR-71 Attendance policy states that any employee who accumulates 6 occurrences of unscheduled absences within any consecutive 12-month period will be subject to progressive corrective action up to and including discharge. Each occurrence after the first 6 will progress the level of action taken.

Laura, you failed to provide completed FMLA paperwork to cover your September absence. As a result, your FMLA request was recently denied on October 4, 2017 (see attached).

- 9-8-17 – 5 hours

You also failed to report for your scheduled EAP test on this date, which is in violation of UH EAP policy.

Laura, as reviewed with you, attendance is a major part of your work performance and you should report to work as scheduled so that department operations are not negatively impacted. It is also imperative that you complete and submit leave paperwork to Lisa Edgehouse in a timely manner and adhere to the testing protocols that you have agreed to with EAP.

I am available to offer you any assistance or guidance you may need. Please note that failure to adhere to the UH policy and/or meet performance expectations will result in corrective action up to and including discharge from University Hospitals.

**Supervisor Signature:** _(signed)_     **Title:** Claims Manager     **Date:** 10-31-17

I have read this report and have been given an opportunity to comment. My signature acknowledges that I have read and received a copy of this report. I understand that I may contact Stephanie Hodgkiss, HR Manager, to discuss questions or concerns related to this document including optional complaint resolution steps.

**Employee's Signature:** _____     **Date:** _____

**Employee's Comments:** _____

_____

_____

_____

Confidential

Cc: Manager, Human Resources, Employee File

Page 1 of 1

DEFENDANT'S EXHIBIT 20 ho 5/23/18 COLLINS REPORTING

GREER 000444

11/8/2017                                   Fw: Vacation 11-14-17 through 11-20-17

**From:** Laura Greer <lgreer1308@yahoo.com>
**To:** FLandry308 <flandry308@aol.com>
**Subject:** Fw: Vacation 11-14-17 through 11-20-17
**Date:** Tue, Nov 7, 2017 5:48 pm
**Attachments:** hr-71 Attendance 2017.pdf (108K)

---

Sent from Yahoo Mail on Android

—— Forwarded Message ——
**From:** "David Ferko" <DFerko@hdplus.com>
**To:** "Laura Baker" <LBaker@hdplus.com>
**Cc:** "lgreer1308@yahoo.com" <lgreer1308@yahoo.com>
**Sent:** Mon, Nov 6, 2017 at 3:01 PM
**Subject:** Vacation 11-14-17 through 11-20-17

Hi, Laura!

Tammy mentioned you contacted her on Sunday and referenced taking a vacation next week. Please note we don't have a vacation request on file for you, and you've exhausted your PTO bank. Since you have missed so much time away from work, and claims need processing, you don't have approval to take a vacation.

At this time, you can only have off for approved FMLA occurrences.

If you have any questions about this, please let me know.

Thanks.

David Ferko

Manager – Claims Processing

Health Design Plus | 1755 Georgetown Road, Hudson, OH 44236

330.656.1072 x249 | dferko@hdplus.com



DEFENDANT'S
EXHIBIT
21
5/23/18
COLLINS REPORTING

GREER 000412

11/8/2017                                    FW: TIME OFF

From: Laura Baker <LBaker@hdplus.com>
    To: 'FLANDRY308@AOL.COM' <FLANDRY308@AOL.COM>
Subject: FW: TIME OFF
    Date: Tue, Nov 7, 2017 10:30 pm

From: Laura Baker
Sent: Wednesday, October 04, 2017 8:22 AM
To: David Ferko
Subject: TIME OFF

I NEED TO HAVE NOV 14-20 2017 OFF TO TRAVEL TX SEE MY SON GRADUATE FROM AIR FORCE BOOT CAMP AND SPEND TIME WITH HIM. I WILL RETURN ON THE 21ST

THANKS
LAURA

THIS MESSAGE AND OR ANY ATTACHMENTS IS INTENDED ONLY FOR PERSONAL AND CONFIDENTIAL USE OF THE INDIVIDUAL OR ENTITY TO WHOM IT IS ADDRESSED AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL, AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that you have received this message in error and that any review, dissemination, distribution, or copying of this message is strictly prohibited. If you have received this message in error, please notify the sender immediately by e-mail or telephone, and delete the original message immediately. Thank you.

