**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**

| | | |
|---|---|---|
| LAURA GREER, | ) | CASE NO. 1:17-cv-001438 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| UNIVERSITY HOSPITALS HEALTH SYSTEM, INC., et al. | ) ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION**

Plaintiff Laura Greer's ("Plaintiff") Opposition (the "Opposition") to Defendants University Hospitals Health System, Inc. ("UHHS") and Health Design Plus, Inc. ("HDPI") (UHHS and HDPI are collectively referred to as "Defendants") confirms that Plaintiff did not suffer from any unlawful conduct and that Defendants' Motion for Summary Judgment should be granted in its entirety. Indeed, Plaintiff admits to the unexcused absences leading to her discharge from HDPI. To be sure, Plaintiff admits that her request for time off was denied, that she was instructed to be at work from November 14, 2017 through November 20, 2017, and that she failed to report to work on those days. Accordingly, there is no dispute as to the factual basis underlying HDPI's decision to terminate Plaintiff.

As to the remaining issues presented to this Court, the Opposition confirms that Plaintiff did not suffer from any alleged disability and that Defendants' IOP and EAP Program (the "Drug Testing Program") were legitimate and non-discriminatory. Plaintiff presents no evidence in her Opposition that she suffered from any alleged disability and, instead, admits that "Plaintiff] was able to perform her job duties without the need for extensive accommodation." This is consistent

1

with the fact that Plaintiff's attendance issues, aside from her November 2017 absences, are the result of Plaintiff's admitted drug abuse and failure to comply with the terms of her lawful EAP Program and not the result of any alleged disability. In fact, Plaintiff admits that she (1) abused illicit drugs; (2) failed to complete the recommended post-rehabilitation treatment and counseling; (3) failed a drug test days after exhibiting slurred speech and bizarre behavior while interacting with HDPI employees; and (4) failed to comply with the requirements of her lawful EAP Program. Plaintiff's Opposition confirms her drug abuse and does not address Defendants' arguments as to the IOP and EAP Program, obviously, because the programs were legitimate.

Accordingly, Defendants respectfully request that this Court grant its Motion for Summary Judgment and dismiss Plaintiff's remaining claims with prejudice.

## II. RELEVANT FACTS

A full recitation of the facts is contained in Defendants' Motion for Summary Judgment. Accordingly, Defendants will only highlight facts necessary for the arguments contained herein.

### A. Plaintiff is Not Disabled.

The Opposition confirms that Plaintiff is not disabled. Indeed, Plaintiff admits in her Opposition that "[Plaintiff] was able to perform her job duties without the need for extensive accommodation." (Opposition at 7). This is consistent with the fact that Plaintiff did not have any work restrictions or request any accommodations in 2016 or 2017. (Deposition of Plaintiff (hereafter "Dep. Plaintiff at ___") at 22-24).[1]

As to Plaintiff's alleged migraines, Plaintiff admits that her migraines did not affect her ability to perform her job duties. (Dep. Plaintiff at 24-25). Similarly, Plaintiff admits that her alleged back issues did not affect her ability to perform her job duties. (Dep. Plaintiff at 23 and

---

[1] Cited Pages from Plaintiff's Deposition are attached hereto as Exhibit 1.

2

25). Rather, Plaintiff's migraines and back issues would occasionally require her to take breaks during her work day, which HDPI routinely granted. (Dep. Plaintiff at 22-24 and 128).

As to Plaintiff's slurred speech, Plaintiff attempts to characterize her slurred speech as a disability by linking it to a surgical procedure performed on Plaintiff more than twelve year ago. (Dep. Plaintiff at 83-84). However, Plaintiff admits that she was unaware that her speech was slurred until Defendants required her to take a fitness for duty test in June of 2016. (Dep. Plaintiff at 84-85). Plaintiff admits that the only impact this surgery has had on her employment was her claim that it, not the drug use, caused her slurred speech in June of 2016. (Dep. Plaintiff at 84).

### B. Plaintiff Admits to Abusing Drugs During Her Employment.

It is undisputed that Plaintiff abused prescription pain medication and illegal drugs during her employment with HDPI. Plaintiff attempts to minimize her drug use by "den[ying] having used elicit (sic) drugs…" (Opposition at 2). However, it is undisputed that Plaintiff used illicit drugs during her employment. Indeed, Plaintiff admits to taking Percocet in amounts that were in excess of her prescribed dosage. (Dep. Plaintiff at 122). Plaintiff admits that she would purchase additional Percocet tablets from others to satisfy her needs. (Dep. Plaintiff at 48). Plaintiff concedes that she took non-prescribed Percocet she obtained from another person after she completed her rehabilitation program at Arrowhead. (Dep. Plaintiff at 104-107). Finally, Plaintiff admits that she purchased Xanax from a friend and used Xanax without a prescription during her employment with HDPI." (Dep. Plaintiff at 50-51 and Ex. 3). Accordingly, there is no dispute that Plaintiff used illicit drugs during her employment with HDPI.