GREER 000413

 **University Hospitals**

# Corrective Action

**Employees Name:** Laura Greer     **Job Title:** HDP Claims Processor I

**Department:** HDP Claims-70005     **Employee ID:** 1167786

**Purpose of Report** (Check One)

| | | | |
|---|---|---|---|
| ☐ | Confirmation of Counseling | ☐ | Final Warning |
| ☐ | Warning | ☒ | Discharge |

**Describe event(s) in detail:**

As you know, the UH HR-71 Attendance policy states that any employee who accumulates 6 occurrences of unscheduled absences within any consecutive 12-month period will be subject to progressive corrective action up to and including discharge.  Each occurrence after the first 6 will progress the level of action taken depending on where the employee is in the corrective action process at the time of the attendance infraction. A recent review of your attendance shows that you were absent from work on the following dates, and in violation of UH policy:

- 11/13/17 – 4 hours
- 11/14/17 – 8 hours
- 11/15/17 – 8 hours
- 11/16/17 – 8 hours
- 11/17/17 – 8 hours
- 11/20/17 – 8 hours

**Describe any previous action taken, and/or action needed going forward:**

Laura, it was thoroughly explained up front to you that you were not approved to take a vacation from 11/14/17 – 11-20-17 since you have exhausted all of your PTO and have missed so much time away from work.  You were very aware that you would be terminated if you decided to travel.  Human Resources and I discussed this with you in detail.  Further, it was reviewed with you on multiple occasions that attendance is a major part of your work performance and you should report to work as scheduled so that department operations are not negatively impacted.  You were given progressive corrective action for absenteeism as follows:

- Counseling – 9/21/17
- Final Warning – 10/31/17

I have been extremely flexible and accommodating to your many requests for time off to address various personal issues, Laura.  After careful consideration, due to your willful violation of UH policy and excessive absenteeism, your employment is being terminated effective November 21, 2017.

**Manager Signature:** _____     **Date:** 11-22-17

*Termination delivered via phone

I understand that I may contact Stephanie Hodgkiss, HR Manager, at 216.767.8475 to discuss questions or concerns related to this document including optional complaint resolution steps.  Payroll can be reached at 216.983.0500.  Benefits can be reached at 1.877.471.7522.

Confidential

Cc:  Manager, Human Resources, Employee File

Page 1 of 1

DEFENDANT'S EXHIBIT 2  5/23/18  COLLINS REPORTING

GREER 000431

APR 0 2 2018

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| LAURA GREER, | ) | CASE NO. 1:17-cv-001438 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| UNIVERSITY HOSPITALS HEALTH | ) | |
| SYSTEM, INC., et al. | ) | |
| | ) | |
| Defendants. | ) | |

*RESPONSES To:*
**DEFENDANT HEALTH DESIGN PLUS, INC.'S FIRST SET OF
REQUESTS FOR ADMISSION DIRECTED TO PLAINTIFF LAURA GREER**

Pursuant to Rule 36 of the Federal Rules of Civil Procedure, Defendant Health Design Plus, Inc. ("HDPI") propounds the following requests for admission (the "Discovery Requests") to Plaintiff Laura Greer ("Plaintiff"). Plaintiff's responses to these Discovery Requests must be provided to the undersigned counsel for HDPI within thirty (30) days of service hereof.

## DEFINITIONS

As used herein, the following words shall have the meanings indicated:

1. "You," "your," or "Plaintiff" mean and refer to Plaintiff Laura Greer, as well as her agents, representatives, attorneys, and every other person acting or purporting to act on her behalf, individually or collectively.