### C. The Drug Testing Program Was Legitimate and Based On Plaintiff's Apparent Drug Abuse.

The evidence clearly establishes that Defendants' decision to place Plaintiff into the Drug Testing Program was legitimate and based upon Plaintiff's apparent drug abuse following her discharge from Arrowhead. Indeed, despite alleging in the Opposition that she was "clean" and "ceased the use of medication" after her stay at Arrowhead (Opposition at 1), it is undisputed that Plaintiff abused illegal drugs not too long after her discharge from Arrowhead. (Dep. Plaintiff at 106-107 and Ex. 16). Specifically, around the same time that Plaintiff dropped out of her treatment plan in June 2016, Plaintiff began to exhibit unusual behavior at work. (Dep. Plaintiff at 74-75 and Exs. 6 and 7). Between June 13, 2016, and June 29, 2016, Plaintiff spoke with her supervisor on several occasions via email and telephone concerning issues Plaintiff was allegedly having with her computer system. (Dep. Plaintiff at Ex. 7). During these exchanges, Plaintiff had difficulty following directions, delayed reaction time, difficulty completing simple tasks, difficulty staying on topic, and exhibited slurred speech. (Dep. Plaintiff at 66, 82, 108 and Ex. 7.). Plaintiff does not deny that her speech was slurred. (Dep. Plaintiff at 84-87).[2]

Based upon Plaintiff's unusual behavior in such a short period of time, Plaintiff was required to submit to a fitness for duty test on July 12, 2016. (Dep. Plaintiff at 82, 88-89, 93, 108 and Exs. 12 and 16). It is undisputed that Plaintiff's drug test was positive. (Dep. Plaintiff at 106-107 and Ex. 16). Plaintiff does not dispute the results of the test, and admits to taking non-prescribed Percocet she obtained from another individual days before the test. (Dep. Plaintiff at 108-110). Importantly, Plaintiff's behavior on the day of her failed drug test was consistent with her behavior in June 2016 which prompted Plaintiff's fitness for duty test. (Dep. Plaintiff at Ex. 16). To be sure, the medical personnel described Plaintiff's condition when she arrived at the

---

[2] Prior to June of 2016, Plaintiff admits that she was never alleged to have slurred speech. (Dep. Plaintiff at 83).

testing facility as "appear[ing] obviously sedated, slurring her words, sleepy, ataxic, bending forward, leaning on walls to support herself walking, and vomited in the office while speaking to the receptionist." (*Id.*).

Because of these issues, Plaintiff was placed in the Drug Testing Program. (Dep. Plaintiff at 88-89, 93, 96, 119-120 and Ex. 12).

### D. Plaintiff Failed to Comply With the Terms of Her EAP Program.

The Opposition alleges that "[Plaintiff] complied with the requirements of the EAP Program." (Opposition at 4). To the contrary, it is undisputed that Plaintiff missed many of her scheduled drug tests while in the Drug Testing Program. (Dep. Plaintiff at 97-98, 115 and 123). Plaintiff admits that she called off from work on many of the days in which she was scheduled to take a drug test. (Dep. Plaintiff at 97-99).

Further, as to the drug tests Plaintiff did attend, several of Plaintiff's drug tests—including her first drug test in the Drug Testing Program—revealed diluted results and/or levels of controlled substances that far exceeded any therapeutic dose. (Dep. Plaintiff at Exs. 13-15).

### E. Plaintiff Admits to the Attendance Issues Leading to Her Discharge.

Plaintiff does not dispute that she was absent many times in 2017, and further admits to the unexcused absences leading to her discharge in November 2017. Indeed, Plaintiff admits that (1) she requested off November 14, 2017 through November 20, 2017; (2) HDPI denied Plaintiff's request; and (3) Plaintiff nonetheless failed to report to work from November 14, 2017 through November 20, 2017. (Opposition at 5; *see also* Dep. Plaintiff at 133-35). Accordingly, there is no dispute that the absences leading to Plaintiff's discharge were unexcused. As to the reason for denying Plaintiff's request for time off, Plaintiff had exhausted all of her PTO time and the event in question was not covered by the FMLA. (Dep. Plaintiff at 133-35). To be sure,

5

Plaintiff sought to take time off to attend her son's graduation from boot camp in Texas. (Dep. Plaintiff at 133-35). HDPI reviewed the request and determined that it was not covered by the FMLA because Plaintiff's son was not in active duty at the time. (*Id.*). Plaintiff does not dispute that her son was not deployed at the time. (*Id.*).