2. "Defendants" mean UHHS and Health Design Plus, Inc..

3. "UHHS" means Defendant University Hospitals Health Systems, Inc.

4. "HDPI" means Defendant Health Design Plus, Inc.

5. "Second Amended Complaint" means the Second Amended Complaint filed by Plaintiff in this action on or around February 13, 2018 against Defendants in the United States District Court, Northern District of Ohio captioned *Laura Greer v. University Hospitals Health*

1



*System, Inc. et al.*, Case No. 1:17-CV-01438. "Second Amended Complaint" also includes Plaintiff's Complaint, which was filed on or around August 23, 2017, and Plaintiff's First Amended Complaint, which was filed on or around November 16, 2017.

6.  "Litigation" means the captioned-lawsuit that you filed against Defendants.

7.  "EAP" means Defendants' Employee Assistance Program.

8.  "EAP Time Period" means the time period during your employment with Defendants when you were required to submit to the EAP.

9.  "Drug Screen" means the EAP testing that you were required to submit to during the EAP Time Period.

10. "Counselor" means the EAP counselor assigned to Plaintiff during the EAP Time Period.

11. "Collection Site" means the location where Plaintiff was directed to submit to Drug Screens during the EAP Time Period.

12. "Collection Site Employees" mean the employees and contractors who worked at the Collection Site during the EAP Time Period.

13. "Absence or Absent" mean missing work, for any reason, on a day you were required to submit to a Drug Screen.

14. "Deployment" or "Deployed" means the Standard AEF (Air Expeditionary Force).

15. "Son" means Jonathon Allen Baker.

16. "Corrective Action" means the disciplinary notices that you received from Defendants.

17. "E-Mail" means the e-mail that you sent to all HDPI employees on November 13, 2017 that is attached hereto as Exhibit 1.

18. Communications" means and includes any conversation or other oral or written contact, formal or informal, at any time or place, under any circumstances whatsoever, whereby information of any nature was transmitted or transferred, whether or not subsequently recorded in any document or ESI. "Communications" means and includes, without limitation, meetings, telephone conversations, discussions, memoranda, correspondence, e-mail communications, reports, executive summaries, briefings, and oral requests for information.

19. "Describe," when referring to a document or ESI, means to provide the title, subject, or file name, date, originator, addressee, and a brief description of the substance therein.

20. "Describe," when referring to an event or transaction, means to give the date, the names of the persons participating, the time of day, the place, and a brief description of all occurrences, statements, and conversations contiguous with and pertaining to that event.

21. "Documents and ESI" and "documents or ESI" are intended to be as comprehensive as the meaning provided in Rules 26 and 34 of the Federal Rules of Civil Procedure, and mean, without limitation, the original and any non-identical copy of any and all written, printed, typed, recorded, graphic, computer-generated, or other matter of any kind from which information can be derived, whether produced, reproduced, or stored on paper, cards, tape, film, electronic facsimile, computer-storage device, or any other medium in your possession, custody, or control. The terms include, without limiting the generality of the foregoing, all communications, letters, memoranda (whether of visits, telephone calls, or otherwise), appointment calendars, schedules, books, indices, printed forms (whether official or unofficial), publications, press releases, notices, brochures, pamphlets, guide books, manuals, instructions,

3

minutes, summaries or abstracts, reports, files, file jackets, data-processing cards, computer tapes, printouts, information contained in, on, or retrievable from computer programs, bulletins, written questions and answers, charts, blueprints, drawings, diagrams, graphs, tables, photographs, recordings, speeches, telegraphs, cables, telex messages, e-mails, microfilm, microfiche, opinions, studies, papers, analyses, evaluations, proposals, budget materials, invoices, financial statements, contracts, specifications, applications, motions, petitions, complaints, answers, responses, replies, protests, verified statements, transcripts, exhibits, attachments, reports, filings, submissions, pleadings, contracts, agreements, and forecasts. The terms shall include each copy that is not identical to the original or any other produced copy, as well as any preliminary drafts of any document or ESI or working paper relating thereto.