Similarly, there is no dispute as to Plaintiff's many absences prior to November 2017. Indeed, Plaintiff admits that she was absent for many days in 2017. (Opposition at 4). Plaintiff further admits that many of these days happened to be on days in which she was required to take a scheduled drug test. (*Id.*) Plaintiff concedes that she received two written warning concerning her attendance issues in 2017. (*Id.*). Plaintiff received these written warnings because Plaintiff's absences were unexcused. (Dep. Plaintiff at Exs. 18 and 20). While Plaintiff alleges that the absences identified in her written warnings were the result of FMLA use, Plaintiff never provided Defendants with the proper documentation to cover these absences. (*Id.*). Plaintiff does not dispute this fact in her Opposition. (*See generally*, Opposition). Accordingly, there is no dispute as to the attendance issues that persisted throughout Plaintiff's employment and which ultimately lead to her discharge in November 2017.

### III. LAW AND ARGUMENT

#### A. Plaintiff Was Not Disabled.

A person is disabled under the ADA if that person "(1) has a physical or mental impairment that substantially limits one or more of the major life activities; (2) has a record of such impairment; or (3) has been regarded as having such an impairment." *Breitfelder v. Leis*, 151 Fed. Appx. 379, 383-84 (6th Cir. 2005).

Plaintiff's Opposition confirms that she is not disabled. Indeed, Plaintiff provides no evidence whatsoever that her alleged back issues or migraines substantially limited a major life

activity other than her own conclusory statements, which cannot alone satisfy her burden. *See Perry v. Am. Red Cross Blood Servs.*, No. 3-13-1146, 2015 U.S. Dist. LEXIS 38515, *11 (M.D. Tenn. Mar. 26, 2015) ("[Plaintiff's] own conjectures are insufficient to survive summary judgment on whether she was 'disabled' under the ADA."). Instead, Plaintiff admits that "[Plaintiff] was able to perform her job duties without the need for extensive accommodation." (Opposition at 7). This is consistent with the fact that Plaintiff had no work restrictions in 2016 and 2017 and she did not request any accommodations. (Dep. Plaintiff at 22-24). The impairments reported by Plaintiff had all been present for many years and Plaintiff worked without performance issues during that long period. (Dep. Plaintiff at 26-27). Further, Plaintiff cannot rely upon her approved FMLA leave as a basis for establishing that her impairments qualify as a disability or that Defendants were aware of any alleged disability. *See Perry v. Am. Red Cross Blood Servs.*, No. 3-13-1146, 2015 U.S. Dist. LEXIS 38515, *11 (M.D. Tenn. Mar. 26, 2015) ("approval for FMLA leave does not alone mean that a person is 'disabled' under the ADA."); *see also Johnson v. JP Morgan Chase & Co.*, 922 F.Supp.2d 658, 672-73 (S.D. Ohio 2013) ("intermittent FMLA leave requests are not sufficient to establish a record of disability within the meaning of the ADA").

As to Plaintiff's attempt to qualify her back issues as a disability based upon her receiving nerve injections, such procedures do not qualify Plaintiff's issues as a disability under the ADA. *See Hodge v. Henry County Med. Ctr.*, 341 F.Supp. 2d 968, 975 (W.D. Tenn. 2003) (citing *Sutton v. Lader*, 185 F.3d 1203 (11th Cir. 1999) ("[a] temporary inability to work while recuperating from surgery…does not constitute evidence of a disability covered by the [ADA]."). Accordingly, because Plaintiff's testimony establishes that she is not disabled, and Plaintiff provide no evidence disputing this fact, Plaintiff's disability claims fail as a matter of law.