22.     "ESI" means "electronically stored information," as that term is used in Rules 26 and 34 of the Federal Rules of Civil Procedure.

23.     "Identify" or to provide the "identity of" means, with respect to any natural person, to state the full name, home address, business address, employer, and position or positions within each organization employing such person at the present time and at the time in question and, with respect to any other person (as defined in these definitions), to state its full name, address, principal place of business, and state of organization.

24.     "Identify" or to provide the "identity of" means, with respect to any document, to set forth the date thereof, the title (if any), the name of the person or persons authoring such document, the name of the person or persons to whom such document was given or transmitted, the present location and custodian of such document, and the topic dealt with therein with reasonable specificity, and to describe the relevant page or pages and line or lines thereof (or

4

annex a copy to the responses to these Discovery Requests with appropriate designations of such page or pages and line or lines).

25. "Identify" or to provide the "identity of" means, with respect to any communication, to set forth the date and place thereof, the name of the person or persons making or issuing the communication, the name of the person or persons to whom and in whose presence such communication was made, and the substance thereof, and to identify each document in which such communication was recorded, described, or referenced.

26. "Person" means a natural person, proprietorship, corporation, partnership, limited liability company, joint venture, governmental entity, and each other form of organization or association.

27. "Pertaining to," "relating to," "pertain to," and "relate to," mean referring to, relating to, alluding to, responding to, discussing, commenting upon, showing, disclosing, analyzing, reporting about, explaining, mentioning, constituting, comprising, evidencing, setting forth, containing, summarizing, or characterizing, either directly or indirectly, in whole or in part, the given subject matter.

28. "And" and "or" as used herein are both conjunctive and disjunctive.

29. "Any" shall be construed to include "all," and "all" shall be construed to include "any."

30. "Each" shall be construed to include the word "every," and "every" shall be construed to include the word "each."

31. Where the context herein makes it appropriate, each singular word shall include its plural, and each plural word shall include its singular.

5

32.    The present tense shall be construed to include the past tense, and the past tense shall be construed to include the present tense.

## REQUESTS FOR ADMISSION

**REQUEST FOR ADMISSION NO. 1:**

Admit that you were required to submit to Drug Screens during the EAP Time Period.

**RESPONSE:**

*For all Responses See Exhibit "A"*

**REQUEST FOR ADMISSION NO. 2:**

Admit that you were Absent from the Drug Screens from August 21, 2017 through September 11, 2017.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 3:**

Admit that you were prescribed a Benzodiazepines in 2017.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 4:**

Admit that your use of Benzodiazepines in 2017 exceeded your prescription.

**RESPONSE:**

6

**REQUEST FOR ADMISSION NO. 5:**

Admit that the high dose of Benzodiazepines that you were taking negatively impacted your ability to perform the essential functions of your position with HDPI.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 6:**

Admit that you did not advise the physician who prescribed you the Benzodiazepines that you were taking doses that exceeded your prescription.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 7:**

Admit that you were Absent because you did not want to fail the Drug Screen.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 8:**

Admit that you had multiple Absences during the EAP Time Period.

**RESPONSE:**

7

**REQUEST FOR ADMISSION NO. 9:**

Admit that your Son was not Deployed in 2017.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 10:**

Admit that your Son had not received Deployment orders when you visited him in Texas in November of 2017.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 11:**

Admit that you were Absent for all of your Drug Screens in October of 2017.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 12:**

Admit that your Son did not receive Deployment orders in 2017.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 13:**

Admit that you received Corrective Actions on September 21, 2017 and October 31, 2017.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 14:**

Admit that you were advised, prior to your Texas trip, that if you traveled to Texas in November of 2017 it would lead to your discharge.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 15:**