7

### B. The Drug Testing Program Was Lawful.

In an attempt to create an issue of fact, Plaintiff alleges that her Drug Testing Program was based on her disability or in retaliation for her protected activity. However, this Court has already ruled that Defendants' decision to place Plaintiff into the Drug Program was legitimate when it dismissed Plaintiff's FMLA claim. The Court's ruling is equally applicable to Plaintiff's other claims, as Defendants' Drug Testing Program was lawful and did not violate the ADA, the Rehabilitation Act, the Ohio Revised Code, or any other law. It is well-established that employers have the right to test and discipline employees for drug abuse. *E. Associated Coal Corp. v. Mine Workers*, 531 U.S. 57, 62 (2000); *Counts v. Kraton Polymers, U.S. L.L.C.*, 260 Fed. Appx. 825, 832 (6th Cir. 2008); *Disbennett v. Millcraft Paper Co.*, 3:08-cv-041, 2008 U.S. Dist. LEXIS 114247, *8 (S.D. Ohio Aug. 27, 2008) ("The [ADA] expressly permits employers to adopt and administer reasonable policies or procedures, including drug testing, to ensure that employees who have completed or are participating in a rehabilitation program are no longer engaging in the illegal use of drugs.").

Here, the decision to place Plaintiff into the Drug Testing Program was clearly based upon the ample evidence of Plaintiff's drug abuse history and not based upon any alleged disability or any other unlawful reason. Indeed, Plaintiff admits to abusing drugs throughout her employment with HDPI. Plaintiff admits to taking Percocet in amounts that were in excess of her prescribed dosage. (Dep. Plaintiff at 122). Plaintiff admits to purchasing additional Percocet from other individuals to satisfy her needs. (Dep. Plaintiff at 48). Plaintiff admits to purchasing Xanax from individuals during her employment with HDPI. (Dep. Plaintiff at 50-51 and Ex. 3). Plaintiff admits to checking herself into a rehabilitation program at Arrowhead. (Dep. Plaintiff at 37-38, 47 and Exs. 2 and 3). The rehabilitation documents confirm Plaintiff's Percocet and

Xanax abuse, and also indicate that Plaintiff was using Heroin. (Dep. Plaintiff at Exs. 2-3). After a short three day program at Arrowhead, Plaintiff refused the follow-up treatment recommended by Arrowhead in favor of seeking her own treatment with a counselor. (Dep. Plaintiff at 65-66 and Ex. 4). However, Plaintiff refused to follow the treatment recommendations of her counselor and dropped out all together in June 2016. (Dep. Plaintiff at 69 and Exs. 5 and 6).

Around that same time, Plaintiff exhibited bizarre behavior with co-workers consistent with drug abuse, including slurred words, delayed reaction, and the need to repeat simple tasks. (Dep. Plaintiff at 66, 82, 108 and Ex. 7). Accordingly, Plaintiff was required to submit to a fitness for duty test, which she failed. (Dep. Plaintiff at Ex. 16). Plaintiff does not deny the results of the drug test and admits to using non-prescribed Percocet days before taking the test. (Dep. Plaintiff at 106-110). Because Plaintiff failed her drug test, she was required to participate in Defendants' Drug Testing Program, which included weekly random drug tests. The decision to place Plaintiff in the Drug Testing Program came months prior to any of Plaintiff's alleged protected activity. Further, and most importantly, such a drug testing requirement is reasonable and is consistent with state and federal law. *Counts*, 260 Fed. Appx. at 827 (48-month drug testing requirement as a condition of continued employment); *see also Disbennett v. Millcraft Paper Co.*, 3:08-cv-041, 2008 U.S. Dist. LEXIS 114247, *8 (S.D. Ohio Aug. 27, 2008) (substance abuse program requiring mandatory random drug testing for extended period of time as a condition of continued employment); *Buckley v. Consolidated Edison Co.*, 155 F.3d 150, 156 (2d Cir. 1998) ("[a]n employer does not discriminate in violation of the ADA by administering tests for the illegal use of drugs to former substance abusers more frequently than it administers tests to those not identified as former substance abusers."); *Keith v. Ashland, Inc.*, No. 98-4539, 2000 U.S. App. LEXIS 1940, *13-14 (6th Cir. Feb. 8, 2000) (employer's decision

to condition plaintiff's return to work on the successful completion of a fitness for duty exam did not violate EAP where employer believed plaintiff was not capable of performing job duties). Accordingly, Plaintiff cannot support her claims based upon her participation in the Drug Testing Program.