Admit that the Corrective Action dated October 31, 2017 was a final warning.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 16:**

Admit that following the October 31, 2017 Corrective Action that you were absent from work on November 13, 2017, November 14, 2017, November 15, 2017, November 16, 2017, November 17, 2017, and November 20, 2017.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 17:**

Admit that you sent the E-Mail before your November of 2017 absences.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 18:**

Admit that you did not send any communications similar to the E-Mail prior to any of your other absences in 2017.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 19:**

Admit that you sent the E-Mail at the request of your counsel.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 20:**

Admit that you sent the E-Mail in an attempt to avoid discharge.

**RESPONSE:**

10

**REQUEST FOR ADMISSION NO. 21:**

Admit that you were employed by HDPI from 2001 through 2017.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 22:**

Admit that you attended Drug Screens as required from September of 2016 through August of 2017.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 23:**

Admit that you were Absent from 2017 Drug Screens because of your abuse of Benzodiazepines.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 24:**

Admit that you did not request any accommodations in 2016 or 2017 from HDPI.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 25:**

Admit that you could perform the essential functions of your Senior Clams Examiner position with HDPI in 2016 and 2017.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 26:**

Admit that you entered a rehabilitation program with Arrowhead Behavioral Health due to a Percocet addiction.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 27:**

Admit that your Percocet addiction impacted your performance with HDPI.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 28:**

Admit that you left the Arrowhead Behavioral Health rehabilitation program before you were released.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 29:**

Admit that Defendants provided you with multiple channels to complain about alleged harassment.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 30:**

Admit that you contacted the Collection Site multiple times a day during the EAP Time Period.

**RESPONSE:**


**REQUEST FOR ADMISSION NO. 31:**

Admit that you advised the Collection Site Employees of the Litigation.

**RESPONSE:**

13

**REQUEST FOR ADMISSION NO. 32:**

Admit that you advised the Counselor of the Litigation.

**RESPONSE:**

**REQUEST FOR ADMISSION NO. 33:**

Admit that you contacted your Counselor multiple times a day during the EAP Time Period.

**RESPONSE:**

Respectfully submitted,

*/s/ Donald G. Slezak*
David A. Campbell (0066494)
Gregory C. Scheiderer (0087103)
Donald G. Slezak (0092422)
Vorys, Sater, Seymour and Pease LLP
200 Public Square, Suite 1400
Cleveland, Ohio 44114
Phone: (216) 479-6100
Fax: (216) 479-6060
dacampbell@vorys.com
gcscheiderer@vorys.com
dgslezak@vorys.com

*Attorneys for Defendants*
*University Hospitals Health System, Inc.*
*and Health Design Plus, Inc.*

14

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on this 19th day of February, 2018, a copy of the

foregoing was served via electronic mail and regular US Mail to:

Francis J. Landry, Esq.
**WASSERMAN, BRYAN, LANDRY &**
**HONOLD, LLP**
1090 West South Boundary, Suite 500
Perrysburg, Ohio 43551
FLandry308@aol.com

/s/ Donald G. Slezak
Donald G. Slezak (0092422)
*One of the Attorneys for Defendants*

15

# EXHIBIT 1

**From:** Laura Baker
**Sent:** Monday, November 13, 2017 4:11 PM
**To:** ALL <ALL@hdplus.com>
**Subject:**
**Importance:** High

I WILL BE OFF FROM 11/14-11/20   TIME HAS FLOWN BY FAST AND ITS TIME TO BE THE PROUDEST
MOTHER OF 2 ACTIVE DUTY AIR FORCE GENTLEMEN☺    ATLEAST IT WILL BE 80 DEGRESS IN TEXAS

LAURA GREER

EXHIBIT "A"