### C. Plaintiff's Discharge Was a Voluntary Decision That Was Not Caused By Her Disability or Protected Activities.

Plaintiff's discharge was lawful and has no relation whatsoever to her alleged disability, the Drug Testing Program, or her protected activity. Plaintiff was discharged due to her decision to take an unapproved personal vacation to visit her son in Texas. This Court found Defendants' reason for discharging Plaintiff to be legitimate when it dismissed Plaintiff's FMLA claim. The Court's decision is consistent with the well-established Sixth Circuit Law, which provides that "[e]xcessive absenteeism is a legitimate reason for termination." *Campbell v. Eagle Bend Mfg.*No. 3:10-cv-24, 2011 U.S. Dist. LEXIS 67422, *22-23 (E.D. Tenn, June 22, 2011); *see also Njaim v. FCA US LLC*, No. 3:16cv1351, 2018 U.S. Dist. LEXIS 127636, *20 (N.D. Ohio July 31, 2018). Plaintiff provides no evidence to dispute the clear facts supporting the lawful decision to discharge Plaintiff based upon her violation of Defendants' attendance policies.

Plaintiff admits to receiving two disciplinary actions pertaining to her many unexcused absences in 2016 and 2017. (Dep. Plaintiff at 122, 132 and Exs. 18 and 20).[3] Plaintiff was advised on October 31, 2017 that any further disciplinary action could lead to her discharge. (Dep. Plaintiff at Ex. 20). Weeks later Plaintiff sought to take a personal vacation to visit her son from November 14, 2017 through November 20, 2017, despite having no available vacation time. (Dep. Plaintiff at Ex. 21). Plaintiff admits that Defendants denied her vacation request

---

[3] Plaintiff alleges that she took FMLA leave on some of the days identified in her disciplinary actions; however, Plaintiff never provided Defendants with the proper documentation to cover her absences and Plaintiff's Opposition confirms this fact. (Dep. Plaintiff at Exs. 18 and 20; *see also* Opposition at 8-9).

because she did not have any available vacation time. (Dep. Plaintiff at 134-136). Plaintiff thereafter sought to use FMLA leave for her personal vacation. (Dep. Plaintiff at 133-136). Plaintiff admits that Defendants denied her request to take FMLA leave to visit her son because the vacation was not covered under the FMLA. (*Id.*). Plaintiff concedes that she was advised that if she failed to report to work on the days in question, she would be discharged. (Dep. Plaintiff at Exs. 22 and 23). Despite knowing that her vacation was unapproved, and that any further discipline could lead to her discharge, Plaintiff voluntarily chose to miss work from November 14, 2017 through November 20, 2017. (*Id.*). Plaintiff was subsequently discharged for violating Defendants' attendance policies. Plaintiff admits that her unapproved vacation was in violation of Defendants' attendance policies. (Dep. Plaintiff at 136). Accordingly, there is no genuine issue of fact as to whether Plaintiff's discharge was lawful and her claims as they relate to her discharge fail as a matter of law. *See Perry v. Am. Red Cross Blood Servs.*, No. 3-13-1146, 2015 U.S. Dist. LEXIS 38515, *10 (M.D. Tenn. Mar. 26, 2015) (employer's decision to terminate plaintiff based on her absenteeism, as opposed to her disability, was a legitimate, non-discriminatory reason); *see also Coldiron v. Clossman Catering LLC*, No. 1:14-cv-300, 2015 U.S. Dist. LEXIS 173311, *62-63 (S.D. Ohio Oct. 27, 2015) (discharge for violating attendance policy was legitimate and non-discriminatory and unrelated to plaintiff's disability).

## IV. CONCLUSION

Based on the foregoing arguments and authorities in Defendants' Reply In Support of Their Motion for Summary Judgment, as well as the arguments and authorities set forth in Defendants' Motion for Summary Judgment, Defendants respectfully request that summary judgment be granted in their favor on all of Plaintiff's remaining claims.

Respectfully submitted,

*/s/ Donald G. Slezak*
David A. Campbell (0066494)
Gregory C. Scheiderer (0087103)
Donald G. Slezak (092422)
Vorys, Sater, Seymour and Pease LLP
200 Public Square, Suite 1400
Cleveland, Ohio 44114
Phone: (216) 479-6100
Fax: (216) 479-6060
dacampbell@vorys.com
gcscheiderer@vorys.com
dgslezak@vorys.com

*Attorneys for Defendants*

## **STATEMENT OF ADHERENCE TO LOCAL RULE 7.1**

This lawsuit has been assigned to the standard track and the Memorandum in Support adheres to the page limitations set forth in Local Rule 7.1 of the United States District Court for the Northern District of Ohio.

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that a copy of the foregoing was filed electronically on this 15th Day of August, 2018.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

                                                /s/ *Donald G. Slezak*
                                                *One of Attorneys for Defendants*