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| **LAURA A. GREER** | * | Case No. 1:17CV1438 |
| Plaintiff | * | Judge Solomon Oliver, Jr. |
| v. | * | |
| **UNIVERSITY HOSPITAL** | * | **PLAINTIFF'S RESPONSES TO** |
| **HEALTH SYSTEM, INC. et** | * | **DEFENDANT'S FIRST REQUESTS** |
| **al.,** | * | **FOR ADMISSIONS** |
| Defendants. | * | Francis J. Landry |
| | * | (0006072) |
| | | **WASSERMAN, BRYAN, LANDRY** |
| | * | **& HONOLD, LLP** |
| | | 1090 W. South Boundary St |
| | * | Suite 500 |
| | | Perrysburg, Ohio 43551 |
| | * | Telephone: (419) 243-1239 |
| | | Facsimile: (419) 243-2719 |
| | | Attorney for Plaintiff |
| | | Laura A. Greer |

\*     \*     \*     \*     \*     \*     \*

Now comes Plaintiff, Laura A. Greer, by and through undersigned counsel, and respectfully submits her responses to Defendant's First Requests for Admissions.

**REQUEST NO. 1**      Admit.

REQUEST NO. 2    Admit but qualified in that Plaintiff suffered from migraines at this time and any absences were covered under intermittent Family and Medical Leave.

REQUEST NO. 3    Admit.

REQUEST NO. 4    Deny.

REQUEST NO. 5    Deny.

REQUEST NO. 6    Deny.

REQUEST NO. 7    Deny.

REQUEST NO. 8    Admit but qualified in that absences were due to major increase in migraines for which Plaintiff was covered under the FMLA.

REQUEST NO. 9    Admit but qualified in that Plaintiff's son went on active duty.

REQUEST NO. 10    Admit but qualified in that Plaintiff's son had active duty orders.

REQUEST NO. 11    Plaintiff is unable to admit or deny due to a major increase at this time in migraines. Plaintiff further states that she advised that someone could have been sent to her house to obtain urine specimens when she could not lift head off of a pillow or see or drive.

REQUEST NO. 12    Admit but qualified in that Plaintiff's son was called to active duty.

REQUEST NO. 13    Admit.

REQUEST NO. 14    Admit but qualified to the extend that Plaintiff was not advised until Friday at 4:00PM when she was leaving the following Monday after work.

REQUEST NO. 15    Admit but qualified to the extent that Plaintiff was under FMLA coverage.

REQUEST NO. 16    Admit.

REQUEST NO. 17    Admit.

REQUEST NO. 18    Admit.

REQUEST NO. 19    Objection. This Request seeks information that is subject to attorney client privilege. Without waiving objection, Deny.

REQUEST NO. 20    Deny.

REQUEST NO. 21    Admit.

REQUEST NO. 22    Admit.

REQUEST NO. 23    Deny.

REQUEST NO. 24    Deny.

REQUEST NO. 25    Admit.

REQUEST NO. 26    Admit.

REQUEST NO. 27    Deny.

REQUEST NO. 28    Deny.

REQUEST NO. 29    Deny.

REQUEST NO. 30    Deny.

REQUEST NO. 31    Admit.

**REQUEST NO. 32**     Admit.

**REQUEST NO. 33**     Admit.

Respectfully submitted,

**WASSERMAN, BRYAN, LANDRY & HONOLD, LLP**

/s/ Francis J. Landry
Francis J. Landry
Attorney for Plaintiff, Laura A. Greer

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Plaintiff's Responses to Defendant's First Requests for Admissions to Plaintiff was sent via ordinary U.S. Mail this 30th day of March, 2018 to David A. Campbell, Gregory C. Scheiderer and Donald G. Slezak, Vorys, Sater, Seymour and Pease LLP, 200 Public Square, Suite 1400, Cleveland, Ohio 44114 as well as electronically to dacampbell@vorys.com, gcscheiderer@vorys.com, and dgslezak@vorys.com.

/s/ Francis J. Landry
Francis J. Landry